UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC AND COMCAST
CABLE COMMUNICATIONS, LLC

                Plaintiffs,

      - against -

MAXLINEAR, INC.

             Defendant.

Civil Action No. 1:23-cv-4436

ORAL ARGUMENT REQUESTED

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Plaintiffs Comcast Cable
Communications Management, LLC and
Comcast Cable Communications, LLC*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ...................................................................................................... 3

    A.    The Parties ................................................................................................. 3

    B.    The Vendor Support Agreement and Statement of Work ................................. 3

    C.    MaxLinear Assigns Certain Patents to Entropic to Pursue Patent Claims .......... 5

    D.    Entropic Sues Comcast in Violation of the Covenant Not to Sue ...................... 6

    E.    MaxLinear Attempts to Terminate the VSA and SOW Prematurely .................. 7

    F.    The Current Action and MaxLinear's Shifting Position ..................................... 9

ARGUMENT ......................................................................................................... 10

I.    Comcast Is Likely to Succeed on the Merits of Its Claims ............................. 10

    A.    MaxLinear Breached the VSA and SOW ....................................................... 10

    B.    Comcast Is Entitled to a Declaration That MaxLinear's Attempted Termination
        Is Invalid and the VSA and SOW Remain in Full Force and Effect................... 13

II.    Comcast Will Suffer Irreparable Harm Absent a Preliminary Injunction ................... 14

III.    The Balance of the Equities Favors Comcast ................................................... 18

IV.    The Public Interest Favors Issuance of a Preliminary Injunction ................................ 19

CONCLUSION .................................................................................................... 21

# TABLE OF AUTHORITIES

PAGE(S)

C<small>ASES</small>

*Asa v. Pictometry Int'l Corp.*,
   757 F. Supp. 2d 238 (W.D.N.Y. 2010) ................................................................. 18

*Avon Co. v. Fareva Morton Grove, Inc.*,
   2022 WL 2208156 (S.D.N.Y. June 21, 2022) ......................................................... 20

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   784 F.3d 887 (2d Cir. 2015) ......................................................................... 10, 20

*Bionpharma Inc. v. CoreRx, Inc.*,
   582 F. Supp. 3d 167 (S.D.N.Y. 2022) ................................................................. 18

*Brenntag Int'l Chems., Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999) ............................................................................ 15

*Datatreasury Corp. v. Wells Fargo & Co.*,
   522 F.3d 1368 (Fed. Cir. 2008) ........................................................................ 6

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   411 F.3d 384 (2d Cir. 2005) ............................................................................ 14

*Eastman Kodak Co. v. Collins Ink Corp.*,
   821 F. Supp. 2d 582 (W.D.N.Y. 2011) ............................................................... 13

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ............................................................................ 11

*GemShares, LLC v. Kinney*,
   2017 WL 1092051 (S.D.N.Y. Mar. 15, 2017) ....................................................... 13

*Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*,
   2020 WL 915824 (S.D.N.Y. Feb. 26, 2020) ......................................................... 20

*Goldberg v. Pace Univ.*,
   535 F. Supp. 3d 180 (S.D.N.Y. 2021) ................................................................. 10

*HRB Res. LLC v. Schon*,
   2019 WL 4015256 (N.D.N.Y. Apr. 25, 2019) ....................................................... 20

*Indep. Wireless One Corp. v. Town of Charlotte*,
    242 F. Supp. 2d 409 (D. Vt. 2003) ...................................................................... 18

*Intertek Testing Servs., N.A., Inc. v. Pennisi*,
    443 F. Supp. 3d 303 (E.D.N.Y. 2020) ................................................................. 19

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ................................................................................ 13

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ............................................................................................ 13

*Millennial Plastic Surgery PLLC v. James*,
    2021 WL 5988322 (S.D.N.Y. Dec. 16, 2021) .................................................... 17

*N.Y. State Telecomms. Ass'n, Inc. v. James*,
    544 F. Supp. 3d 269 (E.D.N.Y. 2021) ................................................................ 20

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015) ................................................................................ 14

*R Squared Glob., Inc. v. Serendipity 3, Inc.*,
    2011 WL 5244691 (S.D.N.Y. Nov. 3, 2011) ...................................................... 19

*Red Fort Cap., Inc. v. Guardhouse Prods. LLC*,
    397 F. Supp. 3d 456 (S.D.N.Y. 2019) ................................................................ 13

*Regeneron Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    510 F. Supp. 3d 29 (S.D.N.Y. 2020) .................................................................. 18

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ................................................................................ 15

*Rex Med. L.P. v. Angiotech Pharms. (US) Inc.*,
    754 F. Supp. 2d 616 (S.D.N.Y. 2010) ..................................................... 12, 18, 20

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ............................................................................ 10, 15

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999) .................................................................................. 18

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995) .................................................................................... 15

*Wells Fargo Bank, N.A. v. Sharma*,
    642 F. Supp. 2d 242 (S.D.N.Y. 2009) ..................................................................................... 13

*Willis Re Inc. v. Herriott*,
    550 F. Supp. 3d 68 (S.D.N.Y. 2021) ..................................................................................... 19

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012) ..................................................................................... 14

<u>S</u>TATUTES & <u>R</u>ULES

28 U.S.C. § 2201 ..................................................................................... 13

Fed. R. Civ. P. 65(a) ..................................................................................... 1

Plaintiffs Comcast Cable Communications Management, LLC and Comcast Cable Communications, LLC (together, "Comcast") respectfully submit this memorandum of law in support of their application pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction and temporary restraining order (i) enjoining Defendant MaxLinear, Inc. ("MaxLinear") from prematurely terminating the parties' Vendor Support Agreement (the "VSA") and accompanying Statement of Work (the "SOW" and, together with the VSA, the "Agreements") and (ii) ordering MaxLinear to continue to perform its obligations under both Agreements.

## PRELIMINARY STATEMENT

Comcast's relationship with MaxLinear dates back many years.  Over time, Comcast has purchased millions of broadband gateways for its customers that contain MaxLinear chips.  As part of the parties' ongoing commercial relationship, MaxLinear has agreed to provide, pursuant to the VSA and SOW, service and support to Comcast to maintain the broadband gateways so that Comcast's customers may continue to enjoy the high-quality Internet service Comcast provides.  Comcast consistently has upheld its end of the bargain and recently was considering ways in which to broaden and expand its MaxLinear relationship.

But MaxLinear has taken a different approach.  Rather than adhere to its contractual obligations, MaxLinear has attempted to terminate the VSA and SOW in breach of both Agreements as part of a transparent attempt to further its financial interests in patent litigation. Specifically, MaxLinear decided to assign part of its patent portfolio to a specialized entity that was formed for the sole purpose of asserting patent infringement claims (in which MaxLinear retains a financial interest) against a host of operating companies, including Comcast.  But the problem for MaxLinear is that the VSA contains an express "covenant not to sue" Comcast that

covers the patents it assigned and that runs with the patents, irrespective of who owns them. Rather than face the realities of the VSA's express terms, MaxLinear apparently thinks it can render the covenant irrelevant by terminating—improperly—the VSA and SOW.  It cannot do so, and its attempted termination is a clear violation of both Agreements.

      Each of the VSA and SOW contains a termination provision.  The VSA affords MaxLinear the right to terminate the VSA upon 90 days' notice if there has been no active SOW in place for one year, while MaxLinear has the right to terminate the SOW upon one year's notice.  However, by letter dated May 18, 2023, and received by Comcast's procurement team on May 23, 2023, MaxLinear attempted to terminate both Agreements, without any notice or even recognition of the applicable termination provisions.  Comcast responded by letter on May 24, 2023, and informed MaxLinear that it was in breach.  Comcast further requested that MaxLinear confirm by close of business on May 25, 2023, that it would withdraw its attempted termination, that it is not terminating the VSA and SOW at this time, and that it would continue to perform under both Agreements.  MaxLinear did not respond to Comcast's letter and, after learning of the instant action, has continued to assert through its counsel that it need not live under the Agreements that it signed.

      In light of MaxLinear's position, Comcast has no choice but to seek relief from the Court because of the irreparable harm Comcast and its customers would suffer if MaxLinear were to terminate immediately and pull its services and support for Comcast devices.  Among other things, Comcast would risk ███████████████ and suffer damage to its reputation in the industry, along with loss of its market standing and goodwill.  That is because, if MaxLinear no longer properly supports Comcast's broadband gateways containing MaxLinear chips, ███████████

████████████████████████████████████████████████████

████████████████████████████████.  Comcast's ability to ███████████

████████████████████████████████████████████████████████

████████████████████████████.

For these reasons and the reasons set forth in greater detail below, Comcast satisfies the

elements for a preliminary injunction and respectfully requests that the Court grant its motion.

## BACKGROUND

### A.     The Parties

Comcast is one of the country's largest providers of telecommunication services,

including Internet, cable television, and telephone services.  Of particular relevance here,

Comcast provides broadband Internet service to millions of customers.  (Cave Decl. ¶ 2.)

MaxLinear manufactures chips used in broadband gateways.  (*Id.* ¶ 3.)  At present,

Comcast has deployed to its customers 14 million broadband gateways containing a MaxLinear

chip.  (*Id.* ¶ 6.)

### B.     The Vendor Support Agreement and Statement of Work

Effective August 1, 2020, Comcast and MaxLinear entered into the VSA, which sets the

terms and conditions pursuant to which MaxLinear provides services to Comcast.  (*See generally*

Ex. A.[1])  The VSA does not specify the services to be provided, but permits Comcast to request

"certain services" by executing a separate statement of work with MaxLinear.  (*Id.* § 1.1.)

On November 2, 2020, Comcast and MaxLinear agreed to the SOW, which details the

services MaxLinear is obligated to provide Comcast.  (*See* Ex. B.)  Among other services,

MaxLinear has agreed to provide "feature development, bug fixes, and security patches/fixes"

---

[1] References to Ex. [___] refer to the Exhibits attached to the Declaration of Dana M.
Seshens in Support of Plaintiffs' Motion for a Preliminary Injunction.

for Comcast gateways that contain MaxLinear chips.  (*Id.* at 1.)  Other services to which

MaxLinear committed under the SOW include ███████████████████████████████

████████████████████████████████████ (*id.*), ████████████████████

██████████████████████████████████████████████████████ (*id.*

at 2), and ██████████████████████████████ (*id.*).  The SOW is active today,

with MaxLinear providing ongoing services to Comcast as needed.  (Cave Decl. ¶ 7.)

The terms of the VSA and SOW run through July 2026, but both Agreements include

provisions that permit MaxLinear to terminate earlier under specified circumstances.  For its

part, the VSA provides:

> The [VSA] shall continue to govern any outstanding [statements of
> work] until their expiration or termination, but [MaxLinear] may
> terminate [the VSA], upon ninety (90) days' prior written notice to
> Comcast, if there has been no active SOW for a period of 1 year.

(Ex. A § 11.1.)  MaxLinear may terminate the SOW "at any time upon one (1) years' written

notice to Comcast."  (Ex. B § 2.)  Taken together, these provisions mean that MaxLinear cannot

terminate the VSA until two years and 90 days after providing notice that it intends to terminate

the SOW.

The VSA includes a choice of law provision stating that it "shall be governed by, and

construed and interpreted in accordance with, the laws of New York without regard to conflict of

laws principles"; that "any claim or controversy arising out of or relating to [the VSA] shall be

brought exclusively in federal or state court located in New York"; and that "the Parties hereby

consent to personal jurisdiction and venue in such court."  (Ex. A § 14.1.)

### C.    MaxLinear Assigns Certain Patents to Entropic to Pursue Patent Claims

In addition to governing MaxLinear's support of Comcast's broadband gateways, the VSA also governs the treatment of certain intellectual property. (*See id.* §§ 7.1–7.3.) Relevant to this action, the VSA includes a covenant not to sue ("Covenant Not to Sue"), which provides that MaxLinear and its affiliates may not sue Comcast or its affiliates for infringement of any MaxLinear or MaxLinear-affiliate patent during the term of the VSA in connection with Comcast's "purchase, use, or deployment of any product or service." (*Id.* § 7.3.)

In 2021, MaxLinear and one of its affiliates purported to assign their rights in certain patents ("MaxLinear Patents") to Entropic Communications, LLC ("Entropic"). *See* Complaint ¶ 37, ECF No. 1, *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, No. 2:23-cv-01048-JWH-KES (C.D. Cal.); Complaint ¶ 32, ECF No. 1, *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, No. 2:23-cv-01050-JWH-KES (C.D. Cal.).[2] As part of the plan to monetize the MaxLinear Patents, MaxLinear retained a financial interest in the outcome of any lawsuits Entropic might successfully prosecute. *See* Pl.'s Am. Notice of Interested Parties, ECF No. 32, *Entropic Commc'ns, LLC v. Comcast Corp.*, C.A. No. 2:23-cv-01048-JWH-KES (C.D. Cal.) (indicating that MaxLinear "is the prior assignee of one or more of the patents in suit, and has an interest in the outcome of the action"); Pl.'s Am. Notice of Interested Parties, ECF No. 28, *Entropic Commc'ns, LLC v. Comcast Corp.*, C.A. No. 2:23-cv-01050-JWH-KES (C.D. Cal.) (same).

---

[2] Notably, and of relevance to the California Lawsuits (as defined herein), ████████ ██████████████████████████████████████. ████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████ ████████████

At the time of the assignments (and to this day), the MaxLinear Patents were (and continue to remain) encumbered by the Covenant Not to Sue.  *See Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008) ("[T]he owner of a patent cannot transfer an interest greater than that which it possesses, [so] an assignee takes a patent subject to the legal encumbrances thereon.").

### D.    Entropic Sues Comcast in Violation of the Covenant Not to Sue

On February 10, 2023, Entropic initiated two lawsuits against Comcast, alleging that Comcast infringed the MaxLinear Patents (collectively, the "California Lawsuits").  *See* Complaint, ECF No. 1, *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, No. 2:23-cv-01048-JWH-KES (C.D. Cal.); Complaint, ECF No. 1, *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, No. 2:23-cv-01050-JWH-KES (C.D. Cal.).

On April 28, 2023, Peter Kiriacoulacos, Comcast's Chief Procurement Officer, called Kishore Seendripu, MaxLinear's CEO.  (Kiriacoulacos Decl. ¶ 10.)  Mr. Kiriacoulacos informed Mr. Seendripu that the California Lawsuits ran afoul of the VSA and its Covenant Not to Sue. (*Id.*)  In response, Mr. Seendripu conveyed that MaxLinear would not take any action to honor the Covenant Not to Sue and acknowledged that MaxLinear had a financial interest in the outcome of the litigations.  (*Id.*)

Entropic has not voluntarily withdrawn its claims against Comcast, which are proceeding. Accordingly, on May 15, 2023, Comcast moved to dismiss the California Lawsuits, in part, for failure to state a claim of willful infringement.  (*See* Def.'s Br. in Support of Mot. to Dismiss, ECF No. 43, *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, No. 2:23-cv-01048-JWH-KES (C.D. Cal.); Def.'s Br. in Support of Mot. to Dismiss, ECF No. 40, *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, No. 2:23-cv-01050-JWH-KES (C.D. Cal.).)  Then, on May 22, 2023,

Comcast moved to dismiss the California Lawsuits for lack of standing in light of the Covenant Not to Sue. (*See* Def.'s Br. in Support of Mot. to Dismiss, ECF No. 56, *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, No. 2:23-cv-01048-JWH-KES (C.D. Cal.); Def.'s Br. in Support of Mot. to Dismiss, ECF No. 52, *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, No. 2:23-cv-01050-JWH-KES (C.D. Cal.).)

    **E.**    **MaxLinear Attempts to Terminate the VSA and SOW Prematurely**

On May 18, 2023, Jon Cave, Comcast's Senior Vice President of Broadband, Xfinity Home Devices, Product Strategy, and Management, met in person with William Torgerson, MaxLinear's Vice President and General Manager, as part of their ordinary course business relationship. (*See* Cave Decl. ¶ 8.) During that meeting, Mr. Torgerson mentioned the California Lawsuits and the impact they could have on the business relationship between Comcast and MaxLinear. (*Id.*) In response, Mr. Cave noted that the VSA included provisions protecting Comcast against patent infringement lawsuits, and Mr. Torgerson informed Mr. Cave that Mr. Seendripu intended to terminate the VSA. (*Id.* ¶ 9.) When Mr. Cave asked why Mr. Seendripu would do that, Mr. Torgerson stated that he did not know, but the implication, as Mr. Cave understood it, was that Mr. Seendripu intended to terminate the VSA to avoid the Covenant Not to Sue. (*Id.*) Mr. Torgerson then informed Mr. Cave that he understood that MaxLinear would abide by the VSA only if Comcast could convince Mr. Seendripu that "there is a solid chance of business in the future" between Comcast and MaxLinear. (*Id.* ¶ 10.)

On May 19, Mr. Seendripu, MaxLinear's CEO, emailed Charlie Herrin, President of the Technology, Product, Experience organization within Comcast Cable, asking to meet to discuss "opportunities to work together" and ways to "bring[ ] our innovative ideas to drive our mutual roadmap success." (Ex. D.) Mr. Seendripu did not mention terminating the VSA or SOW,

though he did acknowledge that Mr. Cave and Mr. Torgerson had been "having some good discussions currently." (*Id.*) In response to this email, and unaware of any attempted termination by MaxLinear, Mr. Herrin scheduled a remote meeting with Mr. Seendripu for May 25, 2023, at 3:00 p.m. Eastern. (*See* Herrin Decl. ¶ 7.)

On May 23, Comcast's procurement team received a letter—dated May 18, 2023 and supposedly sent via FedEx for overnight delivery—from MaxLinear's Chief Financial Officer, Steven Litchfield, which purported to "serve[] as MaxLinear, Inc.'s written notice to [Comcast] of termination of the Vendor Support Agreement . . . , including termination of Statement of Work #1 related thereto." (Ex. C.) The next day, on May 24, Mr. Kiriacoulacos responded by letter, informing Mr. Litchfield that his letter constituted a breach of the VSA and SOW and requesting that MaxLinear withdraw its attempted termination and confirm that it would continue to perform the services it is obligated to perform under the Agreements. (Ex. E.)

On May 25, Mr. Seendripu and Mr. Herrin spoke as planned. (*See* Herrin Decl. ¶ 10.) During this call, Mr. Herrin explained that he had been made aware of MaxLinear's letter attempting to terminate the Agreements, which created an acute business issue. (*Id.*) Mr. Seendripu explained that MaxLinear had sent the purported termination notice because his counsel believed Comcast was "conflating" the California Lawsuits and the VSA's Covenant Not to Sue and that MaxLinear should therefore "cancel" the VSA. (*Id.* ¶ 11.) Mr. Seendripu did not agree to withdraw MaxLinear's purported termination of the VSA or SOW. (*Id.* ¶ 12.) Although Mr. Seendripu indicated that MaxLinear would continue to support Comcast following its supposed May 18 termination notice, at no time did he state or represent that MaxLinear would continue to provide the services and support (or any subset of the services and support) required under the VSA and SOW, or that MaxLinear would do so for any period of time. (*Id.*)

MaxLinear did not respond to Mr. Kiriacoulacos's May 24, 2023 letter.  (*Id.* ¶ 13.)

### F.    The Current Action and MaxLinear's Shifting Position

Comcast commenced this action on May 26, 2023.  (ECF No. 1.)  Shortly thereafter, also on May 26, 2023, Comcast provided Mr. Seendripu, Mr. Litchfield, and MaxLinear's general counsel with a courtesy copy of the complaint.  (*See* Ex. F at 3.)  Comcast also alerted MaxLinear of its intent to file an order to show cause seeking a temporary restraining order and preliminary injunction once the summons in the case was issued after the Court reopened following the Memorial Day holiday weekend.  (*Id.*)

Two days later, on May 28, 2023, MaxLinear's outside counsel contacted outside counsel for Comcast, questioning the basis for a temporary restraining order and stating that MaxLinear purportedly had made clear to Comcast business personnel that MaxLinear "is willing, and continues, to provide commercially reasonable services to Comcast to avoid any business interruption."  (*Id.* at 2–3.)  Outside counsel for Comcast responded on May 29, 2023, stating that, contrary to the representations of MaxLinear's counsel in the May 28, 2023 email, MaxLinear had failed to provide Comcast with any assurance that it would continue to provide the services required by the Agreements for any period of time (including by failing to respond at all to Comcast's May 24 letter), even though Comcast had requested various assurances orally and in writing.  (*Id.* at 1–2.)  Comcast then offered to delay the filing of this motion by a short period of time if MaxLinear was prepared to provide—without equivocation—the assurances Comcast had requested.  (*Id.* at 2.)  Outside counsel for MaxLinear responded that same day and declined to provide such assurances.  (*Id.* at 1.)  Instead, counsel reiterated that MaxLinear will continue to provide "commercially reasonable services" to Comcast, "just as those services were provided before the May 18 termination notice," and that MaxLinear stands behind its

commitment to provide such services for 90 days from the May 18 notice, or until August 16, 2023.  (*Id.*)

Comcast filed the instant motion on May 30, 2023.

<u>**ARGUMENT**</u>

A movant is entitled to a preliminary injunction or temporary restraining order upon showing (1) "a likelihood of success on the merits"; (2) irreparable harm in the absence of an injunction; (3) "that 'the balance of hardships tips in the plaintiff's favor'"; and (4) "that 'the public interest would not be disserved by the issuance of an injunction.'"  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).

As set forth below, Comcast has satisfied all of the requirements for a preliminary injunction.  MaxLinear therefore should be enjoined from prematurely terminating the VSA and SOW and required to continue performing its obligations under the Agreements.

**I.    Comcast Is Likely to Succeed on the Merits of Its Claims**

Comcast is likely to succeed on its claims (i) that MaxLinear breached the VSA and SOW by attempting to terminate the Agreements prematurely and without notice and (ii) that it is entitled to a declaration that MaxLinear's attempted termination is invalid and that both the VSA and the SOW remain in full force and effect.

**A.    <u>MaxLinear Breached the VSA and SOW</u>**

To establish a breach of contract under New York law, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *See Goldberg v. Pace Univ.*, 535 F. Supp. 3d

180, 192–93 (S.D.N.Y. 2021) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).  Comcast satisfies each of these elements.

As an initial matter, there can be no dispute that Comcast and MaxLinear are parties to the VSA and SOW.  Comcast also has adequately performed under both Agreements, and MaxLinear has not contended otherwise.  (*See* Herrin Decl. ¶ 14.)

MaxLinear has breached the VSA and SOW by attempting to terminate them prematurely, in violation of the express terms of each agreement.  Under the VSA, MaxLinear may terminate the VSA upon 90 days' written notice to Comcast, but only after there is no active SOW for a period of one year.  (*See* Ex. A at 11.1.)  Because there is currently an active SOW between the parties (*see* Cave Decl. ¶ 7), MaxLinear cannot terminate the VSA at this time, even if it were to provide 90 days' notice (which it did not in its termination notice).  MaxLinear thus must continue to perform under the VSA and honor its terms for at least one year and 90 days *after* the SOW has been terminated.  Under the terms of the SOW, MaxLinear has the right to terminate it upon one year's notice to Comcast.  (*See* Ex. B at 3.)

MaxLinear breached the VSA's and SOW's respective termination provisions by sending its letter that purported to terminate both Agreements with no notice, effectively ignoring the circumstances under which either Agreement can be terminated.  (*See* Ex. C.)  Even when Comcast gave MaxLinear the opportunity to withdraw this improper (and ineffective) termination, MaxLinear declined Comcast's written request to do so.  (*See* Herrin Decl. ¶¶ 12–13.)  Only after Comcast initiated this action did MaxLinear—through its outside counsel—purport to commit to provide "commercially reasonable services" through August 16, 2023.  (*See* Ex. F at 1.)  But the VSA and SOW require far more than "commercially reasonable services,"

and, since sending its purported termination notice, MaxLinear has never committed to honor the terms of the VSA and SOW as it is obligated to do.

Moreover, MaxLinear's supposed post hoc commitment to provide such "commercially reasonable services" for 90 days compounds its original breach.  As noted, the SOW obligates MaxLinear to provide Comcast with notice of termination one year, not 90 days, in advance, and MaxLinear can only terminate the VSA on 90 days' notice *after* there has been no active SOW in place for one year.  (*See* Ex. A at 11.1; Ex. B at 3.)  Because there is an active SOW in place, MaxLinear cannot terminate the VSA on 90 days' notice, and any attempt to do so violates the VSA's clear terms.  If anything, MaxLinear's belated offer to continue providing "commercially reasonable services" for 90 days is an acknowledgement that its May 18 letter purporting to terminate both Agreements without any notice is a breach.  It also reflects MaxLinear's understanding that there is an active SOW in place; otherwise, MaxLinear's supposed commitment to provide post-May 18 services "just as those services were provided before the May 18 termination notice" would not make any sense.  (Ex. F at 1.)

Courts have found a likelihood of success on the merits (and granted preliminary injunctions) to prevent improper termination of a contract in nearly identical circumstances.  In *Rex Medical L.P. v. Angiotech Pharmaceuticals (US), Inc.*, 754 F. Supp. 2d 616 (S.D.N.Y. 2010), the movant sought a preliminary injunction barring one of its vendors from unilaterally terminating a marketing services agreement in violation of the agreement's termination provision.  *Id.* at 624.  The governing agreement provided that the vendor could terminate only if one of three enumerated circumstances occurred, and the court found "no evidence in the record . . . that any of those three circumstances ha[d] arisen."  *Id.*  Accordingly, the court found the movant had shown it was likely to succeed on its breach of contract claim and ultimately issued

an injunction preserving the status quo. *Id.* at 620, 625. Similarly, in *Eastman Kodak Co. v. Collins Ink Corp.*, 821 F. Supp. 2d 582, 587, 591 (W.D.N.Y. 2011), the court found a likelihood of success on the merits where the defendant attempted to terminate the contract in violation of its terms and enjoined the defendant from "dishonoring its contractual obligation" and "terminating th[e] contract, other than in accordance with the termination provisions." The same conclusion follows here.

B.    Comcast Is Entitled to a Declaration That MaxLinear's Attempted
        <u>Termination Is Invalid and the VSA and SOW Remain in Full Force and Effect</u>

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201. Claims for declaratory judgment are properly brought where there is "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 473 (S.D.N.Y. 2019) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "[D]eclaratory judgment is a proper method for settling justiciable disputes as to contract rights and obligations." *GemShares, LLC v. Kinney*, 2017 WL 1092051, at *2 (S.D.N.Y. Mar. 15, 2017). Courts routinely issue declaratory judgments resolving disputes over contract terminations. *See, e.g.*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 (2d Cir. 2011) (finding a declaratory judgment appropriate to determine the meaning of a termination provision after one party attempted termination); *Wells Fargo Bank, N.A. v. Sharma*, 642 F. Supp. 2d 242, 247 (S.D.N.Y. 2009) (deeming cognizable an action seeking a declaration that the defendant

"lack[ed] the right to rescind or terminate [agreement]" because "the legal relation between the parties [was] uncertain, and a judgment . . . would clarify and settle any uncertainty").

To determine "whether to entertain an action for declaratory judgment," courts consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Comcast satisfies both prongs here.

First, there is a substantial and sufficiently immediate controversy between Comcast and MaxLinear regarding the interpretation of the Agreements' termination provisions and the effect of MaxLinear's attempted termination: Comcast believes that MaxLinear must satisfy the terms of the VSA and SOW to terminate either Agreement by, among other things, providing the requisite notice; however, MaxLinear has attempted to terminate the VSA and SOW improperly and prematurely, without providing any notice and ██████████████████████████ ████████████████████████████████████████. Second, a declaration that MaxLinear's attempted termination is invalid and that the VSA and SOW remain in full force and effect would clarify the parties' dispute over the Agreements' termination provisions and finalize the controversy, which hinges on the validity of the termination. Accordingly, Comcast is entitled to a declaration that MaxLinear's termination notice to Comcast is invalid and that both the VSA and the SOW remain in full force and effect.

## II.    Comcast Will Suffer Irreparable Harm Absent a Preliminary Injunction

Irreparable harm is injury that is "actual and imminent and that cannot be remedied by an award of monetary damages." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015); *see also WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (explaining

that, in assessing whether threatened harm would be irreparable, "[c]ourts must pay 'particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for [the] injury'" (quoting *Salinger*, 607 F.3d at 80)).  Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).  Harms such as reputational damage, loss of goodwill, and loss of customers can constitute irreparable harm. *See Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (holding that loss of prospective goodwill can constitute irreparable harm); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (affirming district court's finding that movant–company would suffer "irreparable harm through loss of reputation, good will, and business opportunities" where, absent injunction, company would lose relationships with customers).

At present, Comcast has deployed over 14 million BWG, XB3, XB6-CommScope, and XB7-CommScope gateways containing MaxLinear chips to customers.  (Cave Decl. ¶ 6.) MaxLinear's role under the SOW is to provide the necessary service and support to ensure that those devices continue working properly, ███████████████████████████████████

████████████████.  (*Id.*)  In addition, MaxLinear is obligated to support Comcast's development of new features for ███████████████████████████████

████████████████.  (*Id.*)

If MaxLinear stops providing service under the VSA and SOW due to its purported termination, █████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████.  (*Id.* ¶ 12.)

MaxLinear's termination of service will also ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████. (*Id.* ¶ 13.)

    Perhaps most critically, ███████████████████████████████████████

████ should MaxLinear terminate its support. (*Id.* ¶ 14.) ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ (*Id.*)  In addition,

Comcast will be ████████████████████████████████████████████████████

███████████████████ without the support MaxLinear is obligated to provide.  (*Id.* ¶ 15.)

       ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████. (*Id.* ¶ 16.)  Further, Comcast risks damage to its reputation as

a ███████████████████████████████████. (*Id.*)  The risk of reputational damage and loss

of goodwill is particularly acute given the █████████████████████ now that

MaxLinear has purported to terminate its obligation to provide services and support under the

VSA and SOW.  (*Id.* ¶ 17.) █████████████████████████████, in the absence of

MaxLinear's support, ████████████████████████████████████

███████████████████████████████████████████████. (*Id.* ¶ 18.)

    If MaxLinear were to terminate immediately and halt its services and support, Comcast

███████████████████████████████████████████████████████████. (*Id.*

¶ 19.)  Providing such service requires ██████████████████████████, to which

neither Comcast nor, to Comcast's knowledge, ███████████████████. (*Id.*)  Accordingly,

to Comcast's knowledge, MaxLinear is the ██████████████████████████████

████████████████████████████████████████████████████████████.

(*Id.*)  This is precisely why Comcast negotiated for a one-year notice period before MaxLinear could terminate the SOW so that it could have sufficient time to identify an alternative means of supporting its broadband customers with MaxLinear chips if MaxLinear no longer would provide service and support.  (*Id.* ¶ 20.)

MaxLinear's vague commitment to "support" Comcast and, post-Complaint, to provide "commercially reasonable services" through August 16, 2023, does not mitigate the irreparable harm Comcast is facing.  Because the parties' Agreements require far more than "commercially reasonable services," it appears that MaxLinear does not intend to perform a significant portion of its obligations between now and August 16, leaving Comcast and its customers exposed to the risk that MaxLinear will refuse to provide a critical service at any time.  Further, MaxLinear's failure to abide by the VSA's and SOW's notice requirements deprives Comcast of its bargained-for protections to determine an alternative service and support plan for its millions of broadband customers if MaxLinear were to terminate (a process that necessarily would take more than 90 days, as reflected in the termination provisions of the Agreements).  If MaxLinear were to cease providing support and services in 90 days as it has stated, Comcast and its customers would face the exact same harms as they would face if service was terminated in its entirety today, only 90 days later.

Courts in this Circuit have issued preliminary injunctions in circumstances where it is necessary to prevent the types of irreparable harm Comcast is facing.  *See, e.g.*, *Millennial Plastic Surgery PLLC v. James*, 2021 WL 5988322, at *2 (S.D.N.Y. Dec. 16, 2021) (holding that "the loss of a relationship with a client that would produce an indeterminate amount of business

in years to come" established irreparable harm (quoting *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999))); *Regeneron Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 510 F. Supp. 3d 29, 40 (S.D.N.Y. Dec. 30, 2020) (finding plaintiff would likely suffer irreparable harm where it would "lose existing business and new customers to competitors" absent injunctive relief); *Asa v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 244 (W.D.N.Y. 2010) (finding irreparable harm where the plaintiff would lose its current customers, noting that it was "not necessary for [the plaintiff] to show that its business would effectively be destroyed").

Courts also find irreparable harm where, as here, the movant faces a risk that its reputation in an industry and goodwill will be impaired. *See, e.g.*, *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 175 (S.D.N.Y. 2022) (finding irreparable harm due to reputational injury caused by the inability to fulfill existing orders and the need to decline future orders); *Rex Med. L.P.*, 754 F. Supp. 2d at 623 (finding irreparable harm where, even if the plaintiff might eventually find an alternative distributor, the sale of the product at issue would be completely halted for a period, resulting in reputational harm "in ways that cannot be valued"); *Indep. Wireless One Corp. v. Town of Charlotte*, 242 F. Supp. 2d 409, 416 (D. Vt. 2003) (finding irreparable harm where customers of the plaintiffs' telecommunication services would experience increased dropped calls and roaming charges, causing harm to the plaintiff's reputation that would be difficult to quantify).

## III.    The Balance of the Equities Favors Comcast

The equities unquestionably weigh in favor of enforcing the VSA's and SOW's termination provisions. Each Agreement clearly and unequivocally affords Comcast the right to a one-year lead time prior to the cessation of any services and a total of a two years and 90 days' lead time prior to the termination of the VSA. Comcast further will suffer significant irreparable

harm if MaxLinear is permitted to flout the termination provisions—harm that will extend to

███████████████████████████████████████████████████████████████

███████████████ for no valid reason.  By contrast, MaxLinear has brazenly breached the

VSA and SOW termination provisions to further its own financial interests in the California

Lawsuits.  Indeed, when asked about the reason why MaxLinear would terminate its Agreements

with Comcast, the MaxLinear executive could not provide a reason; however, the implication

was that the termination was intended to preserve Entropic's ability to bring its patent

infringement claims against Comcast.  (*See* Cave Decl. ¶¶ 8–11.)  In addition, MaxLinear's CEO

told a Comcast executive that counsel advised him to "cancel" the VSA to free the MaxLinear

Patents from the VSA's protections, i.e., the Covenant Not to Sue.  (*See* Herrin Decl. ¶ 11.)

Because the requested injunction would simply maintain the status quo to which

MaxLinear long ago agreed, yet Comcast faces a risk of significant irreparable harm, the equities

weigh heavily in Comcast's favor.  *See, e.g.*, *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 98

(S.D.N.Y. 2021) (holding "the balance of equities tips in favor of injunctive relief" where the

movant otherwise would be deprived of a contractually guaranteed benefit); *Intertek Testing

Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 346 (E.D.N.Y. 2020) (holding the balance of

equities militated in favor of injunctive relief where the court would be "enforcing contractual

obligations to which the . . . defendants freely agreed"); *R Squared Glob., Inc. v. Serendipity 3,

Inc.*, 2011 WL 5244691, at *8 (S.D.N.Y. Nov. 3, 2011) ("The balance of equities tips decidedly

in favor of requiring that the parties continue fulfilling their obligations under the Agreement.").

## IV.    The Public Interest Favors Issuance of a Preliminary Injunction

New York has a well-established policy of enforcing contracts as they are written and

recognizes that "the public interest . . . is served by the enforcement of the parties' lawful

agreement." *Benihana, Inc.*, 784 F.3d at 897; *see also Rex Med. L.P.*, 754 F. Supp. 2d at 626.

Here, Comcast asks the Court to enforce the terms of the VSA and SOW to which MaxLinear

agreed and to prevent MaxLinear from flouting its contractual obligations.  This is precisely the

type of outcome the public interest favors.  *See, e.g.*, *Avon Co. v. Fareva Morton Grove, Inc.*,

2022 WL 2208156, at *9 (S.D.N.Y. June 21, 2022) ("Granting a preliminary injunction is in the

public interest because it serves the strong public policy of enforcing valid contracts." (citing *Rex*

*Med. L.P.*, 754 F. Supp. 2d at 626)); *Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*, 2020 WL

915824, at *12 (S.D.N.Y. Feb. 26, 2020) ("[T]here is undoubtedly a public interest in enforcing

valid contracts including such restrictive covenants as they may contain." (quoting *HRB Res.*

*LLC v. Schon*, 2019 WL 4015256, at *3 (N.D.N.Y. Apr. 25, 2019))).

Moreover, a preliminary injunction would further the public interest by protecting

millions of Comcast's broadband customers who otherwise ███████████████████████████

███████████████████████████████████.  The need for ████████████████████ Internet

service cannot be underscored enough in today's society, where people work remotely, go to

school online, and often rely on the Internet for their everyday needs.  The public interest

would—and should—be served by protecting these individuals' right to maintain access to open

lines of communication through ████████████████████████.  *See, e.g.*,

*N.Y. State Telecomms. Ass'n, Inc. v. James*, 544 F. Supp. 3d 269, 288–89 (E.D.N.Y. 2021)

(holding that public interest would be served where there may have been ██████████████████

access absent injunctive relief).

## **CONCLUSION**

For the foregoing reasons, Comcast respectfully requests that the Court issue a

preliminary injunction and temporary restraining order enjoining MaxLinear from prematurely

terminating the VSA and SOW and ordering MaxLinear to continue to perform under both

Agreements.


Dated: New York, New York
May 30, 2023

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

*/s/ Dana M. Seshens*
Dana M. Seshens

450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:   (212) 701-5800
dana.seshens@davispolk.com

 – and –

David J. Lisson*

1600 El Camino Real
Menlo Park, California 94025
Telephone:   (650) 752-2000
Facsimile:   (650) 752-2111
david.lisson@davispolk.com

**pro hac vice* application forthcoming

*Attorneys for Plaintiffs Comcast Cable
Communications Management, LLC and
Comcast Cable Communications, LLC*