UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC and COMCAST CABLE
COMMUNICATIONS, LLC,

                  Plaintiffs,

        - against -

MAXLINEAR, INC. and ENTROPIC
COMMUNICATIONS, LLC,

                Defendant.

Civil Action No. 1:23-cv-4436-AKH

---

## **SECOND AMENDED COMPLAINT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Plaintiffs Comcast Cable
Communications Management, LLC and
Comcast Cable Communications, LLC*

Plaintiffs Comcast Cable Communications Management, LLC and Comcast Cable Communications, LLC ("Plaintiffs" or "Comcast"), by and through their undersigned attorneys, as and for their Second Amended Complaint against MaxLinear, Inc. ("MaxLinear") and Entropic Communications, LLC ("Entropic," together with MaxLinear, "Defendants"), allege as follows:

**NATURE OF THE ACTION**

1.      This action arises from MaxLinear's decision to prioritize wholly improper patent infringement lawsuits over its contractual obligations to its business partner, Comcast, and from Entropic's wrongful interference with those obligations.

2.      MaxLinear provides chips for millions of broadband gateways used to provide Internet service to Comcast customers.  Pursuant to a Vendor Support Agreement ("VSA") and related Statement of Work ("SOW," together with the VSA, the "Agreements"), MaxLinear agreed to provide service and support to Comcast to maintain those broadband gateways so that Comcast's customers may continue to enjoy the high-quality Internet service Comcast provides. Comcast has consistently upheld its end of the bargain and recently was considering ways in which to broaden and expand its MaxLinear relationship.

3.      But MaxLinear has taken a different approach.  Rather than adhere to its contractual obligations, MaxLinear intentionally has worked to circumvent them in a transparent attempt to further patent infringement lawsuits against Comcast and in reckless disregard of Comcast's rights under the VSA.  MaxLinear began by assigning part of its patent portfolio to Entropic, a specialized entity that was formed to assert patent infringement claims (in which MaxLinear retains a financial interest) against a host of operating companies, including Comcast. Entropic then asserted those patents against Comcast in two lawsuits in the United States District Court for the Central District of California (the "California Lawsuits").  But the problem for

1

MaxLinear and Entropic is that the VSA contains an express covenant not to sue Comcast ("Covenant Not to Sue") during the VSA's term that encumbers the assigned patents irrespective of who owns them.

4.      MaxLinear at no point took any steps to ensure that it, or its assignee and patent litigation proxy, Entropic, would abide by the terms of the VSA's Covenant Not to Sue when it assigned its patents to Entropic, and it has consistently refused to do so since Entropic initiated suit against Comcast.

5.      Instead, MaxLinear and Entropic engaged in a scheme to try to save the California Lawsuits from the Covenant through MaxLinear's purported termination of the Agreements.  But the VSA and SOW contain express termination provisions that prohibit MaxLinear's unilateral termination without the required notice.  Specifically, the VSA provides that MaxLinear may terminate that agreement only "upon ninety (90) days' prior written notice to Comcast, if there has been no active SOW for a period of 1 year," while the SOW provides that "MaxLinear may terminate this SOW at any time upon one (1) years' written notice to Comcast."

6.      By letter dated May 18, 2023 (but not received by Comcast's procurement team until May 23, 2023), MaxLinear, with no notice to Comcast and, upon information and belief, in coordination with Entropic, purported to terminate both the VSA and SOW prematurely and with immediate effect.  Comcast responded by letter dated May 24, 2023, notifying MaxLinear that it was in breach of the Agreements and requesting that MaxLinear withdraw its premature termination notice.  MaxLinear never responded to Comcast's letter.

7.      In light of MaxLinear's actions, Comcast had no choice but to seek relief from this Court, including a temporary restraining order and preliminary injunction to prevent the irreparable harm Comcast and its customers would suffer if MaxLinear were to terminate the

VSA and SOW immediately and stop providing services and support for Comcast devices. Only on the doorstep of the hearing on Comcast's application for a preliminary injunction did MaxLinear agree to perform all of its services, and the obligations with respect to services, in a timely manner and without qualification, pursuant to the VSA and SOW, until May 23, 2024.

8.     MaxLinear, however, continues to maintain its position that the VSA, including the Covenant not to Sue, and SOW are effectively terminated as of May 23, 2023—the day Comcast received the purported termination notice—in clear breach of their express terms. Moreover, Entropic continues to assert the assigned patents in the California Lawsuits, causing ongoing harm to Comcast. Accordingly, Comcast brings the instant action to enforce its contractual rights and redress the harm caused by MaxLinear and Entropic.

## THE PARTIES

9.     Plaintiff Comcast Cable Communications, LLC ("Comcast Cable") is a Delaware limited liability company with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania 19103. Comcast Cable's sole member is Comcast Holdings Corporation, a Pennsylvania Corporation with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania 19103.

10.    Plaintiff Comcast Cable Communications Management, LLC ("Comcast Management") is a Delaware limited liability company with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania 19103. Comcast Management's sole member is Comcast Cable. Comcast Cable's sole member is Comcast Holdings Corporation, a Pennsylvania Corporation with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania 19103.

11.     Defendant MaxLinear is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5966 La Place Court, Suite 100, Carlsbad, California 92008.

12.     Upon information and belief, Defendant Entropic is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 7150 Preston Road, Suite 300, Plano, Texas 75024.

13.     Upon information and belief, Defendant Entropic is a wholly owned subsidiary of Entropic Holdings LLC, a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business at 1209 N. Orange Street, Wilmington, DE 19801.

14.     Upon information and belief, various investment funds hold an ownership interest in Entropic Holdings LLC, including (1) FIP UST LP, a limited partnership organized under the laws of Delaware with a principal place of business at 1345 Avenue of the Americas, New York, New York 10105; (2) Fortress Intellectual Property Opportunities Fund I (A) LP, a limited partnership organized under the laws of Delaware with a principal place of business at 1345 Avenue of the Americas, New York, New York 10105; (3) Fortress Intellectual Property Opportunities Fund I (B) L.P., a limited partnership organized under the laws of the Cayman Islands with a principal place of business at 1345 Avenue of the Americas, New York, New York 10105; (4) Fortress Intellectual Property Opportunities I Fund (C) L.P., a limited partnership organized under the laws of the Cayman Islands with a principal place of business at 1345 Avenue of the Americas, New York, New York 10105; (5) FCOF V UST LLC, a limited liability company organized under the laws of Delaware with a principal place of business at 1345 Avenue of the Americas, New York, New York 10105; (6) Fortress Credit Opportunities

Fund (A) L.P., a limited partnership organized under the laws of Delaware with a principal place

of business at 1345 Avenue of the Americas, New York, New York 10105; (7) Fortress Credit

Opportunities Fund (G) L.P., a limited partnership organized under the laws of the Cayman

Islands with a principal place of business at 1345 Avenue of the Americas, New York, New

York 10105; and (8) L3 Investment Holdings LP, a limited partnership organized under the laws

of the United Kingdom with a principal place of business at 50 Lothian Road, Festival Square,

Edinburgh, EH3 9WJ.

15.     On October 16, 2023, Comcast asked Entropic to confirm that none of its

members, or any other entity whose citizenship may be attributed to Entropic, are citizens of the

Commonwealth of Pennsylvania.  Entropic did not identify any such entities in response.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is

complete diversity of citizenship between the parties.  Plaintiffs Comcast Management and

Comcast Cable are citizens of Pennsylvania.  Defendant MaxLinear is a citizen of Delaware

and/or California, but not Pennsylvania.  Upon information and belief, Defendant Entropic is a

citizen of Delaware, New York, and/or Texas, but not Pennsylvania.

17.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.

18.     This Court has personal jurisdiction over MaxLinear.  Pursuant to VSA § 14.1,

MaxLinear agreed that "any claim or controversy arising out of or relating to this [VSA] shall be

brought exclusively in federal or state court located in New York, New York and the Parties

[including MaxLinear] hereby consent to personal jurisdiction and venue in such court."

19.     The Court has personal jurisdiction over Entropic because the VSA provides that

"any claim or controversy arising out of or relating to this [VSA] shall be brought exclusively in

federal or state court located in New York, New York"; because Comcast's claims against

Entropic arise out of MaxLinear's breaches of the Agreements and depend on the existence and validity of the Agreements; because Entropic knew of the Agreements and the VSA's forum selection clause prior to and while engaging in its unlawful conduct; because Entropic is "closely related" to MaxLinear and this dispute, working in concert with MaxLinear to procure its breach of the Agreements; and because Entropic's role as MaxLinear's assignee and its involvement in MaxLinear's breach (and its own related tortious conduct) made enforcement of the VSA's forum selection clause against Entropic foreseeable.

20.     This Court also has personal jurisdiction over Entropic because the causes of action arise out of, and are related to, Entropic's contacts with New York.  For example, when Entropic was formed on or about March 29, 2021, its principal place of business was 1345 Avenue of the Americas, New York, New York 10105, and its certificate of formation was signed by an officer in New York.  Further, Entropic's principal place of business was 1345 Avenue of the Americas, 46th Floor, New York, New York 10105 on and around on March 31, 2021, when Entropic negotiated and entered into the agreements to obtain rights to the relevant patents from MaxLinear for the purpose of asserting those patents in litigation against Comcast. Further, the patent assignments list Entropic's address as 1345 Avenue of the Americas, 46th Floor, New York, New York 10105.

21.     Venue in this judicial district is proper under 28 U.S.C. § 1391 and VSA § 14.1.

## FACTUAL ALLEGATIONS

22.     Comcast is a major provider of telecommunication services, including Internet, cable television, and telephone services.  Comcast provides broadband Internet services to over 30 million customers.

23.     MaxLinear manufactures chips used in certain broadband gateways that Comcast provides to its customers so that they may receive broadband Internet service.

24.     Entropic was created in 2021 for the purpose of patent monetization, including through patent litigation.

**Comcast and MaxLinear Enter into the VSA and SOW**

25.     Effective August 1, 2020, Comcast Management, on behalf of its affiliates and subsidiaries (including Comcast Cable), and MaxLinear entered into the VSA, which sets out the terms and conditions pursuant to which MaxLinear provides support services to Comcast.

26.     Among other things, the VSA addresses certain intellectual property matters, including a covenant, on behalf of MaxLinear and its affiliates, not to sue Comcast Management and its affiliates for infringement of any MaxLinear or MaxLinear-affiliate patent during the term of the VSA:

> 7.3.    <u>Covenant Not to Assert</u>.  **During the Term**, **Vendor, on behalf of itself and all Affiliates (each, a "Vendor Covenanting Party"),** to the extent Comcast, Comcast's Affiliates, (each, a "Comcast Protected Party") have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark, or knowingly misappropriated a Vendor Covenanting Party's trade secret, **covenants not to sue Comcast Protected Party for patent, copyright, or trademark infringement, or for misappropriation of trade secrets, as the case may be, with respect to Comcast Protected Party's purchase, use, or deployment of any product or service.**

27.     MaxLinear further agreed to indemnify Comcast for costs, expenses, and losses resulting from third-party claims against Comcast arising from MaxLinear's gross negligence or intentional misconduct:

> 10.1.   <u>Uncapped General Indemnification</u>. **Vendor hereby agrees to defend, indemnify, and hold Comcast, its parents, affiliates, subsidiaries and their officers, directors, agents, and employees harmless against all costs, expenses, and losses (including reasonable attorney fees and costs) incurred through claims of third parties against Comcast based on or arising from**: (a) Vendor's breach of Section 5 (Confidential Information) or Section 14.8 (Publicity); (b) Vendor's negligent acts or omissions in performance under the Agreement that cause personal injury or property damage; (c) Vendor's violations of applicable law; (d) **Vendor's gross negligence or intentional misconduct**; and/or

(e) assertions under workers' compensation or similar employee benefit acts by Vendor or its employees or agents.

28.     In addition, MaxLinear agreed to cooperate with Comcast in legal and business matters:

> 13.   <u>Cooperation in Legal and Business Matters</u>.  Vendor agrees to cooperate fully with Comcast in connection with any legal or business matter, including, without limitation, any dispute, claim or lawsuit, relating to the Services provided by Vendor pursuant to this Agreement.

29.     The VSA provides that Comcast may request that MaxLinear provide certain services, including deliverables and support, to be described in a Statement of Work.  Once a Statement of Work is executed by both parties, it is incorporated into and subject to the terms and conditions of the VSA.

30.     In November 2020, Comcast Management and MaxLinear executed the SOW, pursuant to which MaxLinear agreed to provide ongoing support services for certain broadband gateways that include one or more chips produced by MaxLinear.  Specifically, under the SOW, MaxLinear is obligated to provide "feature development, bug fixes, and security patches/fixes" for Comcast's BWG, XB3, XB6-CommScope, and XB7-CommScope gateways.  The SOW also commits MaxLinear to provide, among other things, software and hardware warranties and to ensure continuity of supply for parts that meet Comcast's specifications.

31.     At present, Comcast has deployed to customers over 14 million BWG, XB3, XB6-CommScope, and XB7-CommScope gateways containing MaxLinear chips.  MaxLinear's role under the SOW is to provide support necessary to ensure that those devices continue working correctly and securely.

32.     The VSA provides that, unless terminated as specified therein, it will continue through July 31, 2026, and that it shall continue to govern any outstanding SOWs until their

expiration or termination.  MaxLinear may terminate the VSA "upon ninety (90) days' prior written notice to Comcast, if there has been no active SOW for a period of 1 year."

33.    The completion date of the SOW is July 31, 2026.  The SOW is subject to termination by MaxLinear only "upon one (1) years' written notice to Comcast."

34.    The SOW remains active.

35.    MaxLinear's Chief Financial Officer, Steven Litchfield, signed both the VSA and SOW on behalf of MaxLinear.

**MaxLinear Assigns Patents to Entropic and Entropic Sues Comcast**

36.    On March 31, 2021, MaxLinear and its wholly owned subsidiary, MaxLinear Communications LLC, assigned their rights in certain U.S. patents (the "MaxLinear Patents") to Entropic.

37.    MaxLinear and MaxLinear Communications LLC's assignment agreements were respectively signed by MaxLinear's chief executive officer, Kishore Seendripu, and Mr. Litchfield.

38.    Upon information and belief, MaxLinear, with reckless (if not intentional) disregard for Comcast's rights under the VSA and the Covenant Not to Sue, assigned the MaxLinear Patents to Entropic to monetize them and enable MaxLinear to profit from Entropic's patent litigations against entities such as Comcast.  However, the MaxLinear Patents remain encumbered by the VSA's Covenant Not to Sue, even after the assignment to Entropic.

39.    During the course of MaxLinear's relationship with Entropic, MaxLinear also has shared Comcast's confidential information without consent, in violation of existing confidentiality obligations to Comcast.

40.    On February 10, 2023, Entropic filed the California Lawsuits, asserting the MaxLinear Patents against Comcast in the United States District Court for the Central District of California.  *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, C.A. No. 2:23-cv-01048-JWH-KES (C.D. Cal.); *Entropic Commc'ns, LLC v. Comcast Corp. et al.*, C.A. No. 2:23-cv-01050-JWH-KES (C.D. Cal.).

41.    MaxLinear retains a financial interest in both California Lawsuits.  Upon information and belief, MaxLinear also is obligated to assist and cooperate with Entropic, including with respect to the California Lawsuits.

42.    On March 7, 2023, in-house counsel for Comcast sent a letter to Entropic's counsel advising Entropic of restrictions on the MaxLinear Patents as a result of Comcast and MaxLinear's business relationship.

43.    On April 19, 2023, in-house counsel for Comcast spoke with Entropic's CEO, Boris Teksler, by phone and informed him that the MaxLinear patents were encumbered by the Covenant Not to Sue.  Mr. Teksler represented on that call that he was not aware of the VSA or the Covenant Not to Sue.

44.    On April 28, 2023, Peter Kiriacoulacos, Comcast's Chief Procurement Officer, spoke by phone with Kishore Seendripu, the CEO of MaxLinear.  Mr. Kiriacoulacos asked Mr. Seendripu whether he was aware of the Covenant Not to Sue and conveyed that Comcast would like for Entropic to drop the California Lawsuits given the Covenant.  Despite MaxLinear's obligation to cooperate with Comcast, Mr. Seendripu conveyed that MaxLinear would not take any action to honor the Covenant Not to Sue.  Mr. Seendripu further acknowledged that MaxLinear had a financial interest in the California Lawsuits.

45.     On May 3, 2023, with the consent of MaxLinear, in-house counsel for Comcast sent Mr. Teksler a copy of the VSA and the SOW.

46.     On May 4, 2023, in-house counsel for Comcast spoke with Mr. Teksler by phone and explained, again, that the VSA's Covenant Not to Sue barred the California Lawsuits.

47.     On or about May 8, 2023, Comcast's outside counsel informed Entropic that Comcast intended to move to dismiss the California Lawsuits for lack of jurisdiction based on the VSA's Covenant Not to Sue.  Comcast filed such motions to dismiss the California Lawsuits on May 22, 2023.

**Entropic and MaxLinear Attempt to Further Circumvent the Covenant Not to Sue through Improper Termination of the Agreements**

48.     On May 18, 2023, William Torgerson, Vice President and General Manager of MaxLinear's Broadband Group, met with Jon Cave, Comcast's Senior Vice President of Broadband, Xfinity Home, and Entertainment Devices, Product Strategy, and Management.

49.     During that meeting, Mr. Torgerson raised the Entropic patent infringement lawsuits against Comcast and questioned how the lawsuits might impact Comcast and MaxLinear's relationship.  As part of that discussion, Mr. Torgerson communicated to Mr. Cave that Mr. Seendripu intended to terminate the VSA and implied that such termination was an attempt to terminate the Covenant Not to Sue so that Entropic would be free to pursue its patent infringement claims against Comcast.  Mr. Torgerson stated that he thought Mr. Seendripu would abide by the terms of the VSA only if Comcast could convince Mr. Seendripu that "there is a solid chance of business" between MaxLinear and Comcast.

50.     Mr. Torgerson did not communicate any business justification for MaxLinear's desire to prematurely terminate the VSA and SOW other than MaxLinear's desire to circumvent the Covenant Not to Sue.

51.    On May 19, 2023, Mr. Seendripu sent an email to Charlie Herrin, Comcast

Cable's President of Technology, Product, Experience.  In that email, Mr. Seendripu requested a

meeting with Mr. Herrin to discuss "opportunities to work together" moving forward.

Mr. Seendripu's email made no mention of any termination of the VSA or SOW or of any

intention to terminate those Agreements.  Mr. Seendripu and Mr. Herrin agreed to meet remotely

on May 25, 2023.

52.    On May 23, 2023, Comcast's procurement team received a letter signed by

MaxLinear's CFO, Steven Litchfield, that purported to terminate the VSA and SOW (the

"Termination Letter").  The Termination Letter, which is dated May 18, 2023, reads in its

entirety:

> This letter serves as MaxLinear, Inc.'s written notice to Comcast Cable
> Management Communications, LLC [sic] ("Comcast") of termination of the
> Vendor Support Agreement dated as of August 1, 2020 (the "Agreement"),
> including termination of Statement of Work #1 related thereto.

53.    The Termination Letter included no reference to the termination provisions in the

VSA or SOW, nor did it refer to the termination notice periods of the Agreements.

54.    Entropic discussed the Agreements, including the Covenant Not to Sue, with

MaxLinear shortly after Comcast informed Entropic that the MaxLinear Patents were

encumbered by the Covenant Not to Sue.  Upon information and belief, those communications

included discussions with MaxLinear concerning MaxLinear's purported termination of the

Agreements.  In the California Lawsuits, Entropic has asserted common interest privilege over

communications with MaxLinear that postdate the initiation of the California Lawsuits.

55.    Upon information and belief, Entropic procured MaxLinear's breach of the

Agreements by inducing, compelling, and/or coordinating with MaxLinear to attempt to

terminate the Agreements prematurely in furtherance of the California Lawsuits.

56.     By letter dated May 24, 2023, Mr. Kiriacoulacos responded to the Termination Letter, informing MaxLinear that it constituted a breach of the VSA and SOW. Mr. Kiriacoulacos requested that MaxLinear withdraw its attempted termination and confirm by 5:00 p.m. ET on May 25, 2023, that it would continue to perform the services it is obligated to perform under the Agreements.

57.     Mr. Herrin and Mr. Seendripu held a remote meeting on May 25, 2023, as previously planned. Mr. Herrin informed Mr. Seendripu that MaxLinear's attempts to terminate the VSA and SOW were improper. Mr. Seendripu stated that counsel advised him to "cancel" the VSA to free the MaxLinear patents from the VSA's protections, i.e., the Covenant Not to Sue. Mr. Seendripu did not agree to withdraw the Termination Letter.

58.     MaxLinear did not respond to Comcast's May 24, 2023 letter.

**Comcast Files Its Original Complaint in This Action**

59.     On May 26, 2023, Comcast filed its original complaint in this action.

60.     On May 30, 2023, Comcast filed an application for a preliminary injunction and temporary restraining order (i) enjoining MaxLinear from prematurely terminating the VSA and SOW and (ii) ordering MaxLinear to continue to perform its obligations under both Agreements.

61.     On June 2, 2023, MaxLinear agreed to perform all of its services, and the obligations with respect to services, in a timely manner and without qualification, pursuant to the VSA and SOW, until the later of (a) August 16, 2023, or (b) 30 days after the Court resolved Comcast's Application for a preliminary injunction. As a result, Comcast withdrew its request for a temporary restraining order. Comcast and MaxLinear reserved all of their respective rights, claims, and defenses relating to or arising out of the VSA and the associated SOW, including,

but not limited to, each Party's position with respect to the termination and enforceability of the VSA and SOW, including the covenants and obligations therein.

62. The Court scheduled the hearing on Comcast's application for a preliminary injunction for September 14, 2023.

63. On September 12, 2023, MaxLinear agreed to perform all services, and obligations with respect to those services, pursuant to the VSA and SOW until May 23, 2024—the full one-year notice period required under the SOW's termination provision. As a result, Comcast withdrew its request for a preliminary injunction. Comcast and MaxLinear each reserved all of its rights, claims, and defenses relating to or arising out of the VSA and the associated SOW, including, but not limited to, each Party's position with respect to the termination and enforceability of the VSA and SOW, including the covenants (e.g., VSA § 7.3) and obligations therein.

**Entropic Relies on MaxLinear's Improper Termination to Try to Save the California Lawsuits**

64. On June 5, 2023—ten days after Comcast initiated this litigation—Entropic filed its First Amended Complaint for Patent Infringement in each of the California Lawsuits (the "Entropic FACs").

65. On June 20, 2023, Comcast moved to dismiss the Entropic FACs for lack of jurisdiction based on the VSA's Covenant Not to Sue.

66. On June 30, 2023, Entropic filed its opposition to Comcast's motion to dismiss the Entropic FACs and argued that "[t]he VSA does not deprive this court of jurisdiction because it has been terminated."

67. MaxLinear and Entropic have thus confirmed what Mr. Seendripu and Mr. Torgerson expressed: the sole reason for attempting to prematurely terminate the VSA and

SOW—in plain breach of the Agreements' termination provisions—was to circumvent the VSA's Covenant Not to Sue so that Entropic and MaxLinear could attempt to maintain the California Lawsuits at Comcast's expense.

68.     As of this filing, Comcast's motion to dismiss the California Lawsuits remains outstanding.

## CAUSES OF ACTION

### COUNT I
**(Breach of Contract Against MaxLinear)**

69.     Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     The VSA is a valid, enforceable contract between Comcast and MaxLinear.

71.     The SOW is a valid, enforceable contract between Comcast and MaxLinear.

72.     Comcast has performed all its obligations under both the VSA and SOW.

73.     MaxLinear has breached the VSA and SOW by attempting to terminate both Agreements without complying with their respective termination provisions.

74.     MaxLinear also breached the VSA by refusing to cooperate with Comcast, including with respect to the California Lawsuits.

75.     MaxLinear is not excused from performing its obligations under either Agreement.

76.     MaxLinear's breaches of the VSA and SOW constituted gross negligence and/or willful misconduct, including because MaxLinear assigned the MaxLinear Patents to Entropic in intentional or reckless disregard of Comcast's rights under the VSA and because MaxLinear engaged in a course of conduct intended to deprive Comcast of its rights under the Covenant Not to Sue and to harm Comcast.  MaxLinear's breaches also have subjected Comcast to undue

burden and forced it to incur unnecessary legal expenses, including in connection with the California Lawsuits, which have at all times been barred by the Covenant Not to Sue.

77.    MaxLinear's breaches will cause Comcast to suffer harm, including, but not limited to monetary damages, including but not limited to damages, costs, expenses, and/or attorneys' fees it has incurred or may incur in connection with the California Lawsuits.

**COUNT II**
**(Declaratory Judgment Against MaxLinear)**

78.    Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

79.    The VSA is a valid, enforceable contract between Comcast and MaxLinear.

80.    The SOW is a valid, enforceable contract between Comcast and MaxLinear.

81.    Comcast is entitled to a declaratory judgment that MaxLinear's attempted immediate termination of the VSA and SOW is invalid and that both the VSA and the SOW remain in full force and effect until at least the earliest possible termination date provided in each Agreement.

82.    Because MaxLinear has breached the VSA and SOW as alleged herein, there is a substantial, justiciable controversy between Comcast and MaxLinear sufficient to warrant a declaratory judgment of their respective rights and duties.

83.    MaxLinear's conduct also creates a threat of actual and imminent injury to Comcast that can be redressed only by judicial relief; that injury is sufficiently immediate and real to warrant the issuance of a declaratory judgment.  Such injury includes, among other things, the immediate risk that Comcast will be deprived of its bargained-for pre-termination notice periods and left without the essential protections provided by each Agreement.

84.     Absent the requested declaration, MaxLinear will prematurely terminate the VSA and SOW in breach of their terms and cause Comcast harm as set forth herein.

85.     Comcast seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that MaxLinear's termination notice to Comcast is invalid and that both the VSA and the SOW remain in full force and effect until at least the earliest possible termination date provided in each Agreement.

**COUNT III**
**(Indemnification Against MaxLinear)**

86.     Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

87.     The VSA, including its indemnity provisions, is a valid, enforceable contract between Comcast and MaxLinear.

88.     Under Section 10.1 of the VSA, MaxLinear "agreed to defend, indemnify, and hold Comcast . . . harmless against all costs, expenses, and losses (including reasonable attorney fees and costs) incurred through claims of third parties against Comcast based on or arising from . . . [MaxLinear's] gross negligence or intentional misconduct."

89.     MaxLinear engaged in gross negligence and/or willful misconduct by, among other things, assigning the MaxLinear Patents to Entropic in intentional or reckless disregard of Comcast's rights under the VSA and engaging in a course of conduct intended to deprive Comcast of its rights under the Covenant Not to Sue and to harm Comcast.

90.     The California Lawsuits—together with any and all losses, damages, costs, expenses, and/or attorneys' fees that Comcast has incurred or may incur in connection therewith—are based on and/or arise from MaxLinear's gross negligence and/or intentional misconduct.

91.     Comcast has incurred, and continues to incur, fees and expenses as a direct and proximate result of the California Lawsuits, including attorneys' fees incurred in defense of the California Lawsuits to date.

92.     MaxLinear is therefore required to indemnify Comcast from any and all losses, damages, costs, expenses, and/or attorneys' fees it has incurred or may incur in connection with the California Lawsuits.

## <u>COUNT IV</u>
### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against MaxLinear)

93.      Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

94.     The VSA is a valid, enforceable contract between Comcast and MaxLinear.

95.     Comcast has performed its obligations under the VSA.

96.     Pursuant to the VSA, MaxLinear may not sue Comcast Management or its affiliates for infringement of the MaxLinear Patents during the term of the VSA.

97.     MaxLinear has a duty to act fairly and in good faith and not do anything that would have the effect of interfering with or injuring the rights of Comcast to receive the benefits of the VSA, including with respect to the Covenant Not to Sue.

98.     MaxLinear has breached the implied covenant of good faith and fair dealing by engaging in a course of conduct to deprive Comcast of its rights and benefits under the VSA, including the Covenant Not to Sue.  As a party to the VSA, MaxLinear knew that the Covenant prohibited MaxLinear from suing Comcast for patent infringement during the VSA's term. MaxLinear nevertheless assigned the MaxLinear Patents to Entropic for the express purpose of asserting the very claims against Comcast that MaxLinear itself could not assert, thereby suing

Comcast by proxy.  MaxLinear has since continued to work with Entropic to circumvent the Covenant Not to Sue and to support Entropic's California Lawsuits against Comcast.

99.    As a direct and proximate result of MaxLinear's breach of the implied covenant of good faith and fair dealing under the VSA, Comcast has suffered harm, including but not limited to damages, costs, expenses, and/or attorneys' fees it has incurred or may incur in connection with the California Lawsuits.

**COUNT V**
**(Tortious Interference with Contract Against Entropic)**

100.    Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

101.    At all relevant times, the VSA and SOW were valid, enforceable contracts between Comcast and MaxLinear.

102.    Entropic had knowledge of the VSA and SOW, including the VSA's Covenant Not to Sue, prior to MaxLinear's attempted premature termination of the Agreements, including because Comcast informed Entropic's CEO of the Agreements and the Covenant.

103.    Upon information and belief, Entropic participated in discussions with MaxLinear about the decision to terminate the VSA.  In the California Lawsuits, Entropic has asserted common interest privilege over communications with MaxLinear that postdate the initiation of the California Lawsuits.

104.    Upon information and belief, Entropic intentionally and deliberately procured MaxLinear's breach of the Agreements by coordinating with MaxLinear to terminate the Agreements with no notice in violation of their respective termination provisions.  Entropic's actions, as detailed herein, factually and proximately caused MaxLinear's breaches.

105.    In procuring MaxLinear's breaches, Entropic acted maliciously, fraudulently, illegally, and/or with wrongful and improper purposes, including because Entropic procured MaxLinear's breaches to further the California Litigations in violation of the Covenant.

106.    Entropic had no legal justification to procure MaxLinear's breach, the only purpose of which was an attempted circumvention of the Covenant Not to Sue so that Entropic could attempt to maintain the California Lawsuits against Comcast.

107.    The California Lawsuits, which are barred by the Covenant Not to Sue, as well as the instant lawsuit have subjected Comcast to undue burden and significant business risk and have forced Comcast to incur unnecessary legal expenses.

108.    Comcast has incurred, and will continue to incur, damages as a direct and proximate result of Entropic's tortious interference with the VSA and SOW, including, but not limited to, fees and expenses, including attorneys' fees, that Comcast has incurred in connection with the California Lawsuits and the instant lawsuit; and other monetary damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Comcast prays that judgment be entered in its favor and prays for:

a)    A judgment and declaration that MaxLinear's termination notice to Comcast is invalid and that each of the VSA and SOW remains in effect until at least the earliest possible termination date provided in each Agreement;

b)    An order and judgment that MaxLinear breached the VSA and SOW and an award to Comcast for all monetary damages to which Comcast is entitled by law;

c)    An order and judgment that MaxLinear breached the VSA's implied covenant of good faith and fair dealing and an award to Comcast for all monetary damages to which Comcast is entitled by law;

d)      An order and judgment that MaxLinear must indemnify Comcast for all losses, damages, costs, expenses, and/or attorneys' fees incurred in relation to the California Lawsuits;

e)      An order and judgment that Entropic tortiously interfered with the VSA and SOW and an award to Comcast for all monetary damages to which Comcast is entitled by law;

f)      An award to Comcast of its costs, attorneys' fees, and reasonable expenses of litigation to the fullest extent permitted by law;

g)      An order awarding pre- and post-judgment interest to Comcast; and

h)      Such further equitable or other relief as the Court deems just and proper.

Dated: New York, New York
      October 25, 2023

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

*/s/ Dana M. Seshens*

Dana M. Seshens
Craig J. Bergman

450 Lexington Avenue
New York, New York 10017
Telephone:    (212) 450-4000
Facsimile:    (212) 701-5800
dana.seshens@davispolk.com
craig.bergman@davispolk.com

 – and –

David J. Lisson*

1600 El Camino Real
Menlo Park, California 94025
Telephone:  (650) 752-2000
Facsimile:  (650) 752-2111
david.lisson@davispolk.com

*admitted pro hac vice*

*Attorneys for Plaintiffs Comcast Cable
Communications Management, LLC and
Comcast Cable Communications, LLC*