O34UCOMC

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
      COMCAST CABLE COMMUNICATIONS
 3    MANAGEMENT, LLC; AND COMCAST
      CABLE COMMUNICATIONS, LLC,
 4
 5              Plaintiffs-Counterclaim Defendants,

 6              v.                           23 Civ. 4436 (AKH)

 7    MAXLINEAR, INC.,
                                             Conference
 8              Defendant-Counterclaim Plaintiff.

 9    ------------------------------x
                                             New York, N.Y.
10                                           March 4, 2024
                                             11:00 a.m.
11
12    Before:

13                    HON. ALVIN K. HELLERSTEIN,

14                                           U.S. District Judge

15                           APPEARANCES

16    DAVIS & GILBERT LLP
           Attorneys for Plaintiffs-Counterclaim Defendants
17    BY:  DANA M. SESHENS
           DAVID J. LISSON
18         ANNA LEE NORD

19
20    KIRKLAND & ELLIS LLP
           Attorneys for Defendant-Counterclaim Plaintiff
21    BY:  ATIF KHAWAJA
           MEGAN MCGLYNN
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O34UCOMC

1          (Case called)

2          THE COURT:  So, as you may know, there were two

3     pending motions as of yesterday.  There are none of this

4     morning.  They were decided.  Both motions were denied without

5     prejudice to renewal at a later time.

6          I thank you for the historical novels presented by

7     what is called a second amended complaint and an answer and

8     counterclaims, but those are not pleadings.  They are

9     historical novels.

10          If you think I have the ability to spend the time

11     necessary to go through it and decide what it is that is being

12     sued upon and what is the remedy that is being requested,

13     you're mistaken.  I can't and I won't.

14          If there's any sense of urgency on the plaintiff's

15     side, as the plaintiff claims there is, that won't be served by

16     the kind of amended complaint that you served.  You should note

17     that.

18          And that goes to the counterclaims as well,

19     Mr. Khawaja, you should note that.

20          Let me ask you, Ms. Seshens, what is it that you are

21     suing for?  What is the breach?  In light of the fact that the

22     VSA continues to be performed, at least until May, and you have

23     withdrawn your case against Entropic?

24          MS. SESHENS:  Thank you, your Honor.

25          Would you prefer that I stand here or at the podium?

O34UCOMC

<pre>
 1              THE COURT:  At the podium.

 2              MS. SESHENS:  Certainly.

 3              Good morning.  Dana Seshens, Davis Polk for the

 4    plaintiff.

 5              Your Honor, to address your question, we are suing for

 6    the attempted premature termination of the vendor support

 7    agreement and the statement of work, which --

 8              THE COURT:  That's cured, isn't it?

 9              MS. SESHENS:  Well, the request that we had for

10    injunctive relief has been cured insofar as MaxLinear has

11    agreed to continue performing specific support services through

12    May 24 -- 23 of 2024.  However, the critical provisions in the

13    vendor support agreement continue on beyond that period of

14    time.

15              THE COURT:  What has been breached?

16              MS. SESHENS:  Well, they have -- MaxLinear has taken

17    the position that that contract, both contracts have been

18    terminated effective immediately as of the time we served the

19    termination letter.

20              THE COURT:  But by the time you served the second

21    amended complaint, that had been cured.

22              MS. SESHENS:  The services piece had been cured, your

23    Honor, but in related litigation and in negotiations that flow

24    from the statement of work in this case, MaxLinear and it's

25    litigation agent, Entropic, have taken the position and told
</pre>

O34UCOMC

| | |
|---|---|
| 1 | the Court in California, for example, that the VSA that |
| 2 | contains the covenant not to sue and the statement of work have |
| 3 | been terminated -- |
| 4 | THE COURT:  What respective performance has the |
| 5 | defendant not performed? |
| 6 | MS. SESHENS:  Plaintff -- I'm sorry, your Honor. |
| 7 | THE COURT:  Any? |
| 8 | MS. SESHENS:  The defendant -- MaxLinear has continued |
| 9 | to provide services. |
| 10 | THE COURT:  So how have you been injured? |
| 11 | MS. SESHENS:  Well, we've been injured in several |
| 12 | ways, and I would note also, your Honor, that there are other |
| 13 | claims aside from the breach.  There is a claim for |
| 14 | indemnification and there is also a claim for breach of the |
| 15 | duty to cooperate, and those claims -- |
| 16 | THE COURT:  That's take the first one, which is the |
| 17 | main one, the breach of contract. |
| 18 | MS. SESHENS:  Yes. |
| 19 | THE COURT:  What has been the breach? |
| 20 | MS. SESHENS:  The breach -- |
| 21 | THE COURT:  Saying something that you may breach is |
| 22 | not a breach unless it's an anticipatory repudiation, and if |
| 23 | it's a repudiation, it's consistent with doing work.  They're |
| 24 | doing work.  You admit it.  You withdrew your motion for |
| 25 | injunction.  So where is the breach? |

O34UCOMC

1          MS. SESHENS:  The breach, sir, is in their -- their

2     position, their posture that those contracts have been

3     terminated.

4          THE COURT:  I don't care what they say.  They

5     performed.  They're not terminated.

6          MS. SESHENS:  Correct, but there are -- there are

7     other obligations, for example, there is a covenant not to sue

8     in the vendor support agreement, and there are obligations to

9     cooperate with ComCast in litigation.  We contend that both of

10     those -- not the covenant not to sue has not been breached,

11     per se, but that there is an implied covenant breach there

12     insofar as MaxLinear has gone, assigned its patents to a third

13     party to effectively breach the covenant not to sue through the

14     assignment.

15          THE COURT:  Why did you drop the case against

16     Entropic?

17          MS. SESHENS:  So, your Honor, we haven't dropped the

18     case against Entropic.  We filed that in state court.  As your

19     Honor may recall, there was a lack of diversity jurisdiction

20     once we were able to confer with Entropic.

21          THE COURT:  So why are you splitting the causes of

22     action?  What would happen if the supreme court decision went

23     one way and my decision went another?  Wouldn't there be

24     inconsistent verdicts?

25          MS. SESHENS:  Well, not necessarily, your Honor.

O34UCOMC

1  We've sued Entropic in state court for tortious interference

2  with the service agreements that MaxLinear has with ComCast.

3          THE COURT:  So what happens if I held -- and the

4  supreme court held that they had been guilty of tortious

5  interference and I held there was no breach of contract?

6          MS. SESHENS:  Well, I concur, your Honor, that that

7  would then render consistent verdicts.  However, Entropic has

8  moved to stay the state court case on exactly those grounds.

9  And one of the reasons we've been seeking, for example, a

10  declaration, one of our claims is a declaration that the

11  contracts remain in full force and effect as a legal matter, is

12  so that we can then proceed and there's not a risk that the

13  Court in New York supreme will stay the case because if we can

14  get an adjudication of the breach here before your Honor, that

15  shouldn't delay the state court case.

16          But I take your point about the underlying breach.  We

17  are trying to move as quickly as possible here and we've argued

18  in the supreme court as well that we think that there will not

19  be a risk of consistent rulings.

20          I think the other point I would just add for your

21  Honor, as you've probably seen in our papers, is that MaxLinear

22  has all but conceded that it's improper termination was a

23  breached.  They've tried to explain it away.  So while they

24  are --

25          THE COURT:  But they are performing --

O34UCOMC

1          MS. SESHENS:  They're performing under the statement

2     of work.  We contend that they are not adhering to their

3     obligations under the vendor support agreement.

4          THE COURT:  By what?  By what, suing?

5          MS. SESHENS:  Not by -- by cooperating against

6     ComCast's legal interests when they have an obligation to

7     cooperate with ComCast.

8          THE COURT:  Tell me about the second one, the covenant

9     not to sue.

10          MS. SESHENS:  So the covenant not to sue, you may have

11     seen in various papers from both sides, that is a protection

12     that ComCast negotiated for in the vendor support agreement.

13          THE COURT:  Apart from the counterclaims, have they

14     sued you?

15          MS. SESHENS:  I'm sorry, your Honor.

16          THE COURT:  Apart from the counterclaims, have they

17     sued you.

18          MS. SESHENS:  MaxLinear has not sued directly.  They

19     have circumvented the covenant not to sue by assigning their

20     patents to Entropic and Entropic has sued ComCast in two

21     different patent infringement cases pending in the Central

22     District of California.

23          THE COURT:  Where is the obligation not to assign the

24     patents?

25          MS. SESHENS:  There is no obligation not to assign the

O34UCOMC

patents, per se.  There is an obligation to cooperate with

ComCast in ceratin legal -- in business matters, and it is our

contention that by assigning the patents in an effort to

circumvent the covenant not to sue, it both breaches the

cooperation obligation and the implied covenant of good faith

and fair dealing, which is another --

THE COURT:  Where has been the duty not to cooperate

apart from the assignments?

MS. SESHENS:  Well, MaxLinear has, as we have alleged,

and as I believe is pled in California, has agreed to cooperate

with Entropic against ComCast.  So that is part and parcel of

the assignment, but it also goes a step further in our view to

actively cooperate in litigation in the Central District of

California that MaxLinear itself covenants -- covenanted not to

bring.  So that's an additional layer of the lack of

cooperation.

THE COURT:  And on this you want to take up the

Court's time and be very hasty and inflict all kinds of

proceedings on MaxLinear?

MS. SESHENS:  I'm sorry, your Honor.  I couldn't make

that out.

THE COURT:  It means that the Court has very little

belief in the efficacy of your lawsuits.

MS. SESHENS:  Understood, your Honor.  We, obviously,

feel strongly that there has been a breach here and that there

O34UCOMC

1    has been harm.  We respect your Honor's views on that.

2         THE COURT:  And the intensity of feeling is not a

3    replacement for a good statement of a cause of action.

4    Whatever your cause is, it's hidden in the floridity of your

5    statements.  This is not a pleading.  I can't function with

6    this pleading and I will certainly not give you the relief you

7    want at this point in time of a hastened pretrial proceedings.

8         MS. SESHENS:  Understood, your Honor.  Would it be

9    preferable for the Court if we were to amend?

10        THE COURT:  Yes.

11        MS. SESHENS:  Okay.

12        THE COURT:  It would preferable for you to amend and

13   have a pleading that has no long term descriptions and no

14   rhetoric, but just a barebones, simple statement of the claims

15   for relief.

16        And I don't believe you've been injured here.  You've

17   won.  You forced them to withdraw their termination.

18        I don't know what happens in May.  What happens in

19   May?

20        MS. SESHENS:  Well, I think it depends on which party

21   you ask, but in May, we understand MaxLinear will terminate its

22   services under the statement of work, but the vendor support

23   agreement continues under our view of how those contracts

24   operate.  You can, obviously, of course, ask our friends on the

25   other side.  I think they will say that their view is

O34UCOMC

1    everything's terminated as of August.

2              THE COURT:  Seems to me that your case is ripe when

3    they terminate.

4              MS. SESHENS:  I think we would submit, your Honor,

5    that it is ripe now, but I understand what your Honor's

6    perspective is on that, and perhaps we can address that in our

7    amendment.

8              THE COURT:  Let me hear from MaxLinear.  What's your

9    position on the two contracts, Mr. Khawaja?

10             MR. KHAWAJA:  Good morning, your Honor.

11             Atif Kwahaga, from Kirkland & Ellis, on behalf of the

12   defendants, MaxLinear.

13             So, as your Honor pointed out, there is no harm here.

14   The VSA requires -- it's a vendor --

15             THE COURT:  Are you performing?

16             MR. KHAWAJA:  We are 100 percent performing pursuant

17   to that a court order we submitted to your Honor.

18             THE COURT:  Yes.  That lasts until May 22, 2024,

19   right?

20             MR. KHAWAJA:  And the reason why we picked May 2024 is

21   if you look at the preliminary injunction motion that the

22   plaintiffs filed, that's the date that they said that we need

23   to continue if termination was effective.

24             THE COURT:  What happens after that?

25             MR. KHAWAJA:  I think right now, bluntly, the parties

O34UCOMC

1    are in discussions to continue it.  We've made a proposal to

2    continue it.  Hope springs eternal that there will be an

3    agreement reached, but this contract and the services that we

4    provide under it will end under plaintiff's own admission.

5         THE COURT:  I have a proposition for both of you, a

6    dismissal without prejudice with leave to renew and the statute

7    of limitations is tolled until such time.

8         MR. KHAWAJA:  So we can certainly consider that -- I'm

9    sorry, your Honor.

10        THE COURT:  No.  That's it.

11        MR. KHAWAJA:  We can certainly consider that vis-à-vis

12   their claim, but we do have an affirmative claim.  It's a

13   defense to their claim, but as a result of this, we have a

14   trade secret misappropriation claim that is very much alive and

15   pending.

16        THE COURT:  That's something I don't understand

17   because you gave them your trade secrets to enter into a

18   contract.  Your nondisclosure agreement is dated --

19        MR. KHAWAJA:  June 2020.

20        THE COURT:  -- June 29, 2020.  You entered the SVA in

21   August 1, 2020, and then the services agreement later than

22   that.  So what's your beef?  You got the contract.

23        MR. KHAWAJA:  It's a great point, your Honor.  The

24   contract was for services.  The trade secret was for a product

25   for them to buy and we were negotiating all of this.

O34UCOMC

1      THE COURT:  You work for them.  You got what you

2  wanted.

3      MR. KHAWAJA:  No.  That's not true because the VSA

4  does not have a price tag.  They're not paying for anything.

5  The reason why we did that NDA, it's clear in the NDA, we

6  wanted to sell the product and this technology that we sold

7  them the year before, their own -- this is in our complaint,

8  their own engineer said it wasn't possible.  So we entered into

9  an NDA with them.

10     THE COURT:  But you have agreements because someone

11 stole your trade secrets, your company's confidential

12 information.  You don't wait four years before bringing a

13 lawsuit.

14     MR. KHAWAJA:  We didn't know what they were doing and

15 they can raise that defense.  It's actually not a defense

16 they've raised.

17     THE COURT:  I can't believe that.

18     MR. KHAWAJA:  No.  Your Honor, it's very simple.

19     THE COURT:  I can't believe that.

20     MR. KHAWAJA:  They led us to believe -- they led us to

21 believe that they were going, in fact, frankly, that's we kept

22 providing services.  We were under the impression that we might

23 be actually giving them product.  And it's only become clear as

24 a result of this lawsuit they're not interested in anything.

25 They've gone to our competitor.  And, in fact, we made this

O34UCOMC

1   point in our compliant.  That's why it's 28 pages.  It wasn't

2   until after the lawsuit was filed that our competitor announces

3   a partnership with ComCast to make this product we shared, but

4   that's an issue at goes to damages.  It doesn't cure the trade

5   secret violation.

6          THE COURT:  The same set of inferences with your

7   counterclaim as I have with Ms. Seshen's complaints.

8          And besides, your pleading is terrible.  It writes

9   like a brief.  It's not a brief.  It's a pleading.  I can't

10  even figure out the cause of action from it.

11         Look, what do you want to do?  Do you want to start

12  again?  I think this whole -- if there's negotiating, why be

13  suing?

14         MR. KHAWAJA:  Well, I'll tell you, your Honor, I think

15  the parties have had a lot of negotiation.  We're, again, hope

16  springs eternal we can reach an agreement but, you know --

17         THE COURT:  You have a business arrangement.  If this

18  is not terminated, how long is your business arrangement?

19         MR. KHAWAJA:  Our business arrangement expires in

20  May of '24.  They're not buying any product from us.  They've

21  used our technology.  So we've got agreements we're going to

22  litigate.

23         THE COURT:  So you're going to finish your work

24  together in May?

25         MR. KHAWAJA:  If we don't reach an agreement,

O34UCOMC

1    absolutely.

2            THE COURT:  So that would be the time to sue.

3            MR. KHAWAJA:  So we already have a live claim.  Your

4    Honor expressed some concern about how we waited.  We'd like to

5    get going on it.

6            THE COURT:  What do you want me to do?

7            MR. KHAWAJA:  Well, I think, bluntly, your Honor, we

8    were originally -- we were on a scheduling.  I think there's no

9    dispute between either party that our counterclaims, and if you

10   look at Exhibit B and Exhibit A, both proposals --

11           THE COURT:  I've read them both.

12           MR. KHAWAJA:  -- they say a fact discovery deadline

13   for December '24 for our claims.  There's no dispute on that.

14   We would like to keep going on that.  If they want to amend,

15   that's their prerogative, they can do that.  But we'd like to

16   get going on our live claims.

17           THE COURT:  Do you know what, Ms. Seshens, your

18   complaint needs to be amended because Entropic is all over it

19   and it's very hard to figure out claims without it there.  You

20   also need to figure out what you're going to do.  And if you

21   want time to amend, I'll give you time to amend.  And I'm not

22   going to allow discovery to start until you meet with

23   Mr. Khawaja on another conference, and we'll decide at that

24   time.

25           I don't see that you have a cause of action,

O34UCOMC

1    Ms. Seshens, until May.  You will have then, but if they go

2    through with what they're doing.  Or you may negotiate to

3    continue.  I don't know.  But I don't think you have a cause of

4    action until May.

5         If Mr. Khawaja does not want to drop his cause of

6    action at this time, or defer it, he can go ahead.  But you

7    have to make an amended complaint.

8         Your counterclaim is not a well-treated counterclaim.

9    It does not deliver a short and plain statement of the relief

10   in your cause of action.  So you're going to have to amend

11   also.

12        MR. KHAWAJA:  Understood, your Honor.

13        THE COURT:  So would you confer together and give me a

14   schedule?

15        MR. KHAWAJA:  We can do that.  I'm sure we can do

16   that.

17        MS. SESHENS:  Yes, your Honor.

18        THE COURT:  I'll wait.  Do it now.

19        MR. KHAWAJA:  Okay.

20        (Counsel confer)

21        MR. KHAWAJA:  Your Honor, we just conferred and we'd

22   be fine doing an amended set of pleadings in two weeks.

23        THE COURT:  So Ms. Seshens will have her amended

24   complaint on March 19th.  The answer will be due April 3.

25        MR. KHAWAJA:  That works.  We were assuming it's the

O34UCOMC

1  same claims and no new claims are being added.  If we need more

2  time, we might have to come back here.

3          THE COURT:  Well, maybe she'll change her mind.  Maybe

4  she'll withdraw it.

5          MS. SESHENS:  Your Honor, there is a question, if I

6  may, that I wanted to raise that bears on the amendment which

7  is, I think, your Honor, had posed to me, what happens, you

8  know, are the contracts terminated now, what happens in May.

9  We talked about the statement of work.  And then I provided our

10  view to your Honor that the vendor support agreement continues

11  and that our understanding is that MaxLinear's position is that

12  those contracts are terminated now.

13          THE COURT:  That's what he said.

14          MS. SESHENS:  Right.

15          THE COURT:  Not now.  In May.

16          MS. SESHENS:  Well, I think their position is that

17  it's now and that's what we want to clarify, because to your

18  Honor's point, the timing here, from your Honor's perspective,

19  matters, and if their position --

20          THE COURT:  Doesn't the stipulation say May?

21          MS. SESHENS:  It says they're providing services.  It

22  reserves on the termination issue.  Everybody held their

23  positions on whether the contracts were terminated versus --

24          THE COURT:  If they're performing until May, it's not

25  terminated until May.

O34UCOMC

| | |
|---|---|
| 1 | MS. SESHENS:  Well, they're performing under the |
| 2 | statement of work and the vendor support agreement, but they've |
| 3 | reserved the position to argue that those contracts are |
| 4 | terminated now, and that is the position that's been taken -- |
| 5 | THE COURT:  How can they be terminated now if they |
| 6 | continue to provide services? |
| 7 | MS. SESHENS:  They're acting pursuant to it, is our |
| 8 | understanding, but taking the legal position that the contracts |
| 9 | are terminated, which is what presents some of the challenge |
| 10 | for us, and that's why we think our claims are ripe. |
| 11 | THE COURT:  Is your contract terminated now? |
| 12 | MR. KHAWAJA:  Well, we certainly tried to terminate |
| 13 | it.  That's what we did last May, but we're doing the services, |
| 14 | as your Honor points out, termination by itself doesn't mean |
| 15 | much if you keep performing. |
| 16 | THE COURT:  I know there's no effective termination |
| 17 | now.  The effective termination will occur at the end of |
| 18 | stipulated time, which is May 22, 2024. |
| 19 | MR. KHAWAJA:  So, your Honor, we're fine with that |
| 20 | ruling.  We would just like to reserve the fact that we did |
| 21 | file a notice of termination in May of '23. |
| 22 | THE COURT:  Effective when? |
| 23 | MR. KHAWAJA:  Effective then. |
| 24 | THE COURT:  It's not effective then because it's |
| 25 | effective May 23, 2024.  That's the date, May 23, 2024. |

O34UCOMC

1          MS. SESHENS:  Your Honor, the only point of

2     clarification on that is there's a different termination period

3     for the vendor support agreement, and that runs for a whole

4     other year and 90 days.  And so the termination date that your

5     Honor is referencing is specific to the statement of work only

6     and the specific contractual provisions for the vendor support

7     agreement operate differently.

8          MR. KHAWAJA:  Ms. Seshens is right.  In other words,

9     the statement of work continues to be valid.  That's what we're

10    performing under.  The VSA, we terminated in May of 2020.

11         MS. SESHENS:  So that's why we have a claim now, your

12    Honor, because the vendor support agreement runs until at least

13    August of '25, and their position --

14         THE COURT:  So allege your claim.

15         MS. SESHENS:  Excuse me.

16         THE COURT:  Allege your claim so I understand it,

17    without Entropic.

18         MS. SESHENS:  Okay.  Thank you.

19         THE COURT:  So those are the dates, March 19 and

20    April 3.

21         I will see you, for the first case management

22    conference, April 10 at 2:30.

23         I expect you to do your initial disclosures before

24    that date and come in with a joint plan for discovery.  I will

25    not sever claims and counterclaims.  You litigate them

O34UCOMC

1    together, but that doesn't necessarily -- if you'll discover

2    them together but it doesn't necessarily mean that it's tit for

3    tat.  Each party will proceed at its own schedule as rapidly as

4    it wishes to do so.  When you're ready, you'll let me know.

5    We'll have another date in the case management order.

6              Are there any questions?

7              MS. SESHENS:  Not at this time, your Honor.

8              Thank you for your time.

9              MR. KHAWAJA:  No, your Honor.  Thank you.

10             THE COURT:  Goodbye.

11                           o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25