UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC and COMCAST CABLE
COMMUNICATIONS, LLC,

                Plaintiffs,

       - against -

MAXLINEAR, INC.,

                Defendant.

Civil Action No. 1:23-cv-4436-AKH

## THIRD AMENDED COMPLAINT

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Plaintiffs Comcast Cable*
*Communications Management, LLC and*
*Comcast Cable Communications, LLC*

Plaintiffs Comcast Cable Communications Management, LLC and Comcast Cable Communications, LLC ("Plaintiffs" or "Comcast"), by and through their undersigned attorneys, as and for their Third Amended Complaint against MaxLinear, Inc. ("Defendant" or "MaxLinear"), allege as follows:

## NATURE OF THE ACTION

1.       Through this action Comcast seeks declaratory judgments that MaxLinear's attempted premature terminations of two contracts with Comcast are legally ineffective, as well as indemnification (or, in the alternative, damages for breach of the implied covenant of good faith and fair dealing) for its costs, expenses, and any losses related to patent infringement litigation brought by MaxLinear's litigation proxy in the Central District of California.

## THE PARTIES

2.       Plaintiff Comcast Cable Communications, LLC ("Comcast Cable") is a Delaware limited liability company with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania 19103.  Comcast Cable's sole member is Comcast Holdings Corporation, a Pennsylvania Corporation with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania 19103.

3.       Plaintiff Comcast Cable Communications Management, LLC ("Comcast Management") is a Delaware limited liability company with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania 19103.  Comcast Management's sole member is Comcast Cable.  Comcast Cable's sole member is Comcast Holdings Corporation, a Pennsylvania Corporation with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania 19103.

4.      Defendant MaxLinear is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5966 La Place Court, Suite 100, Carlsbad, California 92008.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties.  Plaintiffs Comcast Management and Comcast Cable are citizens of Pennsylvania.  Defendant MaxLinear is a citizen of Delaware and/or California, but not Pennsylvania.

6.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.      This Court has personal jurisdiction over MaxLinear.  Pursuant to VSA § 14.1, MaxLinear agreed that "any claim or controversy arising out of or relating to this [VSA] shall be brought exclusively in federal or state court located in New York, New York and the Parties [including MaxLinear] hereby consent to personal jurisdiction and venue in such court."

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391 and VSA § 14.1.

## FACTUAL ALLEGATIONS

9.      MaxLinear provides chips for millions of Comcast broadband gateways that deliver Internet service to Comcast customers.  It also provides support services to help ensure the continued functioning of those devices pursuant to a Vendor Support Agreement ("VSA") and related Statement of Work ("SOW" and, together with the VSA, the "Service Agreements").

**The Vendor Support Agreement ("VSA")**

10.      Effective August 1, 2020, Comcast and MaxLinear entered into the VSA, which sets out the terms and conditions pursuant to which MaxLinear provides support services to Comcast.  The VSA expressly contemplates the parties' agreement to one or more statements of work, which become part of and subject to the VSA.  (VSA § 1.1.)

11.     Among other things, the VSA imposes critical obligations on MaxLinear, including: (i) maintaining confidential or proprietary information of Comcast and its customers (VSA § 5.1); (ii) complying with a detailed information security protocol governing storage, transmission, processing, and access to sensitive non-public information and Comcast systems (VSA §§ 1.9, 5.5(i), 6.1(b), Exhibit D); (iii) ensuring that employees and sub-contractors assigned to perform services for Comcast are adequately trained and vetted (VSA § 1.6); and (iv) "cooperat[ing] fully with Comcast in connection with any legal or business matter" (VSA § 13).

12.     The VSA also addresses certain intellectual property matters and includes a covenant, on behalf of MaxLinear and its affiliates, not to sue Comcast for infringement of any MaxLinear or MaxLinear-affiliate patent during the term of the VSA (the "Covenant Not to Sue") (emphases added):

> 7.3.   Covenant Not to Assert.  **During the Term**, **Vendor, on behalf of itself and all Affiliates (each, a "Vendor Covenanting Party")**, to the extent Comcast, Comcast's Affiliates, (each, a "Comcast Protected Party") have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark, or knowingly misappropriated a Vendor Covenanting Party's trade secret, **covenants not to sue Comcast Protected Party for patent, copyright, or trademark infringement, or for misappropriation of trade secrets, as the case may be, with respect to Comcast Protected Party's purchase, use, or deployment of any product or service.**

13.     MaxLinear further agreed to indemnify Comcast for costs, expenses, and losses resulting from third-party claims against Comcast arising from MaxLinear's gross negligence or intentional misconduct (emphases added):

> 10.1.   Uncapped General Indemnification. **Vendor hereby agrees to defend, indemnify, and hold Comcast, its parents, affiliates, subsidiaries and their officers, directors, agents, and employees harmless against all costs, expenses, and losses (including reasonable attorney fees and costs) incurred through claims of third parties against Comcast based on or arising from**: (a) Vendor's breach of Section 5 (Confidential Information) or Section 14.8 (Publicity);

(b) Vendor's negligent acts or omissions in performance under the Agreement that cause personal injury or property damage; (c) Vendor's violations of applicable law; (d) **Vendor's gross negligence or intentional misconduct**; and/or (e) assertions under workers' compensation or similar employee benefit acts by Vendor or its employees or agents.

14.     The initial term of the VSA runs through July 31, 2026.

15.     Section 11.1 of the VSA provides in relevant part that "[MaxLinear] may terminate this Agreement, upon ninety (90) days' prior written notice to Comcast, **if there has been no active SOW for a period of 1 year**" (emphasis added).

**The Statement of Work ("SOW")**

16.     In November 2020, Comcast and MaxLinear executed the SOW pursuant to which MaxLinear agreed to provide ongoing support services for certain broadband gateways that include one or more chips produced by MaxLinear.  Among other things, MaxLinear is obligated under the SOW to provide "feature development, bug fixes, and security patches/fixes" for Comcast's BWG, XB3, XB6-CommScope, and XB7-CommScope gateways.  The SOW is incorporated into and subject to the terms and conditions of the VSA.

17.     The term of the SOW runs through July 31, 2026.

18.     Section 2 of the SOW provides that "MaxLinear may terminate this SOW at any time upon one (1) years' written notice to Comcast."

19.     The SOW remains active and was active as of May 23, 2023.

**The California Patent Infringement Litigation**

20.     On March 31, 2021, MaxLinear and its wholly owned subsidiary, MaxLinear Communications LLC, assigned their rights in certain U.S. patents (the "MaxLinear Patents") to Entropic Communications, LLC ("Entropic"), an entity created just months prior for the purpose of patent monetization, including through patent litigation.

21.     MaxLinear, with reckless (if not intentional) disregard for Comcast's rights under the VSA and the Covenant Not to Sue, assigned the MaxLinear Patents to Entropic in an attempt to enable MaxLinear to profit from patent litigations against entities such as Comcast.  But the Covenant Not to Sue traveled with the MaxLinear Patents and forecloses claims by Entropic as well.

22.     On February 10, 2023, Entropic nevertheless filed patent infringement claims asserting the MaxLinear Patents against Comcast in the United States District Court for the Central District of California.  *Entropic Commc'ns, LLC v. Comcast Corp.*, No. 2:23-cv-1048 (C.D. Cal.); *Entropic Commc'ns, LLC v. Comcast Corp.*, No. 2:23-cv-1050 (C.D. Cal.) (the "California Lawsuits").

23.     MaxLinear retains a financial interest in both California Lawsuits.

24.     On several occasions between approximately March and May 2023, Comcast representatives advised both Entropic and MaxLinear representatives that the MaxLinear Patents remained subject to the Covenant Not to Sue, that the Covenant Not to Sue barred the California Lawsuits, and that Comcast would like for Entropic to dismiss them accordingly.

25.     On or about May 8, 2023, Comcast's outside counsel informed Entropic that Comcast intended to move to dismiss the California Lawsuits for lack of jurisdiction based on the Covenant Not to Sue.  Comcast filed such motions on May 22, 2023.

**MaxLinear's Attempted Termination of the Service Agreements**

26.     On May 18, 2023, William Torgerson, Vice President and General Manager of MaxLinear's Broadband Group, met with Jon Cave, Comcast's Senior Vice President of Broadband, Xfinity Home, and Entertainment Devices, Product Strategy, and Management.

27.     During that meeting, Mr. Torgerson communicated to Mr. Cave that MaxLinear's CEO, Kishore Seendripu, intended to terminate the VSA and implied that such termination was an attempt to terminate the Covenant Not to Sue so that Entropic would be free to pursue its patent infringement claims against Comcast.

28.     On May 23, 2023, Comcast's procurement team received a letter signed by MaxLinear's CFO, Steven Litchfield (who also signed the VSA for MaxLinear), that purported to terminate the VSA and SOW (the "Termination Letter").  The Termination Letter, dated May 18, 2023, reads in its entirety:

> This letter serves as MaxLinear, Inc.'s written notice to Comcast Cable Management Communications, LLC [sic] ("Comcast") of termination of the Vendor Support Agreement dated as of August 1, 2020 (the "Agreement"), including termination of Statement of Work #1 related thereto.

29.     On May 25, 2023, Mr. Seendripu met remotely with Charlie Herrin, Comcast Cable's President of Technology, Product, Experience.  Mr. Herrin informed Mr. Seendripu that MaxLinear's attempt to terminate the VSA and SOW was improper.  Mr. Seendripu stated that counsel advised him to "cancel" the VSA to free the MaxLinear Patents from the VSA's protections, i.e., the Covenant Not to Sue.  Mr. Seendripu did not agree to withdraw the Termination Letter, despite a prior written request by Comcast that MaxLinear do so.

**MaxLinear Agrees to Perform Support Services but
Insists that the Service Agreements Are Terminated**

30.     On May 26, 2023, Comcast filed its original complaint in this action.

31.     On May 30, 2023, Comcast filed an application for a preliminary injunction and temporary restraining order (i) enjoining MaxLinear from prematurely terminating the VSA and SOW and (ii) ordering MaxLinear to continue to perform its obligations under both Service Agreements.

32.     By stipulation dated June 2, 2023, MaxLinear "agree[d] to perform all of its services, and the obligations with respect to services, in a timely manner and without qualification, pursuant to the VSA and SOW, until . . . 30 days after the Court resolves Comcast's [a]pplication for a preliminary injunction," and Comcast agreed to withdraw its request for a temporary restraining order.

33.     The parties then engaged in several months of litigation with respect to Comcast's preliminary injunction request.  On September 12, 2023, just days before the scheduled hearing, MaxLinear again stipulated that it would "perform all of its services, and the obligations with respect to services, in a timely manner and without qualification, pursuant to the VSA and SOW, until May 23, 2024," and Comcast agreed to withdraw its preliminary injunction application.

34.     In both stipulations, each of Comcast and MaxLinear reserved their respective rights, claims, and defenses relating to or arising out of the VSA and SOW, including, but not limited to, each party's position with respect to the termination and enforceability of the VSA and SOW, including the covenants and obligations therein.  In other words, MaxLinear reserved its right to argue that, notwithstanding its agreement to provide ongoing support services until May 2024, the VSA and SOW were terminated, effective as of May 23, 2023, and Comcast reserved the right to argue otherwise.

35.     MaxLinear has made, and continues to make, such arguments.  For example, in MaxLinear's December 1, 2023 Answer to the Second Amended Complaint and Counterclaims in this case, MaxLinear stated that it "terminated the VSA and SOW" and "maintains its position that the VSA and SOW are terminated."  MaxLinear also reiterated during a March 4, 2024 status conference before the Court that it terminated the Service Agreements in May 2023, effective immediately, via the Termination Letter.

36.    Entropic, too, has represented in the California Lawsuits that the Service Agreements have been terminated (thus purportedly nullifying the Covenant Not to Sue for purposes of its patent infringement litigation).  For instance, in its recently amended complaint, Entropic asserts that MaxLinear "provided notice of termination of the VSA, . . . and the VSA is therefore no longer in effect."

## CAUSES OF ACTION

### COUNT I
**(Declaratory Judgment as to the VSA)**

37.    Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

38.    The VSA is a valid, enforceable contract between Comcast and MaxLinear.  It provides, among other things, that MaxLinear may terminate the VSA only "upon ninety (90) days' prior written notice to Comcast, if there has been no active SOW for a period of 1 year."

39.    The SOW was active when MaxLinear sent its purported May 23, 2023 Termination Letter and remains active as of the date of this filing.

40.    Comcast is entitled to a declaratory judgment that MaxLinear's attempted immediate termination of the VSA violates the terms of the VSA and is thus invalid and that the VSA remains in full force and effect until at least August 21, 2025, MaxLinear's earliest possible termination date.

41.    Because MaxLinear has violated the VSA's termination provision through its attempted premature termination, and because MaxLinear (and its litigation proxy, Entropic) continue to maintain that the VSA has been terminated, there is a substantial, justiciable

controversy between Comcast and MaxLinear sufficient to warrant a declaratory judgment of their respective rights and duties.

42.     MaxLinear's conduct also creates a threat of actual and imminent injury to Comcast that can be redressed only by judicial relief; that injury is sufficiently immediate and real to warrant the issuance of a declaratory judgment and includes, among other things, the immediate risk that Comcast will be deprived of its bargained-for pre-termination notice period and left without the essential protections provided by the VSA, such as the confidentiality, information security, employee adequacy, and cooperation obligations set forth above, as well as the Covenant Not to Sue.

43.     Absent the requested declaration, MaxLinear will prematurely terminate the VSA in breach of its terms and cause Comcast harm as set forth herein.

44.     Comcast seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that (i) MaxLinear's attempted termination of the VSA is invalid, (ii) MaxLinear's attempt to terminate the VSA prematurely violated the VSA's plain terms, and (iii) the VSA remains in full force and effect until at least August 21, 2025 (one year and ninety days from the earliest date on which the SOW may terminate).

## COUNT II
### (Declaratory Judgment as to the SOW)

45.     Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

46.     The SOW is a valid, enforceable contract between Comcast and MaxLinear.  It provides, among other things, that "MaxLinear may terminate this SOW at any time upon one (1) years' written notice to Comcast."

47.     Comcast is entitled to a declaratory judgment that MaxLinear's attempted immediate termination of the SOW violates the terms of the SOW and is thus invalid and that the SOW remains active and in full force and effect until at least May 23, 2024, MaxLinear's earliest possible termination date.

48.     Because MaxLinear has violated the SOW's termination provision through its attempted premature termination, and because MaxLinear continues to maintain that the SOW has been terminated, there is a substantial, justiciable controversy between Comcast and MaxLinear sufficient to warrant a declaratory judgment of their respective rights and duties.

49.     MaxLinear's conduct also creates a threat of actual and imminent injury to Comcast that can be redressed only by judicial relief; that injury is sufficiently immediate and real to warrant the issuance of a declaratory judgment and includes, among other things, the immediate risk that Comcast will be deprived of its bargained-for pre-termination notice period and—because premature termination of the SOW would in turn facilitate premature termination of the VSA—left without the essential protections provided by the VSA, such as the confidentiality, information security, employee adequacy, and cooperation obligations set forth above, as well as the Covenant Not to Sue.

50.     Absent the requested declaration, MaxLinear will prematurely terminate the SOW in breach of its terms and cause Comcast harm as set forth herein.

51.     Comcast seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that (i) MaxLinear's attempted termination of the SOW is invalid, (ii) MaxLinear's attempt to terminate the SOW prematurely violated the SOW's plain terms, and (iii) the SOW remains active and in full force and effect until at least May 23, 2024.

## COUNT III
### (Indemnification)

52.    Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

53.    The VSA, including its indemnity provisions, is a valid, enforceable contract between Comcast and MaxLinear.

54.    Under Section 10.1 of the VSA, MaxLinear agreed "to defend, indemnify, and hold Comcast . . . harmless against all costs, expenses, and losses (including reasonable attorney fees and costs) incurred through claims of third parties against Comcast based on or arising from . . . [MaxLinear's] gross negligence or intentional misconduct."

55.    MaxLinear engaged in gross negligence and/or willful misconduct by, among other things, assigning the MaxLinear Patents to Entropic in reckless or intentional disregard of Comcast's rights under the VSA and engaging in a course of conduct intended to deprive Comcast of its rights under the Covenant Not to Sue and to harm Comcast.  MaxLinear, as a party to the VSA, knew that the Covenant prohibited MaxLinear from suing Comcast for patent infringement during the VSA's term.  MaxLinear, motivated by its financial interest in the California Lawsuits, nevertheless assigned the MaxLinear Patents to Entropic for the purpose of asserting the very claims against Comcast that MaxLinear itself could not assert (even though the Covenant applies to and prohibits suit on the Patents in the hands of Entropic as well).  Upon learning that Comcast intended to assert the Covenant Not to Sue as a defense in the California Lawsuits, MaxLinear attempted to prematurely terminate the Service Agreements with the goal of vitiating the Covenant.

56.    The California Lawsuits—together with any and all losses, damages, costs, expenses, and/or attorneys' fees that Comcast has incurred or may incur in connection

therewith—are based on and/or arise from MaxLinear's gross negligence and/or intentional misconduct.

57.     Comcast has incurred, and continues to incur, fees and expenses as a direct and proximate result of the California Lawsuits, including attorneys' fees incurred in defense of the California Lawsuits to date.

58.     MaxLinear is therefore required to indemnify Comcast from any and all losses, damages, costs, expenses, and/or attorneys' fees it has incurred or may incur in connection with the California Lawsuits.

## COUNT IV (in the alternative)
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

59.     Comcast realleges, adopts, and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

60.     The VSA is a valid, enforceable contract between Comcast and MaxLinear.

61.     Comcast has performed its obligations under the VSA.

62.     Pursuant to the VSA, MaxLinear may not sue Comcast Management or its affiliates for infringement of the MaxLinear Patents during the term of the VSA.

63.     MaxLinear has a duty to act fairly and in good faith and not do anything that would have the effect of interfering with or injuring the rights of Comcast to receive the benefits of the VSA, including the Covenant Not to Sue.

64.     In the alternative to Count III, MaxLinear has breached the implied covenant of good faith and fair dealing by engaging in a course of conduct to deprive Comcast of its rights and benefits under the VSA, including the Covenant Not to Sue.  As a party to the VSA, MaxLinear knew that the Covenant prohibited MaxLinear from suing Comcast for patent infringement during the VSA's term.  MaxLinear, motivated by its financial interest in the

California Lawsuits, nevertheless assigned the MaxLinear Patents to Entropic for the purpose of asserting the very claims against Comcast that MaxLinear itself could not assert (even though the Covenant applies to and prohibits suit on the Patents in the hands of Entropic as well).  Upon learning that Comcast intended to assert the Covenant Not to Sue as a defense in the California Lawsuits, MaxLinear attempted to prematurely terminate the Service Agreements with the goal of vitiating the Covenant.

65.     As a direct and proximate result of MaxLinear's breach of the implied covenant of good faith and fair dealing under the VSA, Comcast has suffered harm, including but not limited to damages, costs, expenses, and/or attorneys' fees it has incurred or may incur in connection with the California Lawsuits.

### PRAYER FOR RELIEF

**WHEREFORE**, Comcast prays that judgment be entered in its favor and prays for:

a)     A judgment and declaration that (i) MaxLinear's attempted termination of the VSA is invalid, (ii) MaxLinear's attempt to terminate the VSA prematurely violated the VSA's plain terms, and (iii) the VSA remains in full force and effect until at least August 21, 2025;

b)     A judgment and declaration that (i) MaxLinear's attempted termination of the SOW is invalid, (ii) MaxLinear's attempt to terminate the SOW prematurely violated the SOW's plain terms, and (iii) the SOW remains active and in full force and effect until at least May 23, 2024;

c)     An order and judgment that MaxLinear must indemnify Comcast for all losses, damages, costs, expenses, and/or attorneys' fees incurred in relation to the California Lawsuits;

d)      In the alternative, an order and judgment that MaxLinear breached the VSA's implied covenant of good faith and fair dealing and an award to Comcast for all monetary damages to which Comcast is entitled by law;

e)      An award to Comcast of its costs, attorneys' fees, and reasonable expenses of litigation to the fullest extent permitted by law;

f)      An order awarding pre- and post-judgment interest to Comcast; and

g)      Such further equitable or other relief as the Court deems just and proper.

Dated: New York, New York
      March 19, 2024

**DAVIS POLK & WARDWELL LLP**

*/s/ Dana M. Seshens*

Dana M. Seshens
Craig J. Bergman
Matthew R. Brock
Anna Lee Nord

450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:    (212) 701-5800
dana.seshens@davispolk.com
craig.bergman@davispolk.com
matthew.brock@davispolk.com
anna.nord@davispolk.com

 – and –

David J. Lisson*

1600 El Camino Real
Menlo Park, California 94025
Telephone:   (650) 752-2000
Facsimile:    (650) 752-2111
david.lisson@davispolk.com

*admitted pro hac vice*

*Attorneys for Plaintiffs Comcast Cable*
*Communications Management, LLC and*
*Comcast Cable Communications, LLC*