UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC and COMCAST CABLE COMMUNICATIONS, LLC,<br><br>      Plaintiffs-Counterclaim Defendants,<br><br>  v.<br><br>MAXLINEAR, INC.,<br><br>      Defendant-Counterclaim Plaintiff. | Case No. 1:23-cv-04436-AKH<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF MAXLINEAR'S
MOTION TO DISMISS COMCAST'S THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.      Factual Background ................................................................................................. 2

          A.      MaxLinear And Comcast Enter Into The VSA And SOW. ...................................... 2

          B.      MaxLinear Provides Notice Of Termination But Agrees To Provide Services Until May 23, 2024. ................................................................................. 3

          C.      Comcast Asserts The Covenant In The California Litigation. ................................ 3

II.     Procedural History ................................................................................................... 4

LEGAL STANDARD .............................................................................................................. 4

ARGUMENT ........................................................................................................................... 5

I.      The Court Lacks Jurisdiction Over Comcast's Declaratory Judgment Claims Because Comcast Has Not Been Harmed. .............................................................. 5

II.     Comcast Is Not Entitled To Indemnification. ......................................................... 7

          A.      Comcast Fails To Plead "Gross Negligence Or Intentional Misconduct." .............. 7

          B.      The Entropic Litigation Does Not Involve Any "Claims Of Third Parties." .......... 8

III.    Comcast Fails To Plead Breach Of The Implied Covenant. ................................. 10

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 5

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*,
    790 F.3d 411 (2d Cir. 2015) ................................................................................................. 5

*Entropic Commc'ns, LLC v. Comcast Corp.*,
    2023 WL 9189317 (C.D. Cal. Nov. 20, 2023) .................................................................. 4, 8

*Frey v. Pekoske*,
    2021 WL 1565380 (S.D.N.Y. Apr. 21, 2021) ................................................................... 5, 6

*In Touch Concepts, Inc. v. Cellco P'ship*,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013),
    *aff'd*, 788 F.3d 98 (2d Cir. 2015) ...................................................................................... 10

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*,
    257 F. Supp. 3d 348 (S.D.N.Y. 2017) ................................................................................ 10

*McIntosh v. Fed. Nat'l Mortg. Ass'n*,
    2016 WL 4083434 (S.D.N.Y. July 25, 2016) ....................................................................... 6

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ......................................................................................................... 5, 6

*Metro. Life Ins. v. Noble Lowndes Int'l, Inc.*,
    643 N.E.2d 504 (N.Y. 1994) ................................................................................................ 8

*Morgan Stanley & Co. v. Peak Ridge Master SPC Ltd.*,
    930 F. Supp. 2d 532 (S.D.N.Y. 2013) .............................................................................. 7, 8

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*
    706 F. Supp. 2d 350 (S.D.N.Y. 2009) .................................................................................. 6

*Standard Sec. Life Ins. Co. of N.Y. v. Berard*,
    684 F. App'x 56 (2d Cir. 2017) ............................................................................................ 9

*Taupita Inv., Ltd. v. Benny Ping Wing Leung*,
    2017 WL 3600422 (S.D.N.Y. Aug. 17, 2017) ...................................................................... 9

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006) ............................................................................................... 10

*U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*,
    475 B.R. 347 (S.D.N.Y. 2012) ................................................................................................7

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
    890 F. Supp. 2d 398 (S.D.N.Y. 2012) ............................................................................5, 6, 7

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ...................................................................................................9

**Statutes**

28 U.S.C. § 2201 ............................................................................................................................5

## INTRODUCTION

Like the prior three, Comcast's latest complaint is one in search of a claim. Comcast's latest set of grievances concern two related contracts—the Vendor Support Agreement ("VSA") and its incorporated Statement of Work ("SOW")—though Comcast does not allege any actionable harm arising from those contracts. In its latest mulligan, Comcast asks this Court to declare—even though it faces no threat of harm—that the contracts remain in effect. But without any threat of harm from MaxLinear, those declaratory judgment claims seek an improper advisory opinion. And Comcast's tag-along claims for indemnification and breach of the implied covenant of good faith and fair dealing are insufficiently pled and meritless.

In reality, Comcast brings this suit to retaliate against MaxLinear for its assignment of certain patents to another entity, Entropic Communications, LLC ("Entropic"), which is now suing Comcast for willful patent infringement in the Central District of California. Comcast does not claim that MaxLinear should never have assigned the patents to Entropic; nor could it, as neither the VSA nor SOW bars assignments. Comcast's gripe is that the VSA contains a Covenant Not to Assert (the "Covenant"), which Comcast contends bars Entropic's lawsuit. But the California court has already ruled that the Covenant permits claims of willful patent infringement—which Entropic is pursuing—and has ordered Comcast to produce discovery relevant to willful infringement. There is thus nothing for this Court to address.

This lawsuit is a thinly veiled attempt to game the judicial system, obtain potentially conflicting rulings, and waste the time and resources of the Court and the parties. This Court should dismiss Comcast's Third Amended Complaint with prejudice.

## BACKGROUND

**I.   FACTUAL BACKGROUND**

   **A.   MaxLinear And Comcast Enter Into The VSA And SOW.**

MaxLinear is a leading designer of silicon chips used to deliver high-speed internet. Third Am. Compl. ("TAC"), ECF 129, ¶ 9. MaxLinear also provides support services—*i.e.*, fixing software bugs, developing new features, and implementing security patches—for end-users of its chips. *Id.* ¶¶ 9, 16. Comcast provides broadband internet services using broadband gateways that rely on the chips designed by MaxLinear. *Id.* ¶ 9. In 2020, Comcast and MaxLinear executed the VSA and a single SOW to govern MaxLinear's provision of support services for some Comcast gateways. *Id.* ¶¶ 9-19.

**The Vendor Support Agreement.** The VSA does not create any independent service obligations, but instead requires MaxLinear to "provide certain services" as set forth in any statements of work. VSA, ECF 11-1, § 1.1. The VSA also contains two relevant ancillary provisions. Section 7.3, titled "Covenant Not to Assert," provides that, "to the extent [Comcast] ha[s] not willfully infringed a [MaxLinear] patent" (among other things), MaxLinear covenants not to sue Comcast for specified claims. *Id.* § 7.3. And Section 10.1, titled "Uncapped General Indemnification," requires MaxLinear to indemnify Comcast for "claims of third parties against Comcast based on or arising from … [MaxLinear's] gross negligence or intentional misconduct." *Id.* § 10.1. MaxLinear may terminate the VSA for convenience "upon ninety (90) days' prior written notice to [Comcast], if there has been no active SOW for a period of 1 year." *Id.* § 11.1.

**The Statement of Work.** The SOW specifies MaxLinear's service obligations to provide "feature development, bug fixes, and security patches/fixes for the XB3, XB6, BWG, and XB7 [broadband] gateways." SOW, ECF 11-2, § 1. MaxLinear agreed to provide those services for free but "may terminate this SOW at any time upon one (1) years' written notice." *Id.* § 2.

### B. MaxLinear Provides Notice Of Termination But Agrees To Provide Services Until May 23, 2024.

MaxLinear executed the VSA and SOW because it believed Comcast would purchase more MaxLinear product. Yet over the next three years, Comcast presented its technological limitations and problems to MaxLinear and listened to MaxLinear's confidential proposed solutions, but it refused to agree to any new business, content to instead lead MaxLinear on and continue receiving support services for free.[1] Recognizing the one-way nature of this relationship, MaxLinear sent a notice of termination for both contracts, which Comcast received on May 23, 2023. *See* TAC ¶ 28.

Even as it noticed termination, MaxLinear told Comcast that it would continue to support Comcast, and it stipulated to providing all SOW services through May 23, 2024—when even Comcast admits MaxLinear's service obligations end. *See* Aug. 9, 2023 Prelim. Inj. Reply, ECF 59, at 16; Sept. 12, 2023 Order, ECF 68. MaxLinear has undisputedly provided those services exactly as promised. Mar. 4, 2024 Hrg. Tr., ECF 124, at 4:4-9 ("What respective performance has defendant not performed? … [Comcast]: … MaxLinear has continued to provide services.").

### C. Comcast Asserts The Covenant In The California Litigation.

Meanwhile, in 2021, MaxLinear assigned certain patents to Entropic, and in 2023, Entropic sued Comcast in the Central District of California for willfully infringing those patents. TAC ¶ 22; *see* Second Am. Compl., ECF 140, ¶¶ 162-181, *Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*, No. 23-cv-1049 (C.D. Cal.). Comcast immediately asserted the VSA's Covenant Not to Assert in a motion to dismiss, but the court held that the Covenant did not bar Entropic's suit because both MaxLinear and its assignee Entropic "retained [the] right to pursue an action for willful

---

[1] As MaxLinear explained in its December 1, 2023 Counterclaims, ECF 88, Comcast was not simply listening to MaxLinear's business pitches to appease MaxLinear; it was actively seeking out MaxLinear's ideas for new products so that it could eventually steal them.

3

infringement." *Entropic Commc'ns, LLC v. Comcast Corp.*, 2023 WL 9189317, at *4 (C.D. Cal. Nov. 20, 2023).[2] Entropic has since supplemented its allegations of Comcast's willful infringement. *See* Mar. 6, 2024 R. & R., ECF 277, *Entropic* No. 23-cv-1049. With discovery now underway, the court recently compelled Comcast to produce documents responsive to Entropic's willful infringement claim. *See* Mar. 27, 2024 Order, ECF 291, *Entropic*, No. 23-cv-1049.

## II.    PROCEDURAL HISTORY

Not content to litigate Entropic's claims in the lawsuit Entropic brought in California, Comcast raced to this Court, hoping to force a second forum to hear its Covenant defense. Comcast initially sought immediate relief—namely, a temporary restraining order and preliminary injunction—to compel MaxLinear to perform the VSA and SOW. But it withdrew those requests after MaxLinear repeatedly stipulated that it would continue to provide support services until May 23, 2024. *See* June 6, 2023 Order, ECF 26; Sept. 9, 2023 Order, ECF 68.

Since then, Comcast has grasped at different provisions of the SOW and VSA in search of a viable claim that would allow it to prolong these proceedings and seek retribution against MaxLinear for acting in its own interests and daring to assign patents to an entity that sued Comcast. Now on its Third Amended Complaint, Comcast has spun up four claims: (i) declaratory judgment as to the VSA; (ii) declaratory judgment as to the SOW; (iii) indemnification; and (iv) breach of the implied covenant of good faith and fair dealing. None withstand Rule 12(b).

### LEGAL STANDARD

A district court must dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "if the court 'lacks the statutory or constitutional power to

---

[2] Although Comcast has asserted that this suit is relevant to the Entropic suit, the court overseeing that case has noted that "the outcome of [this New York] matter has little, if any, effect" on that case. *Entropic*, 2023 WL 9189317, at *4.

4

adjudicate it.'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015).[3] The party asserting jurisdiction must "affirmatively" prove it exists. *Frey v. Pekoske*, 2021 WL 1565380, at *3 (S.D.N.Y. Apr. 21, 2021). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]ell-pleaded facts [that] do not permit the court to infer more than the mere possibility of misconduct" are insufficient. *Frey*, 2021 WL 1565380, at *3.

## ARGUMENT

**I.  THE COURT LACKS JURISDICTION OVER COMCAST'S DECLARATORY JUDGMENT CLAIMS BECAUSE COMCAST HAS NOT BEEN HARMED.**

Comcast's first two claims seek declaratory judgments that the VSA and SOW "remain[] in full force and effect" until August 21, 2025 and May 23, 2024, because MaxLinear's termination notice allegedly stated the wrong termination date. TAC ¶¶ 40, 47. But Comcast fails to allege *any* injury sufficient to sustain this Court's jurisdiction to issue those declarations.

The Declaratory Judgment Act permits courts to "declare the rights and other legal relations of any interested party" "[i]n a case of actual controversy." 28 U.S.C. § 2201(a). The Act's reference to "a case of actual controversy" "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Thus, "[a]s with any federal action, courts may not entertain actions for declaratory judgment when the parties are asking for an advisory opinion" or "there is no standing to maintain the action." *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

---

[3] All emphases added, alterations adopted, and quotations omitted unless otherwise noted.

5

interests, of sufficient immediacy and reality." *MedImmune*, 549 U.S. at 127. "Generally, a claim is not sufficiently immediate or likely to occur if the 'feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass.'" *McIntosh v. Fed. Nat'l Mortg. Ass'n*, 2016 WL 4083434, at *3 (S.D.N.Y. July 25, 2016).

The "mere possibility" of future injury is all that Comcast can muster. It is undisputed that Comcast has received and will continue to receive all of the services it bargained for under the VSA and SOW.[4] Faced with this reality, Comcast pivots, alleging that it will be "deprived of its bargained-for pre-termination notice period and left without the essential protections provided by the VSA, such as the confidentiality, information security, employee adequacy, and cooperation obligations … as well as the Covenant." TAC ¶ 42; *see also id.* ¶ 49 (similar). But Comcast does not allege anything that suggests MaxLinear has failed or will fail to honor any VSA provision in the future—let alone that Comcast will suffer any harm if that possibility comes to pass. In short, Comcast fails to identify any injury stemming from MaxLinear's purported failure to identify the proper termination date in its termination notice. Indeed, Comcast tellingly cannot even bring itself to state the "highly attenuated chain of possibilities" that could result in a live case or controversy for any of the VSA provisions it cites. *Frey*, 2021 WL 1565380, at *12; *see also Velvet Underground*, 890 F. Supp. 2d at 408 ("[W]ithout the 'how,' [plaintiff] cannot show the controversy is 'real'; without the 'when,' it cannot show the controversy is 'immediate.'").

Comcast instead argues there is "a substantial, justiciable controversy" because MaxLinear

---

[4] The SOW permits MaxLinear to terminate upon one year's written notice. SOW § 2. So even crediting the argument that MaxLinear's May 23, 2023 notice was insufficient to immediately terminate the SOW, it was sufficient to terminate the SOW as of May 23, 2024. *See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.* 706 F. Supp. 2d 350, 356 (S.D.N.Y. 2009) ("[A] termination notice which erroneously identifies the termination date is nonetheless sufficient to effect a termination as of the first proper termination date.").

6

"continue[s] to maintain" that the VSA and SOW have "been terminated" as of May 2023. TAC ¶¶ 41, 48; *see also id.* ¶ 34.  But "[t]he mere fact that there is a dispute over some question … is not dispositive; if it were, the Declaratory Judgment Act could be invoked to answer any and every hypothetical question," an outcome "[o]ur constitutional system" prohibits.  *U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 359 (S.D.N.Y. 2012).  Rather, there must be "a specific dispute over imminent activity" involving MaxLinear; otherwise Comcast's requested declarations would be improper advisory opinions about "what the law would be upon a hypothetical state of facts."  *Velvet Underground*, 890 F. Supp. 2d at 409.  On this record, there is nothing for this Court to address.

## II.     COMCAST IS NOT ENTITLED TO INDEMNIFICATION.

Equally meritless is Comcast's claim to indemnification under Section 10.1 of the VSA, which states that MaxLinear "agrees to defend, indemnify, and hold Comcast …. harmless against all costs, expenses, and losses … incurred through claims of third parties against Comcast based on or arising from … [MaxLinear's] gross negligence or intentional misconduct."   VSA § 10.1. Comcast seeks the attorneys' fees and costs it has or will incur "in connection with the California Lawsuits."  TAC ¶ 58.  But Comcast has not sufficiently pled "gross negligence or intentional misconduct," and Entropic's claims are not "claims of third parties" under the VSA, as Comcast's own allegations confirm.

### A.     Comcast Fails To Plead "Gross Negligence Or Intentional Misconduct."

To plead gross negligence or intentional misconduct, a plaintiff must allege "egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts."  *Morgan Stanley & Co. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 544 (S.D.N.Y. 2013).  "A party acting in [its] own economic self-interest is not enough to constitute gross negligence or willful

7

misconduct." *Id.* at 545.

Here, Comcast distorts the terms of the Covenant. It is not true that, as Comcast alleges, the Covenant "prohibited MaxLinear from suing Comcast for patent infringement" or that "MaxLinear itself could not assert" the patents at issue in the Entropic litigation. TAC ¶ 55. As the California court has already recognized, the Covenant does not apply to Comcast's (or any other company's) ***willful*** patent infringement, which is precisely what Entropic alleges in California. VSA § 7.3; *Entropic*, 2023 WL 9189317, at *4; Second Am. Compl., ECF 140, ¶¶ 94-218, *Entropic*, No. 23-cv-1049.[5]

In any event, to sufficiently plead *intentional misconduct* or *gross negligence*, Comcast would have to allege, at minimum, that MaxLinear engaged in "egregious" misbehavior "evincing extreme culpability" when it assigned its patents to Entropic. *Morgan Stanley*, 930 F. Supp. 2d at 544. Comcast has not done that, nor could it. Moreover, Comcast concedes that MaxLinear was "motivated by its financial interest," TAC ¶ 55; *see also id.* ¶ 21, which disposes of Comcast's claim, since a party acting in its "own economic self-interest" cannot engage in gross negligence or intentional misconduct, *Morgan Stanley*, 930 F. Supp. 2d at 545; *see also Metro. Life Ins. v. Noble Lowndes Int'l, Inc.*, 643 N.E.2d 504, 509 (N.Y. 1994) (no willful misconduct where defendant was "motivated exclusively by its own economic self-interest").

    **B.**    **The Entropic Litigation Does Not Involve Any "Claims Of Third Parties."**

Comcast's claim also fails because the indemnification provision does not apply where a third party pursues claims that MaxLinear itself could have pursued. And to the extent the Court

---

[5] Comcast conspicuously fails even to acknowledge Entropic's willful patent infringement allegations, which place Entropic's claims squarely outside the Covenant. Nor does it disclose that, if permitted to proceed, its claims would require the Court to perform a detailed evaluation of Entropic's claims in the California case, all while that court is actively adjudicating that dispute. This Court need not and should not open that pandora's box.

8

harbors any doubt on that score, it must resolve any ambiguity in favor of MaxLinear because indemnification provisions apply only where indemnification is the "unmistakable intent of the parties." *Ameriprise Captive Ins. Co. v. Audatex N. Am., Inc.*, 675 F. Supp. 3d 340, 347 (S.D.N.Y. 2023). Where, as here, there is "at least a reasonable basis for a difference of opinion as to the scope of the duty to indemnify," a plaintiff is not entitled to indemnification. *Id.* at 350.

MaxLinear itself could have sued Comcast for willfully infringing its patents, in which case Comcast could not demand its attorneys' fees. The VSA contains no express fee-shifting language, and the Covenant Not to Assert would not itself require indemnification because "absent evidence that the parties intended a covenant not to sue to subject a plaintiff to damages for bringing a lawsuit in good faith, such a covenant 'is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith'"—and there is no allegation that any willful infringement claims were made in bad faith. *Taupita Inv., Ltd. v. Benny Ping Wing Leung*, 2017 WL 3600422, at *9 (S.D.N.Y. Aug. 17, 2017); *see also Standard Sec. Life Ins. Co. of N.Y. v. Berard*, 684 F. App'x 56, 60 n.2 (2d Cir. 2017). Thus, even if MaxLinear were unsuccessful in suing Comcast for willful infringement, Comcast could not demand its fees.

Comcast seeks to circumvent this law, arguing that the indemnification provision entitles it to fees because MaxLinear assigned its patents to an entity that, according to Comcast, is MaxLinear's "litigation proxy," effectively operating at MaxLinear's direction to "enable MaxLinear to profit." TAC ¶¶ 1, 21, 41. But the patent claims asserted by a MaxLinear assignee (especially one allegedly serving as its "litigation proxy") are hardly the "claims of third parties" the parties intended to indemnify. *Cf. W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (assignee "will stand in the place of the injured party" for standing purposes). Whatever else the provision covers, it makes no sense to interpret it to shift fees

9

whenever MaxLinear assigns patents to a "litigation proxy" that files an infringement suit that MaxLinear itself could have filed. And to the extent the Court remains unsure, the provision is, at minimum, ambiguous, and "if indemnification is not the unmistakable intent of the parties, the claim must be dismissed." *Ameriprise Captive*, 675 F. Supp. 3d, at 347.

### III.  COMCAST FAILS TO PLEAD BREACH OF THE IMPLIED COVENANT.

Comcast's final and alternative claim for breach of the implied covenant of good faith and fair dealing also fails. The implied covenant applies only "where an implied promise is so interwoven into the contract as to be necessary for effectuation of the purposes of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006). It cannot "add to the contract a substantive provision not included by the parties." *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 360 (S.D.N.Y. 2017). And a plaintiff must plead "specific factual allegations of a party's bad faith acts" to prevent dismissal of the claim. *Id*.

Here Comcast has not alleged any bad faith or identified any implied obligation that was not authorized by the contract and that MaxLinear supposedly violated. *See id.*; *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 472 (S.D.N.Y. 2013), *aff'd*, 788 F.3d 98 (2d Cir. 2015). To the extent Comcast seeks to manufacture a claim rooted in MaxLinear's assignment of patents and Entropic's lawsuit, the contract nowhere prohibits assigning patents, and it permits suits against Comcast for willful infringement. Thus, any allegedly implied obligation to the contrary is plainly not "so interwoven into the contract as to be necessary for effectuation of [its] purposes." *Thyroff*, 460 F.3d at 407.

### CONCLUSION

For these reasons, the Court should dismiss Comcast's Third Amended Complaint with prejudice.

| | |
|---|---|
| Dated: New York, NY<br>April 3, 2024 | KIRKLAND & ELLIS LLP<br><br>/s/ Atif Khawaja<br>Atif Khawaja, P.C.<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Telephone: (212) 446-4800<br>akhawaja@kirkland.com<br><br>Adam Alper, P.C. (*pro hac vice*)<br>Kyle Austin Calhoun (*pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>555 California Street, 27th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 439-1400<br>aalper@kirkland.com<br>kyle.calhoun@kirkalnd.com<br><br>Michael W. DeVries, P.C. (*pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>555 South Flower Street, Suite 3700<br>Los Angeles, CA 90071<br>Telephone: (213) 680-8400<br>michael.devries@kirkland.com<br><br>Judson Brown, P.C. (*pro hac vice*)<br>Megan McGlynn (*pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>jdbrown@kirkland.com<br>megan.mcglynn@kirkland.com<br><br>*Attorneys for Defendant-Counterclaim Plaintiff MaxLinear, Inc.* |