# KIRKLAND & ELLIS LLP

|  | 2049 Century Park East | |
|---|---|---|
| Sharre Lotfollahi, P.C. | Los Angeles, CA 90067 | |
| To Call Writer Directly: | United States | Facsimile: |
| +1 213 680 8673 | +1 310 552 4200 | +1 310 552 5900 |
| sharre.lotfollahi@kirkland.com | | |
|  | www.kirkland.com | |

September 18, 2025

**Via ECF and Hand Delivery**

Hon. Alvin K. Hellerstein                          **REDACTED**
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Comcast Cable Commc'ns Mgmt., LLC, et al. v. MaxLinear, Inc.*, No. 1:23-cv-
04436-AKH (S.D.N.Y.)

Dear Judge Hellerstein:

We represent Defendant and Counterclaim-Plaintiff MaxLinear, Inc. ("MaxLinear") in the above-reference litigation. Pursuant to Your Honor's Individual Rule 2(E), we submit this joint letter with counsel for Plaintiff and Counterclaim-Defendants Comcast Cable Communications Management, LLC and Comcast Cable Communications, LLC (collectively, "Comcast") concerning MaxLinear's Requests for Production ("RFP") No. 66 and 67.[1]

MaxLinear and Comcast met and conferred regarding Comcast's production of financial information between September 10, 2025 and August 12, 2025. The latest meet and confer occurred on September 10, 2025 through an online Zoom meeting. The meeting lasted for approximately thirty minutes. Counsel for MaxLinear in attendance included Ingrid Petersen and Sharre Lotfollahi. Counsel for Comcast that attended was Matthew Brock and Yao Chen.

---

[1] RFP No. 66 asks for "Documents sufficient to show Comcast's yearly, quarterly, and monthly earnings, including without limitation revenues, expenses, and gross and net profits concerning services, solutions or products that implement DOCSIS 4.0, FDX technology, and/or the FDX Amplifier." RFP No. 67 asks for "All documents concerning Comcast's projected future earnings, such as projected future revenues, related to services, solutions, or products that implement DOCSIS 4.0, FDX technology, and/or the FDX Amplifier."

# KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 2

### 1.    MaxLinear's Position

MaxLinear respectfully requests the Court order the production of (1) Comcast's earnings from its FDX networks (RFP No. 66) and (2) Comcast's projected earnings from its FDX networks (RFP No. 67)—all of which Comcast has yet to provide.  This requires Comcast to produce its total revenues and projected earnings from its overall cable network and any FDX-related usage data, and not, as Comcast contends, a made-for-litigation "estimate" of revenue "attributable to customers obtaining FDX services" The requested data—which is narrowly focused on revenues from products or services using or will soon be using MaxLinear's trades secrets—is clearly relevant and routinely produced in cases such as this.  Comcast's primary arguments for resisting production are that (1) Comcast does not currently provide FDX services to any customers using the accused FDX amplifiers; and (2) even if it did, any FDX earnings and projections are unrelated to the FDX technologies at issue.  Both of Comcast's assertions are contradicted by the evidence: Comcast has publicly announced that the "Full Duplex (FDX) DOCSIS amplifier is now live serving customers in Comcast's network." Ex. 1 at 2.  And "[a]mplifiers are a critical component to realizing FDX DOCSIS 4.0 across Comcast's footprint, with the current network architecture utilizing up to a six-amplifier cascade to reach customers with multi-gig symmetrical services." Id.  As such, Comcast's earnings from its FDX networks are at issue, and should be produced. While Comcast complains that MaxLinear's experts have not yet apportioned those revenues to the FDX amplifier technology at issue, that is not a valid justification for withholding the revenues during discovery.  Nor are Comcast's assertions that its FDX revenues are unrelated to the FDX amplifier technology:  that is incorrect—Comcast's public and internal statements show otherwise—and is, at best, a factual dispute involving forthcoming expert opinions for a later stage in this case and not a valid justification for withholding Comcast's revenues during fact discovery.

*First*, Comcast's earnings (actual and projected) for FDX technology are clearly relevant to MaxLinear's misappropriation claim.  Courts uniformly recognize that parties alleging trade secret misappropriation may recover the misappropriator's unjust enrichment, which can be "measured by the profits the defendant obtained from using the trade secret." *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-cv-05075, 2022 WL 2757643, at *12 (S.D.N.Y. July 14, 2022).  In addition, in instances where a reasonable royalty is used to calculate damages, the misappropriator's profits remain an essential factor, as "a reasonable royalty may also be based on the infringer's profits." *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 190 (S.D.N.Y. 2002). Unsurprisingly, courts routinely find such financial data relevant to the calculation of trade secret damages and compel the production of a misappropriator's revenues, profits, and expenses. *See, e.g.*, *Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-cv-04819, Dkt. 149, at *1 (S.D.N.Y. Feb. 23, 2018) (granting motion to compel misappropriating party to produce documents showing party's revenues and profits earned); *Thomas & Betts v. Richards Mfg. Co.*, No. 01-cv-04677, 2010 WL 2400151, at *1, *4 (D.N.J. June 10, 2010) (ordering discovery of defendant's financial information where claim arose from misappropriated information and measure of damages would potentially be defendant's net profits).

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 3

**Second**, Comcast raised—for the first time, after MaxLinear mentioned seeking relief from the Court—an assertion that Comcast does not *currently* provide FDX services to any customers using FDX amplifiers, and relatedly, that Comcast does not *currently* earn any revenue from FDX amplifiers. That is incorrect: Comcast concedes in its section of this submission that it "***has begun to deploy FDX-compatible amplifiers***" (*infra* at 7 (emphasis added)) and has confirmed that deployment in public statements. Ex. 1 at 2. And, Comcast's ████████████████
████████████████. *See* Ex. 2 at CMCST006883334. Moreover, Comcast's planned uses of the FDX technology is not limited only to its network. Comcast is actively engaging in licensing the misappropriated FDX technology to other internet providers, such as Rogers. Contrary to Comcast's claims that it is not "aware of any" license of FDX or FDX amplifier technology, ████████████████
████████████████. *See* Ex. 3 at CMCST00736151 █████
████████████████).

In any event, as Comcast's Chief Network Officer confirmed in deposition, ████████
████████ *See* Ex. 5 at 35:22-36:1 ███████████████████████
████████████████████. As such, Comcast's current overall revenues for its cable network is an important proxy for the value that Comcast will receive from the completion of its rollout of FDX amplifiers. This is especially the case considering that Comcast admits the FDX amplifiers are the ████████████
████████ *See id.* at 270:5-7 ████████
████████), at 53:8-15 ████████

████████; at 58:12-16 ████████
████████.

**Third**, Comcast's other argument for withholding its financial data—that the FDX amplifier is only a portion of an FDX network, and any earnings and projections would need to be apportioned down for that evidence to be admissible—is not a proper objection to providing the underlying financial data. First, MaxLinear's damages theories based on unjust enrichment and reasonable royalty do not necessarily require apportionment. For example, unjust enrichment may be measured by profits from sales made possible by the misappropriation or by savings achieved through the use of a trade secret. Moreover, Comcast's *potential* arguments concerning MaxLinear's apportionment of Comcast's financial data by its experts *after* MaxLinear has an

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 4

opportunity to perform such apportionment is not a proper justification to withhold its financial data now, in discovery, before MaxLinear has an opportunity to assess the data. While MaxLinear's experts will apportion Comcast's FDX revenues as appropriate using well-established methodologies, that is not a requirement for production here: Courts routinely require the production of broader sales information during fact discovery without first finding that the ultimate damages theories based on such information are admissible. Rather, MaxLinear need only make a "preliminary showing of relevance" at this stage—which it has clearly done. *See, e.g.*, *Kove IO, Inc. v. Amazon Web Services, Inc.*, 2021 WL 4516413, *3–*5 (N.D. Ill. 2021) (ordering accused infringer to produce high-level financial information "[Plaintiff] need not demonstrate that the requested information will satisfy Federal Rules of Evidence 401, 403, and 702 at this stage. It also need not prove whether the proper royalty base is the smallest salable patent-practicing unit or the entire market value."); *Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2022 WL 19976454, at *3 (E.D. Tex. May 13, 2022) (granting motion to compel accused misappropriator's financial information, including revenues, because "information that bears on a misappropriating party's alleged pecuniary gain is relevant to damages, particularly given the 'extremely low' bar for relevance at the discovery stage—lower than the already low bar for relevance under Federal Rule of Evidence 401."); *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-CV-2226 SI KAW, 2013 WL 707914, at *6 (N.D. Cal. Feb. 26, 2013) (rejecting argument that defendant did not need to produce sales information because that information covered technology beyond the intellectual property at issue and ordering production of sales information because "[p]laintiff has made a preliminary showing of relevance for discovery purposes pursuant to the *Georgia-Pacific* factors, and that is all that it is required to do at this point. It would be improper under Rule 26 to expect Plaintiff show that the discovery it seeks is admissible when it has not yet obtained the discovery."). Indeed, Comcast contends more granular financial data does not exist. Comcast, therefore, cannot withhold its earnings and projected earnings from FDX technology because those earnings are allegedly not further narrowed to the FDX amp.

In an attempt to avoid its discovery obligations, Comcast claims that MaxLinear seeks financial information not "related" to the FDX technology at issue. That is incorrect: as Comcast's documents make clear, the FDX amplifier is not just related to its FDX network, it is the "critical" component that makes it viable. Ex. 1 at 2. At best, this is another factual dispute that does not justify withholding relevant revenue and other financial data. Moreover, Comcast relies on factually distinct cases. In *Via Vadis, LLC v. Amazon.com, Inc.*, for example, the court denied a motion to compel when a plaintiff sought all annual sales since the defendant *had already* produced "much of the use and [financial] damages information" related to the infringement. 2021 WL 3134257, at *2 (W.D. Tex. July 23, 2021). Here, Comcast has not produced narrow information reflecting its past, current, or projected earnings related to the FDX technology. Similarly, in *Generac Power Power Sys., Inc. v. Kohler Co.,* discovery was limited because the plaintiff's claims were narrowly focused on a single patent and did not implicate other products or shared

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 5

features. 2012 WL 2049945, at *3 (E.D. Wis. June 6, 2012). In contrast, here, MaxLinear alleges its trade secrets are critical to Comcast's networks that rely on FDX technology, making discovery into Comcast's products and services relating to those networks highly relevant. Finally, *Crystal Photonics, Inc. v. Siemens Med. Sols. USA, Inc.*, is even further afield, as the plaintiff sought "worldwide sales and profits" for "*all* goods sold, company and division wide." 2013 WL 12158132, at *1 (M.D. Fla. Aug. 23, 2013). Here, MaxLinear seeks the financial information related only to the FDX technology, which *incorporate the trade secrets at issue*.

**Fourth,** there is no question that Comcast possesses the requested data and can produce it without undue burden. The evidence to date confirms that Comcast tracks its deployment of the misappropriated FDX technology both from internet consumers and other internet providers. *See* Ex. 4 at 4-5 (stating for each plan ranging from $80 to $140 a month that "[i]nternet service for this plan is delivered *over Full Duplex DOCSIS*" (emphasis added)).

**Lastly,** Comcast's offer to produce an "estimate" of the service fees paid by customers currently receiving FDX services by running searches for customers who meet certain criteria is insufficient and fails to address MaxLinear's requests. While Comcast may attempt to rely on such made-for-litigation calculations, it must produce its underlying revenues and the other requested financial information so MaxLinear can perform its own analysis. This is particularly critical considering the evidence of record (including testimony from Comcast's Chief Network Office confirming that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. And, to the extent further apportionment is necessary, MaxLinear is not required to rely on Comcast's "estimate" using certain undefined criteria, especially considering that Comcast admits that no such estimates exist at Comcast, and as such, Comcast's purported estimates are made for litigation.

For the foregoing reasons, MaxLinear respectfully requests that Court compel Comcast to produce (1) Comcast's earnings from FDX technology (RFP No. 66) and (2) Comcast's projected earnings from FDX technology (RFP No. 67).

### 2.    <u>Comcast's Position</u>

As Comcast has repeatedly told MaxLinear in numerous meet and confers and written correspondence, the documents concerning earnings and projected earnings from FDX technology that it seeks do not exist in the ordinary course of Comcast's business. Nevertheless, Comcast has proposed producing documents that provide what Comcast views as a reasonable approximation of the revenue information sought by MaxLinear's RFPs, and Comcast stands ready to make that production promptly. But MaxLinear has refused Comcast's offer and instead elected to burden the Court with an unnecessary dispute over nonexistent documents and irrelevant information that

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 6

its RFPs simply do not call for.  For these reasons and those set forth herein, Comcast respectfully requests that the Court deny MaxLinear's motion.

MaxLinear's counterclaims concern alleged trade secret misappropriation solely with respect to a device called an FDX amplifier.  *See* Ex. 6 (MaxLinear's Responses and Objections to Comcast Interrogatory No. 5 (served February 20, 2024)).  An FDX amplifier is distinct from what MaxLinear describes as "FDX technology" more broadly.  Indeed, MaxLinear asserts no trade secrets in this case concerning "FDX technology" unrelated to amplifiers, nor could it.  FDX technology encompasses a vast universe of technology that supports a particular implementation of a cable industry specification that has nothing to do with MaxLinear.  As a result, it is not at all surprising that MaxLinear raised no objection when Comcast explained in its response to RFP Nos. 66 and 67—served nearly five months ago on April 14, 2025—that it agreed to produce responsive documents only "insofar that they pertain to FDX Amplifier technology."  Comcast duly investigated in accordance with that original agreement, and it has produced all documents relating to FDX amplifier technology that are responsive to these requests, as identified following a reasonable search.

Having received Comcast's production of its financial information relating to FDX amplifier technology (to the extent it exists),[2] MaxLinear proceeded to make ever-shifting requests for "earnings" and "projected earnings" from "FDX technology" more generally, and now, upon the close of fact discovery, for "total revenues and projected earnings from [Comcast's] ***overall*** cable network."  *See supra* at 2 (emphasis added).  MaxLinear's requests concerning FDX technology are premised on the incorrect assertions that the disputed FDX amplifier technology must be in use in some way and that "FDX technology," as a general matter, is relevant when it is not.  In any event, the requested financial information related to "FDX technology" also does not exist, and MaxLinear has refused Comcast's offer to produce what it views as its best approximation.  Further, the new request concerning revenues from Comcast's "overall" cable network regardless of whether such revenues are tied, in any way, to FDX amplifiers or FDX technology in general has no connection to this case and is not even covered by MaxLinear's RFP Nos. 66 or 67.  Indeed, MaxLinear previously informed Comcast that it *was not* seeking overall revenue in response to these RFPs.  *See* Ex. 7 (July 18, 2025 correspondence from A. Mina to M. Brock) at 1.  MaxLinear's request should be denied for these reasons alone and for several others:

---

[2] As Comcast already explained to MaxLinear, even if certain customers were receiving FDX services via FDX amplifiers ████████ (which they are not), there would still be no "earnings" generated by FDX amplifiers because Comcast does not charge incrementally higher rates for services delivered using FDX amplifiers.  Nor does Comcast in the ordinary course of business track the revenue from customers serviced using FDX amplifiers.

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 7

*First*, Comcast does not track earnings or projected earnings from "FDX technology" and, even if it did, such information is unconnected to the FDX amplifier technology at issue in this case. To suggest otherwise, MaxLinear asserts that, because Comcast is currently offering FDX services, some of those services necessarily must include FDX amplifiers. *See supra* at 2. However, as noted, an FDX amplifier is a component that *can* be used in an FDX network. It is not required for an FDX network to operate; it is entirely possible to provide FDX services without utilizing FDX amplifiers. Indeed, that is precisely what Comcast is doing in areas where it is currently offering FDX services. Relatedly, the fact that Comcast has deployed FDX-capable amplifiers elsewhere in the network does not mean that it is providing FDX services with FDX amplifiers. Because FDX-amplifiers are not necessary for FDX service, Comcast is able to, and currently does, offer FDX services in certain regions without FDX amplifiers. In other regions, while Comcast has begun to deploy FDX-compatible amplifiers, ██████████████████████. Discovery to date is consistent with this fact, including the testimony of a Comcast engineer that has worked extensively on Comcast's implementation of FDX, including FDX amplifiers. While MaxLinear elected not to ask the engineer about whether FDX amplifiers are currently used to provide FDX services, he confirmed that ████████████████████████████████████████████████████████. *See* R. Howald Dep. Tr. 210:5-211:23.[3]

Accordingly, MaxLinear's requests for "earnings from FDX technology" generally, even if Comcast did track it, is wholly unconnected to revenue generated by the accused FDX amplifiers because FDX amplifiers are not necessary for FDX service. Indeed, as noted, not a single customer currently receiving FDX service is being served by an FDX amplifier ████████. Courts routinely deny motions to compel discovery into broad categories of products or services that do not relate to the actual product or service at issue. *See, e.g.*, *Via Vadis, LLC v. Amazon.com, Inc.*, 2021 WL 3134257, at *2 (W.D. Tex. July 23, 2021) (denying motion to compel discovery into service that did not pertain to the accused feature); *see also Generac Power Sys., Inc. v. Kohler Co.*, 2012 WL 2049945, at *3 (E.D. Wis. June 6, 2012) (denying motion to compel financial

---

[3] MaxLinear is likewise incorrect in insisting that "Comcast is actively engaging in licensing the misappropriated FDX technology to other internet providers." Again, implementing FDX technology does not require the use of an FDX amplifier and, in any event, Comcast has not identified any agreement by which it is presently licensing FDX amplifiers or FDX technology more broadly. Nor has MaxLinear identified any such agreement. Instead, MaxLinear has pointed to a document ██████████████████████████████████████████████████, but nothing in that document or elsewhere reflects that Comcast has licensed FDX technology to anyone. *See* Ex. 3.

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 8

information related to the defendant's entire product line where only one product was accused in the case); *Crystal Photonics, Inc. v. Siemens Med. Sols. USA, Inc.*, 2013 WL 12158132, at *1 (M.D. Fla. Aug. 23, 2013) (denying motion to compel financial information related to products not relevant to the case).[4]

In any event, as Comcast has repeatedly explained to MaxLinear, Comcast has investigated and has determined that, as with FDX amplifiers, it also does not track revenue associated specifically with customers receiving FDX services more broadly. Comcast has also investigated and determined that it does not have any projections for such revenue. Thus, after a reasonable search, Comcast has concluded that there are no documents responsive to MaxLinear's requests for Comcast to produce.

*Second*, MaxLinear's new demand for "total revenues and projected earnings from its overall cable network"—made for the first time during a September 10, 2025 meet and confer—bears no connection to the alleged trade secrets at issue in this case and is not called for by MaxLinear's RFPs. MaxLinear's RFP Nos. 66 and 67 seek revenue and projected revenue related to "DOCSIS 4.0, FDX technology, and/or the FDX Amplifier." (*Supra* at 1 fn. 1.) For these purposes, DOCSIS 4.0 is the same as FDX, and both represent a particular type of networking technology that may be used in a cable network. Comcast's overall cable network does not utilize either technology; to the contrary, the vast majority of Comcast's network utilizes DOCSIS 3.0 (or earlier) non-FDX technology. Indeed, even in the few regions in which FDX service has been enabled (at this time, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That Comcast hopes to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ only shows that its "current overall revenues for its cable network" are ***not*** a proxy for the value received from FDX amplifiers. Similarly, projected future earnings from Comcast's overall cable network do not reflect value attributable to FDX technology or FDX amplifiers given that such projections are based on a

---

[4] MaxLinear attempts to distinguish these cases by alleging that the FDX technology for which it is seeking information "incorporate[s] the trade secrets at issue." (*Supra* at 4.) Again, that is incorrect. The purported trade secrets are only related to FDX amplifiers, and, as Comcast has repeatedly explained to MaxLinear, the current Comcast services that utilize FDX technology do not incorporate any FDX amplifiers ▮▮▮▮▮▮▮▮▮▮.

Conversely, MaxLinear's authority is entirely distinguishable, as it relates to convoyed sales in patent infringement cases, i.e., the effect that sales of infringing products have on the sales of other products. *See Kove IO*, 2021 WL 4516413 at *2–3; *Positive Techs.*, 2013 WL 707914 at *4. Here, Comcast does not sell FDX amplifiers such that any revenue from FDX services more generally cannot be attributable to the sales of FDX amplifiers, as is evidenced by the fact that Comcast's FDX services ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

# KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 9

myriad of other factors (for example, subscriber numbers) and not projected FDX or FDX amplifier deployment. Simply put, the total revenues and projected revenues from Comcast's overall cable network do not represent, or bear any relation to, Comcast's revenues from "DOCSIS 4.0, FDX and/or the FDX amplifier," which is what the RFPs request.

Notably, before MaxLinear raised its request for "overall" network revenue for the first time on September 10, MaxLinear repeatedly acknowledged that such information was not called for by its RFPs. On July 18, 2025, MaxLinear took the position that revenue information for Comcast's overall network does "not provide the level of detail required by MaxLinear's Request" and demanded that Comcast produce revenues limited to "revenues and payments received from customers subscribing to services that utilize DOCSIS 4.0 technology, as well as the associated costs and profits." *See* Ex. 7 at 1. Based on MaxLinear's repeated requests for revenue from customers receiving FDX services, Comcast attempted to resolve this dispute by identifying alternative data that might approximate the information MaxLinear's actual RFPs seek. Through this investigation, Comcast determined that it could arrive at an approximation of the monthly revenue attributable to customers obtaining FDX services by running searches, within an internal Comcast database, to identify which customers currently receive FDX services and the related service fees they pay. Specifically, while Comcast cannot isolate revenue for customers that receive FDX services, it can isolate customers that have the necessary equipment, infrastructure, and service plans to receive FDX services. Thus, Comcast can identify a universe of customers who *might* be receiving FDX services and has offered to produce the monthly internet service revenue from those customers to MaxLinear.[5] MaxLinear rejected this offer on the basis that such data is somehow "made-for-litigation" (*supra* at 5)—which, as described herein, it is not. Instead, MaxLinear now is requesting revenue data from Comcast's entire network, regardless of whether that revenue has any connection to FDX or MaxLinear's RFPs.

Because Comcast has determined that the revenue information MaxLinear's RFPs seek does not exist in the ordinary course of its business, and because Comcast already has offered the closest approximation of such revenue that it could identify (which offer MaxLinear quickly rejected), Comcast respectfully requests that the Court deny MaxLinear's motion to compel.

---

[5] Comcast is not aware of a means to approximate projected revenue for such customers.

KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 18, 2025
Page 10

Respectfully submitted,                    Respectfully submitted,

*/s/ Dana M. Seshens*                      */s/ Sharre Lotfollahi*
Dana M. Seshens                            Sharre Lotfollahi
*Counsel for Comcast*                      *Counsel for MaxLinear*

Enclosures

cc: All Counsel of Record (via ECF)

**Comcast shall produce consolidated financial information,
consolidating the sources of its income and expenses from its
operational activities. The parties shall agree on a protective
order covering non-relevant sources of income and expenses.
The Clerk of Court shall terminate ECF Nos. 202 and 203.**

**/s/ Alvin K. Hellerstein, U.S.D.J.**
**9/26/2025**