# KIRKLAND & ELLIS LLP

Sharre Lotfollahi, P.C.
To Call Writer Directly:
+1 213 680 8673
sharre.lotfollahi@kirkland.com

2049 Century Park East
Los Angeles, CA 90067
United States

+1 310 552 4200

www.kirkland.com

Facsimile:
+1 310 552 5900

September 22, 2025

> *Handwritten note:* Comcast shall produce a "30(b)(6)" witness on its damages. Its objection to "source" and "cause" of damage is sustained.
> 9-26-25
> *[signature]* A.K. Hellerstein

**Via ECF and Hand Delivery**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Comcast Cable Commc'ns Mgmt., LLC, et al. v. MaxLinear, Inc.*, No. 1:23-cv-04436-AKH (S.D.N.Y.)

Dear Judge Hellerstein:

We represent Defendant and Counterclaim-Plaintiff MaxLinear, Inc. ("MaxLinear") in the above-referenced litigation. Pursuant to Your Honor's Individual Rule 2(E), we submit this joint letter with counsel for Plaintiff and Counterclaim-Defendants Comcast Cable Communications Management, LLC and Comcast Cable Communications, LLC (collectively, "Comcast") concerning the parties' dispute regarding Fed. R. Civ. P. 30(b)(6) deposition topics.

MaxLinear seeks to compel 30(b)(6) testimony from Comcast regarding "Comcast's alleged damages, including the cause, source, and amount of those damages."

The parties have exchanged multiple letters outlining their respective positions on this issue, and copies of the latest correspondence are attached. *See* Ex. 1 (2025.08.05 Correspondence from J. Park to M. Butler); Ex. 2 (2025.08.22 Correspondence from S. Lotfollahi to J. Park); Ex. 3 (2025.09.04 Correspondence from A. Nord to A. Mina). MaxLinear and Comcast have also met and conferred regarding this issue on July 3rd, August 11th, August 12th, and September 8th, 2025.[1]

---

[1] The parties met and conferred over video conference, with the July 3rd meet and confer running for approximately two hours, and the others running for approximately one hour each. Sharre Lotfollahi, Argie Mina, Allyn Belusko, Megan McGlynn Butler, Saunders McElroy, and Yi Yuan attended the meet and confers on behalf of MaxLinear. James Park, Matthew Brock, and Anna Lee Nord attended on behalf of Comcast.

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 22, 2025
Page 2

### 1.     MaxLinear's Position

MaxLinear's Topic No. 57: "Comcast's alleged damages, including the cause, source, and amount of those damages." Ex. 4 (MaxLinear 30(b)(6) Topics).

Parties regularly obtain discovery about a plaintiff's claimed damages—it is indisputably relevant and defendants are entitled to explore the factual bases for a plaintiff's claimed damages. *See Scantibodies Lab., Inc. v. Church & Dwight Co., Inc.*, 2016 WL 11271874, at *26-27 (S.D.N.Y. Nov. 4, 2016) (examining sufficiency of plaintiff's 30(b)(6) testimony about its claimed damages and ordering additional fact depositions to address newly disclosed post-deposition damages discovery); *see PNC Bank Nat. Assoc. v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 377 (S.D.N.Y. 2014) (ordering fact discovery and additional 30(b)(6) testimony in light of plaintiff's request to amend complaint to add new damages theory). Indeed, courts have specifically ordered discovery regarding attorneys fees and costs when plaintiffs claim such fees and costs as damages, as Comcast does here. *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 162 (S.D.N.Y. 2012) (reopening document and deposition discovery to allow defendants to "obtain testimony regarding fees, costs, and/or financial benefits to Plaintiffs resulting from the [separate] bankruptcy proceedings").

MaxLinear understands that Comcast's position is the documents it has produced will speak for themselves, and that 30(b)(6) testimony is unnecessary. That has certainly not been Comcast's position with respect to its own 30(b)(6) topics, which have requested testimony about documents. *See, e.g.*, Comcast Topic Nos. 47, 55, 56, 59 (seeking testimony about MaxLinear's communications, which are in the discovery record). Ex. 5 (Comcast 30(b)(6) Topics). And it is not the law. *See Donngguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("When information has already been provided in other forms, a witness may still be useful to testify as to the interpretation of papers, and any underlying factual qualifiers of those documents (i.e. information which the defendant knows but is not apparent on the face of the documents)."). Discovery about Comcast's alleged damages here is particularly critical because there are material disputes about the scope of Comcast's alleged damages that are not apparent from Comcast's documents. For example, based on the carve-out of those claims from the Covenant Not to Assert that forms the basis for Comcast's claims, MaxLinear disputes that Comcast would be entitled to attorneys' fees incurred in defending willful infringement claims in the California litigation, which turns on fact discovery about the cause of Comcast's fees. Additionally, the contractual indemnification provision that underlies Comcast's indemnification claim requires that any costs must be reasonable to be indemnified, and MaxLinear needs to obtain testimony surrounding Comcast's claimed costs to test whether they are in fact reasonable. Comcast is also obligated to mitigate its damages, and MaxLinear is entitled to obtain testimony about Comcast's efforts to mitigate its fees and costs.

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 22, 2025
Page 3


Moreover, Comcast has attempted to impede MaxLinear's requests for damages discovery at every turn. Initially, Comcast failed to produce *any* documents in response to MaxLinear's request for production related to Comcast's damages. Following extensive letter correspondence first beginning over two months ago, Comcast agreed to produce responsive documents, but the resulting production amounted to no more than cumulative totals of its accrued fees and costs across a wide range of matters with no accompanying detail regarding the nature or purpose of those expenses. MaxLinear was again forced to take issue with this, and requested on August 8 that Comcast further supplement its production with itemized versions of the invoices that purportedly supported these claimed costs for which Comcast seeks indemnification. On September 15, with only days left in fact discovery, Comcast supplemented its production, but MaxLinear requires corporate testimony on this topic, including about Comcast's recently provided supplemental production, to understand the factual bases for Comcast's alleged damages. As a result of these protracted and ongoing efforts to obtain document discovery, the parties initially agreed to hold Topic 57 open pending resolution of the document dispute. Ex. 6 (2025.07.28 Correspondence from M. Butler to J. Park). MaxLinear has consistently maintained its position that it is entitled to discovery on this topic, and agreed to leave it open solely based on the understanding that the resolution of the parallel document dispute would be relevant to the scope of this topic because, at minimum, MaxLinear would be entitled to take testimony on the underlying facts behind the at-that-time unproduced damages documentation. Comcast, however, now refuses to produce any 30(b)(6) deponent to testify on this topic at all. That is untenable. Indeed, Comcast itself requested (and MaxLinear agreed to) numerous 30(b)(6) topics regarding MaxLinear's own claimed damages for its counterclaim. MaxLinear requests the Court compel 30(b)(6) testimony on this Topic, including with respect to any documents relating to alleged damages that Comcast has produced.

### 2. **Comcast's Position**

Comcast to date has provided extensive discovery on its damages, including via document production and multiple interrogatory responses. This discovery has addressed Comcast's damages theory, how MaxLinear's misconduct caused Comcast harm (to the extent relevant to any of Comcast's claims), and the current computation of Comcast's damages, which are continuing to accrue. Given the nature of Comcast's claimed damages—which currently amount to attorneys' fees incurred in connection with certain patent litigations filed against Comcast in California in contravention of a contractual covenant not to sue—there is no more fact discovery for Comcast to provide. Comcast will further substantiate its damages during the forthcoming expert phase of this case, including with respect to the reasonableness of the fees Comcast has incurred to date, but those are not topics appropriate for corporate representative testimony. Indeed, MaxLinear's Topic No. 57 improperly seeks Comcast's litigation contentions as to its claimed damages, not facts on which it can prepare a designated witness. For these reasons and those set forth below, MaxLinear's request should be denied.

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 22, 2025
Page 4

"Depositions are intended to elicit facts from witnesses, not to pose gotcha interrogatories, or prematurely seek admissions, or advance the dates of experts disclosures." *See In re Novartis and Par Antitrust Litig.*, 1:18-cv-04361-AKH, Dkt. No. 309 (S.D.N.Y. Nov. 12, 2020) (Hellerstein, J.). Authority from this District makes clear that deposition topics that seek a party's contentions—including topics purporting to seek the "facts supporting" a party's contentions—are improper because they require a party to "'collect and synthesize all of the information in [its] possession'" and "'impart that body of knowledge to [the deponent]'" so that the deponent can "'feed it back to [the other party] in response to [its] deposition questions.'" *Liveperson, Inc. v. 24/7 Customer, Inc.*, 2015 WL 4597546, at *7 (S.D.N.Y. July 30, 2015) (denying motion to compel 30(b)(6) testimony on topics seeking "facts supporting contention of patent infringement" and "facts supporting contention of violation of intellectual property" because such information constitutes "contentions or legal theories" that "must be discovered by other means") (citations omitted). For this reason, topics that seek a party's "contentions or legal theories" are not proper subjects for corporate testimony. *DoorDash, Inc. v. City of New York*, 780 F. Supp. 3d 434, 459 (S.D.N.Y. 2025) (explaining that it is not "appropriate to use a Rule 30(b)(6) deposition . . . to give [] a little guidance as to what the [other party's] case is").

Topic No. 57 improperly seeks corporate testimony regarding Comcast's "conclusions, opinions, and legal theory" regarding its damages. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. Sept. 16, 2002); *see also Neo Vision Hypersystems, Inc. v. Interactive Data Corp.*, 2004 WL 1586501, at *3 (S.D.N.Y. July 14, 2004) (finding the plaintiff sufficiently demonstrated that it had suffered damages because its "answers to interrogatories provide a detailed explanation of the damage demand"). MaxLinear's repeated suggestion that it seeks to explore only the "factual bases" for Comcast's alleged damages is inconsistent with the wording of the Topic itself and is nothing more than a "thinly disguised effort[] to have representatives of [Comcast] elaborate on its legal theories" and/or expert opinions. *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2009 WL 3463912, at *1 (E.D.N.Y. Oct. 21, 2009); *see also King Pharms., Inc. v. Eon Labs, Inc.*, 2008 WL 5111005, at *1 (E.D.N.Y. Dec. 4, 2008) (rejecting 30(b)(6) topic seeking the "factual bases" of contentions as "an improper use of 30(b)(6) depositions"). The "facts" MaxLinear claims to seek confirm as much. For example, MaxLinear purports to seek testimony regarding the "cause of Comcast's fees," but that is just another way of saying that MaxLinear wants testimony about Comcast's legal theory of how MaxLinear's wrongdoing *caused* Comcast to incur the damages it alleges. Indeed, above, MaxLinear expressly seeks corporate testimony on Comcast's theory as to why its legal fees do not fall within a carve out of the parties' covenant not to sue and why they are called for by the indemnification provision in the parties' contact. As noted above, Comcast has already explained these legal theories and such an explanation is not the proper subject of 30(b)(6) testimony by a lay witness. MaxLinear further claims that it "needs to obtain testimony surrounding Comcast's claimed costs to test whether they are in fact reasonable." But whether the attorneys' fees incurred in the California

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 22, 2025
Page 5

litigation are "reasonable" is squarely a question for the parties' experts, not a corporate representative. Nor would it be feasible for a Comcast employee to testify as to Comcast's invoices in the California litigation, which contain high-level information largely drafted by outside counsel and concern work that outside counsel performed litigating the two California patent cases on Comcast's behalf. In all events, Topic No. 57 does not seek testimony concerning Comcast's legal fees in the California litigation; it seeks unbounded testimony concerning the "cause, source, and amount" of Comcast's alleged damages, which encompasses the legal theories behind them.

MaxLinear's cited case law is not to the contrary. For instance, in *Scantibodies Laboratory, Inc. v. Church & Dwight Co.*, the 30(b)(6) topic at issue sought corporate testimony regarding the "financial impact" following the "termination of the Supply Agreements." 2016 WL 11271874, at *25 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017). That topic is nearly identical to MaxLinear's Topic No. 62, which properly sought testimony about "the effect" of MaxLinear's termination of the VSA. Comcast designated a witness to testify as to that topic, and MaxLinear had the opportunity to ask Comcast's deponent about it but declined to do so. The court in *PNC Bank, N.A. v. Wolters Kluwer Financial Services, Inc.*, meanwhile, ordered additional factual discovery only after the plaintiff amended its complaint to assert a new damages theory at the close of fact discovery. *See* 73 F. Supp. 3d 358, 377 (S.D.N.Y. 2014). But none of the topics noticed in *PNC Bank* sought corporate testimony concerning the bases for plaintiff's damages theory. (*See* Ex. 7 (Motion for Leave to Submit Exemplar Discovery, Exhibit B, *PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, 1:12-cv-08570-PAE, Dkt. No. 115-1 (S.D.N.Y. Oct. 31, 2014)).) Finally, the court in *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, did not compel the plaintiffs to provide 30(b)(6) testimony as to damages, but rather permitted the reopening of depositions for any fact witnesses who had already been deposed "in the interest of fairness" given plaintiffs' non-compliance with the discovery rules. 280 F.R.D. 147, 161-62 (S.D.N.Y. 2012). That is not the situation here.

To the extent Comcast's contentions are "discoverable at all," they "must be discovered by other means," such as interrogatories. *See JPMorgan Chase Bank*, 209 F.R.D. at 362. In fact, MaxLinear already propounded—and Comcast has already responded to—an interrogatory requesting nearly identical information regarding the amount and computation of Comcast's damages. (*See* Ex. 8 (Comcast's Supplemental Response to MaxLinear's Interrogatory No. 5); Ex. 9 (Comcast's Supplemental Response to MaxLinear's Interrogatory No. 10).) Comcast also explained its damages theory in its Initial Disclosures, in Attachment B to the parties' operative Case Management Plan (ECF No. 152), and in its response to MaxLinear's Request for Admission No. 3. Comcast has also produced invoices reflecting Comcast's damages to date in the form of attorneys' fees, including itemized invoices detailing the fees Comcast has incurred in connection

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein
September 22, 2025
Page 6

with the two California patent litigations.[2] All of this information will be the subject of expert discovery; there is no need—nor any basis—for corporate testimony on this topic.

Accordingly, Comcast requests that the Court deny MaxLinear's request to compel corporate representative testimony on Topic No. 57.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| */s/ Dana M. Seshens* | */s/ Sharre Lotfollahi* |
| Dana M. Seshens | Sharre Lotfollahi |
| *Counsel for Comcast* | *Counsel for MaxLinear* |

Enclosures

cc: All Counsel of Record (via ECF)

---

[2] MaxLinear mischaracterizes the parties' discovery to date on Comcast's damages claim. MaxLinear did not raise this purported deficiency for nearly a year-and-a-half, at which time Comcast promptly collected and produced documentation in support of its computation of damages incurred to date. After MaxLinear made a supplemental request for additional documentation in August 2025, Comcast, again, promptly agreed to produce itemized invoices to MaxLinear, which it has done.