# KIRKLAND & ELLIS LLP

Sharre Lotfollahi, P.C.
To Call Writer Directly:
+1 213 680 8673
sharre.lotfollahi@kirkland.com

2049 Century Park East
Los Angeles, CA 90067
United States

+1 310 552 4200

www.kirkland.com

Facsimile:
+1 310 552 5900

September 29, 2025

**Via ECF and Hand Delivery**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

PUBLIC REDACTED

[handwritten: Red. Discovery closed Sep 18, 2025. 9-30-25 A.K. Hellerstein]

Re:   *Comcast Cable Commc'ns Mgmt., LLC, et al. v. MaxLinear, Inc.*, No. 1:23-cv-04436-AKH (S.D.N.Y.)

Dear Judge Hellerstein:

We represent Defendant and Counterclaim-Plaintiff MaxLinear, Inc. ("MaxLinear") in the above-referenced litigation. Pursuant to Your Honor's Individual Rule 2(E), we submit this joint letter with counsel for Plaintiff and Counterclaim-Defendants Comcast Cable Communications Management, LLC and Comcast Cable Communications, LLC (collectively, "Comcast") concerning the parties' dispute regarding MaxLinear's Request for Production ("RFP") No. 21.

The parties have exchanged multiple emails outlining their respective positions on this issue, and a copy of the correspondence is attached. Ex. 1. MaxLinear and Comcast also met and conferred regarding this issue on September 16, 2025.[1]

1.   **MaxLinear's Position**

MaxLinear asks this Court to compel Comcast to produce undisputedly non-privileged communications between Comcast and Broadcom concerning MaxLinear's trade secret counterclaims in the above-captioned matter.[2]

---

[1] The parties met and conferred over video conference. Argie Mina attended on behalf of MaxLinear. Craig Bergman and Madison Gonzalez attended on behalf of Comcast.

[2] On December 1, 2023, MaxLinear served Request for Production ("RFP") No. 21, requesting "All documents and communications concerning any written or oral contention, suggestion,

# KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  **CONFIDENTIAL**
September 29, 2025
Page 2

By way of background, Broadcom is a key third-party in this case: as the evidence has confirmed, Comcast unlawfully communicated MaxLinear's trade secrets to Broadcom, for Broadcom to use in supplying Comcast with FDX Amplifier chips. Moreover, Comcast has been coordinating with Broadcom with respect to Comcast's defenses in this case and Broadcom's responses to MaxLinear's discovery requests and deposition questions.[3] Comcast admits that email communications between its counsel and Broadcom's counsel concerning this case exist.[4] While Comcast attempts to downplay the significance of these communications—*e.g.,* that they entail "set[ting] up calls about deposition scheduling and the scope of its subpoenas"—that is not a basis to withhold them, and Comcast does not identify any basis to claim privilege over the communications or otherwise withhold their production.[5]

As to the relevance of these communications, Comcast is wrong: they are highly relevant.[6] Even in its portion of the joint statement, Comcast confirms that it intends to heavily (if not

---

statement, analysis, legal proceeding, or other indication by any entity that the FDX Amplifier violates, violated, may violate, or may have violated any intellectual property right of any party, including trade secrets." Ex. 2 (MaxLinear's First Set of RFPs to Comcast) at 7-8. There is no dispute that this RFP covers the Comcast communications with Broadcom that are at issue.

[3] This is undisputed and was made clear at the recent deposition of Broadcom's 30(b)(6) witness, when Broadcom's counsel did not object to a single one of Comcast's clearly-preplanned questions for the Broadcom witness, but then objected to nearly every one of MaxLinear's questions.

[4] Notwithstanding Mr. Cave's (Comcast's corporate representative) testimony that he was aware of only "a single courtesy phone call" between Comcast and Broadcom regarding this litigation, Comcast now admits that its counsel had email communications with Broadcom's counsel regarding this litigation, confirming that Mr. Cave was not fully prepared regarding these communications and cannot rectify Comcast's deficient document production.

[5] Comcast's presumption that production of these communications would lead to an "unduly burdensome deposition" of Comcast's counsel is irrelevant and unsupported—MaxLinear's discovery motion does not seek a deposition of Comcast's counsel, but instead production of undisputedly non-privileged written communications between Comcast and Broadcom (including through their respective counsel) concerning this lawsuit and MaxLinear's trade secret claims. Also, although Comcast vaguely claims that it "very well could assert such a [common interest] privilege in the future," that belated assertion of privilege would be inconsistent with its position in recent weeks and with the testimony of Comcast and Broadcom's witnesses, who both testified that there was no such common interest relationship in place for this litigation.

[6] The primary thrust of Comcast's brief attempts to denigrate MaxLinear's claims in this case, referring to them as "baseless" and "specious." Those statements are provably wrong, and amount

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  **CONFIDENTIAL**
September 29, 2025
Page 3

exclusively) rely on testimony from Broadcom in attempt to support Comcast's primary defense in this case—that Broadcom independently developed the accused technology prior to MaxLinear. Specifically, Comcast claims that this testimony "made clear that Broadcom independently developed the FDX amplifier chip," "that Broadcom proposed its chip to Comcast well before MaxLinear ever did," and that Broadcom conceived of the asserted trade secret technology "in 2018, over a year before any MaxLinear communications to Comcast." Comcast mischaracterizes Broadcom's testimony, but more fundamentally, its reliance on that testimony does not (and cannot) explain away the many documents showing how Comcast recognized that ▮ Ex. 3 (CMCST00389199); Ex. 4 (MXL0000193713) at 717. ▮ Ex. 5 (CMCST00066685). ▮ Ex. 8 (Pantelias Tr.) at 198:13-21; 199:23-200:15, 232:18-233:17; 234:9-20.

to an attempt to deflect from the narrow discovery dispute at issue in this letter—*i.e.*, whether Comcast's communications with Broadcom should be produced. ▮ Ex. 8 (Pantelias Tr.) at 198:13-21; 199:23-200:15, 232:18-233:17; 234:9-20.

[7] ▮

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  **CONFIDENTIAL**
September 29, 2025
Page 4

Despite this documentary and testimonial evidence, Comcast contends that the Broadcom witness provided exculpatory testimony showing independent development. But that underscores the high relevance of the communications between Comcast and Broadcom about this case, as such communications may show that Comcast and Broadcom were coordinating Broadcom's responses to MaxLinear's questions. Such coordination is undeniably relevant to both Comcast and Broadcom's credibility in this case—including the credibility of Broadcom's claims about when it developed the accused products—and would squarely contradict any (incorrect) claim by Comcast that Broadcom's testimony should be given particular weight as an impartial third party. There is also essentially no burden associated with producing these communications: Comcast's counsel can easily identify and collect them, since they were parties to most or all of the communications in the first place.

Comcast's primary objection to producing its communications with Broadcom—that communications made by its counsel are undiscoverable—is wrong: Comcast's authorities concern attempts to discover privileged attorney-client communications and/or work product. Here, the communications at issue are non-privileged communications between Comcast and a third party (Broadcom). Comcast provides no authorities suggesting such communications deserve heightened protection in discovery because they are made by counsel, and it would be unfair to permit Comcast to shield relevant communications with a third-party simply because they were made by outside counsel. Tellingly, Comcast specifically requested (and took) the deposition of MaxLinear's former General Counsel without any concerns over a "policy" against taking discovery from a party's lawyers. Comcast's follow-on objection that it should be given a free pass on these highly relevant communications because its counsel's communications with Broadcom were not picked up in its ESI search is without merit: at no point did MaxLinear relieve Comcast of its obligation to produce relevant, responsive documents outside of ESI search term searches. Lastly, Comcast's suggestion that MaxLinear's motion to compel is untimely is wrong. MaxLinear raised this issue during the discovery period, immediately after MaxLinear's depositions of Comcast's and Broadcom's corporate witnesses, when they testified that they were unaware of any common interest agreement between them, contradicting Comcast's claim of a common interest privilege over these communications throughout this litigation. Moreover, when confronted with this testimony, Comcast promptly stated for the first time that it was no longer asserting common-interest privilege over those communications. MaxLinear promptly brought this motion following Comcast's withdrawal of that objection, and thus its request is timely.

(a) **Procedural Background**

On January 16, 2024, Comcast served its objections and responses to MaxLinear's Requests for Production. In relevant part, Comcast specifically objected to Request No. 21—seeking all Comcast's documents and communications concerning any contention that Comcast's FDX Amplifier violates another's intellectual property rights, which includes Comcast's communications with Broadcom regarding the instant litigation—to the extent it sought documents

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  
September 29, 2025  
Page 5

**CONFIDENTIAL**

protected by "common interest privilege." Ex. 9 (Comcast responses to MaxLinear's First Set of RFPs) at 22. Comcast maintained this objection throughout discovery. On September 4, 2025 however, Comcast's corporate representative contradicted Comcast's prior claims of common-interest privilege by testifying that he was unaware "of any common interest agreement between Comcast and Broadcom regarding this litigation." Ex. 10 (Cave Dep Tr.) at 99:19-22. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Upon learning that Comcast's prior privilege claims were not supported by a common interest agreement, MaxLinear immediately contacted Comcast's counsel and reraised its request for communications responsive to RFP No. 21. During the parties' September 16 meet and confer regarding MaxLinear's renewed request, counsel for Comcast stated that Comcast is *not* asserting common interest privilege over communications between Comcast and Broadcom (which it did not dispute exists) and that its January 16, 2024 objections based on common interest privilege were made to cover "potential" grounds for objections.

### (b)   Argument

There is no question that communications between Comcast and Broadcom concerning this case exist, are highly relevant (as discussed above), and that no privilege exists justifying Comcast's continued refusal to produce them. Comcast's reasons for withholding that discovery have shifted, but none are sound.

Comcast first argues that it does not need to produce documents and communications responsive to RFP No. 21 because of "policy reasons" relating to "discovery from outside litigation counsel." But Comcast's cases do not concern discovery of highly relevant non-privileged lawyer communications between a party and a third party, they instead address third-party subpoenas to law firms for materials that are intertwined with privileged attorney-client communications and work product. In *Liner Freedman Taitelman Cooley, LLP v. Lively*, the Court quashed a subpoena *duces tecum* directed to a party's outside counsel in part because of the "potential risk that the requests would encroach on the attorney-client privilege, attorney work product doctrine, or attorney-client relationship more generally." 2025 WL 2205973, at *4 (S.D.N.Y. Aug. 4, 2025). Similarly, *Varbero v. Belesis*, 2020 WL 7043503 at *2-3 (S.D.N.Y. Dec. 1, 2020), *Brunckhorst v. Bischoff*, 2023 WL 3090950, at *4 (S.D.N.Y. Apr. 26, 2023), *Chevron Corp. v. Donziger*, 2013 WL 1087236, at *23 (S.D.N.Y. Mar. 15, 2013), and *Patsy's Italian Rest., Inc. v. Banas*, No. 06-cv-00729, 2007 WL 174131, at *3 (E.D.N.Y. Jan. 19, 2007), all involve subpoenas that implicated privileged information and were directed to an attorney rather than the party itself. No such risk exists here, because MaxLinear is not seeking privileged communications and Comcast is no longer claiming any privilege over the requested communications with Broadcom. And there is no "policy" requiring heightened protections for non-privileged communications between counsel for a party and counsel for a third party. In those situations, the *Liner* court noted that discovery requesting such communications should be served on the party, and not the outside counsel. *Id.* at

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  **CONFIDENTIAL**
September 29, 2025
Page 6

\*4-\*7 (granting leave to re-serve the discovery requests on the parties themselves); *see also Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-07331, 2025 WL 2294589 at \*8 (S.D.N.Y. Aug. 8, 2025) (noting that the same requests for production could have been properly served on the party instead of serving a subpoena on the party's counsel); *Patsy's*, 2007 WL 174131, at \*3 (same). That is precisely what MaxLinear has done here.

MaxLinear's request for production is properly directed to Comcast and not its outside counsel. But because Comcast's communications with third-party Broadcom—including emails from Comcast's counsel to Broadcom's counsel to discuss strategies for responding to and concerns about MaxLinear's trade secret claims, preparing for MaxLinear's deposition of Broadcom, and responses to third-party discovery requests to Broadcom—are undoubtedly "generated on behalf of [Comcast]," those communications are within Comcast's "possession, custody, or control," and can therefore be produced by Comcast in response to MaxLinear's requests. *Eletson*, 2025 WL 2294589 at \*8 (S.D.N.Y. Aug. 8, 2025). All of Comcast's cited cases relate to specific discovery that is not at issue here (*i.e.*, subpoenas served directly on outside counsel seeking discovery that implicates privileged communications and work product); and none of those cases support Comcast's decision to withhold this relevant discovery into its undisputedly non-privileged communications with a third party.

Moreover, Comcast cannot credibly claim that discovery of a party's counsel is off limits. Indeed, Comcast itself requested (and MaxLinear produced) communications by MaxLinear's former General Counsel (Michelle Sayer)—even though Ms. Sayer was not identified as one of Comcast's selected ESI custodians—and Comcast deposed her last week. Although Comcast argues that MaxLinear has not produced discovery between its outside counsel and Entropic, that does not justify Comcast's unilateral withholding of undisputedly non-privileged communications with third-party Broadcom. Indeed, unlike Comcast's communications with Broadcom concerning this litigation and MaxLinear's misappropriation claims, MaxLinear's communications with Entropic are protected by common interest privilege, as MaxLinear has already made clear to Comcast in its discovery responses and during multiple depositions.

Comcast next argues that it does not need to produce communications responsive to RFP No. 21 because it would require a production outside the scope of Comcast's custodial ESI searches using search terms (and more specifically, because MaxLinear did not identify Comcast's outside counsel as one of the five selected ESI custodians and provide search terms for that supposed outside-counsel custodian). But the parties' ESI protocol for conducting discovery of each parties' respective *employees* does not supplant Comcast's discovery obligation to produce undisputedly relevant, responsive, and non-privileged communications between Comcast's

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  **CONFIDENTIAL**
September 29, 2025
Page 7

counsel and third-party Broadcom (and its counsel).[8] Rather, "an ESI protocol and search terms work in tandem with the parties' obligations under the Federal Rules and do not replace a party's independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive within the meaning of Rule 34." *Raine Grp. LLC v. Reign Cap., LLC*, No. 21-cv-01898, 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12-cv-03723, 2017 WL 11888330, at *2 (S.D.N.Y. May 3, 2017) (granting motion to compel search for additional documents, additional custodians, and an extended date range of ESI searches). Indeed, the ESI protocol in this case explicitly states that "[n]othing in this Protocol is intended to be an exhaustive list of discovery obligations or right of the parties to the Litigation, and nothing in this Protocol may be construed as a waiver of a party's rights under the Federal Rules of Civil Procedure[.]" Dkt. 99 at 2. By its own terms and consistent with this District's precedent, Comcast cannot use the ESI search protocol to shirk its discovery obligations. That is particularly the case here, where there is no viable objection by Comcast that collecting these communications—which are likely all already in its counsel's possession and are easily identified, collected and produced—would be unduly burdensome. And MaxLinear has already complied with Comcast's requests that sought documents beyond the original ESI search protocol. For example, MaxLinear complied with Comcast's request that MaxLinear conduct additional ESI searches over Ms. Sayer's emails and produce non-privileged documents from that search responsive to Comcast's RFP No. 93. That Comcast is willing to expend even more resources on this motion than take the simple step of having its counsel collect what is likely a small set of communications from their own email files strongly suggests this is not about discoverability, but rather an attempt to block highly relevant evidence that Comcast perceives will negatively impact its defenses.

Comcast further suggests that it is justified in withholding this discovery due to the timing of MaxLinear's renewed request relative to the close of fact discovery. Ex. 1 at 2. But MaxLinear raised this issue during the deposition period, before the discovery cutoff, and it was only then that Comcast, not MaxLinear, withdrew its prior common-interest privilege claim on the eve of the fact discovery deadline. Comcast cannot blame MaxLinear for any alleged delay, when it was Comcast that knew that it had no grounds for its prior privilege claims and waited for MaxLinear to establish the absence of any privilege during recent depositions.

As made clear by Comcast's testimony, Broadcom's testimony, and Comcast's counsel's own admission, there is no common interest privilege protecting Comcast and Broadcom's communications regarding MaxLinear's trade secret claims. Such communications are highly-relevant to MaxLinear's claims as explained above, and it is undisputed that they can be easily identified, collected and produced. Accordingly, MaxLinear respectfully requests that the Court

---

[8] Indeed, during the September 16, 2025 meet and confer regarding the instant motion, Comcast's counsel conceded that ESI search protocols do not supplant Rule 26.

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  **CONFIDENTIAL**
September 29, 2025
Page 8

compel Comcast to produce communications between Comcast and Broadcom regarding this Litigation, pursuant to MaxLinear's RFP No. 21.

**2.  Comcast's Position**

Comcast diligently searched for documents responsive to MaxLinear's RFP No. 21 using ESI parameters that the parties agreed to long ago. Comcast produced any responsive communications between Comcast and Broadcom identified using that agreed-upon search protocol and provided 30(b)(6) deposition testimony about any responsive communications between the companies of which Comcast was aware. Now, at the end of fact discovery, MaxLinear demands that Comcast perform a further search of its documents and, without any basis, seeks communications of Comcast's *outside litigation counsel*. As courts have repeatedly made clear, however, taking discovery from litigation counsel actively involved in the matter at hand is highly disfavored, including because it risks turning attorneys into witnesses and thus burdening their clients' choice of counsel. Particularly given MaxLinear's non-existent basis for seeking these documents (and for departing from the parties' heavily negotiated document search protocol with fact discovery now complete), MaxLinear's motion should be denied.

MaxLinear's suggestion that its motion is the result of an alleged shifting of Comcast's position on privilege is demonstrably not true. To date, Comcast has not withheld a single document pursuant to any common interest privilege with respect to Broadcom because Comcast's search protocol, to which MaxLinear agreed months ago, did not identify any responsive communications subject to any common interest privilege for Comcast to assert. Consistent with Comcast's objections to RFP No. 21 at the time its responses and objections were served, Comcast retains the ability to assert common-interest privilege over responsive communications to the extent that such a privilege applies.

In fact, the real reason for MaxLinear's eleventh-hour discovery request and letter motion is simply that Broadcom's corporate representative provided devastating deposition testimony that eviscerates MaxLinear's specious trade secret claims. Over two days, in response to questioning from both parties, Broadcom's corporate representative made clear that Broadcom independently developed the FDX amplifier chip that allegedly embodies the trade secrets MaxLinear claims Comcast misappropriated and that Broadcom proposed its chip to Comcast well before MaxLinear ever did. While MaxLinear makes hyperbolic assertions that Broadcom "admitted" in its deposition that Comcast relayed trade secret information to it and that Comcast engaged in improper "coordination" regarding Broadcom's discovery responses, those assertions are wholly unsupported and false (not to mention contradictory since any coordination surely would not have resulted in the supposed admission of trade secret misappropriation by the allegedly coordinating parties). With its trade secret case collapsing for lack of evidence, MaxLinear is attempting to deflect from the merits (or lack thereof) of its case by seeking to reopen discovery and improperly

# KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  
September 29, 2025  
Page 9

**CONFIDENTIAL**

harass both Comcast and its litigation counsel. Comcast respectfully submits that the Court should not abide such gamesmanship.

### Background

MaxLinear served RFP No. 21 on December 1, 2023. (MaxLinear Ex. 2.) In response, Comcast agreed to search for responsive documents, while interposing objections, including privilege objections, that could potentially apply depending on the nature of the search results. (MaxLinear Ex. 9 at 10 (objecting to RFP No. 21 *"to the extent that it seeks* production of documents that are protected by the attorney-client privilege, attorney work product immunity, common interest privilege, and/or any other applicable privilege or immunity against disclosure) (emphasis added).)[9] Comcast then conducted a robust search for documents responsive to RFP No. 21 using the search-term, custodian, and timeframe parameters to which the parties agreed. Notably, those parameters included "Broadcom" and/or variants thereof as search terms for as many as five Comcast custodians *that MaxLinear chose* (none of whom was an attorney). Comcast produced all responsive documents that it identified, as well as document-by-document privilege logs, none of which identified any documents being withheld on the basis of common interest privilege vis-à-vis Broadcom (or any other third party). MaxLinear did not raise any concerns about the scope of Comcast's search or productions in response to RFP No. 21 during the document discovery period.

During the deposition period, Comcast agreed to provide a corporate representative witness to testify to company-to-company communications between Comcast and Broadcom concerning this litigation of which Comcast was aware. (Comcast Ex. B (June 30, 2025 Letter from Craig J. Bergman to Megan McGlynn) at 8; *see also id.* at 1-2 (objecting to inclusion of "attorneys" in entity definitions and construing Comcast as "Comcast Cable Communications Management, LLC and Comcast Cable Communications, LLC" and Broadcom as "nonparty Broadcom Inc.").) Comcast ultimately designated Jon Cave, a Senior Vice President, to provide such testimony. At his deposition on September 4, 2025, Mr. Cave testified that: (i) he was aware of a single courtesy phone call in which Comcast's in-house counsel provided Broadcom's in-house counsel notice that Comcast was serving a third-party subpoena on Broadcom; (ii) he was not aware of any other communications between Broadcom and Comcast regarding the litigation; and (iii) he was not aware of any coordination as between Comcast and Broadcom regarding any discovery that Broadcom had or would provide in the litigation. (MaxLinear Ex. 10 at 98:7-100:11.) MaxLinear

---

[9] MaxLinear itself prophylactically objected to *"each"* of Comcast's document requests in this matter on the basis of "common interest privilege," among other objections. (*See, e.g.*, Comcast Ex. A (MaxLinear's Responses and Objections to Comcast's First Set of Requests for Production) at 2-3 (emphasis added).)

# KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  
September 29, 2025  
Page 10

**CONFIDENTIAL**

did not raise any objection or concern at the time regarding the substance of Mr. Cave's testimony in this regard or his preparation as a corporate representative witness.

Separately, during the discovery period, both Comcast and MaxLinear served third-party document and deposition subpoenas on Broadcom. As is typical, Broadcom served objections and responses to both sets of subpoenas. Broadcom then produced over 35,000 documents in response to both parties' document subpoenas and, on September 9 and 10, 2025, counsel for both parties deposed Broadcom's corporate representative witness, Niki Pantelias. During her deposition, in response to questioning from both parties, ███████████████████████████████████ ███████████████.[10]

In her deposition, Ms. Pantelias also directly contradicted MaxLinear's current assertions to this Court that any of her testimony was "scripted" by Comcast. In response to MaxLinear's questioning, Ms. Pantelias testified *under oath* that:

- she had never met any attorney representing Comcast prior to her deposition (MaxLinear Ex. 8 at 138:21-139:1);

- she did not have advance knowledge of the questions that counsel for Comcast was going to ask in her deposition (*id* at 136:12-15); and

- she did not have advance knowledge of the documents counsel for Comcast would introduce in her deposition (*id* at 137:24-138:4).

Following Ms. Pantelias' deposition, counsel for MaxLinear abruptly demanded that Comcast "produce all communications between Comcast and Broadcom made in relation to this

---

[10] ███████████████████████████████████████████████████████████████ Comcast will otherwise focus its portion of this joint letter on the extensive legal grounds for denying the discovery requested by MaxLinear. Suffice it to say, however, that Comcast disagrees with MaxLinear's inflammatory and wholly inaccurate assertions that the record suggests Comcast shared MaxLinear's trade secrets with Broadcom. That proposition is demonstrably untrue, as Comcast will show at the appropriate time. Indeed, MaxLinear's desperate and belated request for additional discovery belies any suggestion that the existing record already supports MaxLinear's claims.

# KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  **CONFIDENTIAL**
September 29, 2025
Page 11

litigation, *including communications between those entities involving their in-house or outside counsel*." (Comcast Ex. D (September 10, 2025 Email from Argie Mina to Counsel for Comcast) (emphasis added).) MaxLinear made clear that, in its view, "[t]his would include, for example, communications concerning Ms. Pantelias's deposition, including communications setting up calls between those entities or their counsel." (*Id.*) In neither the email nor the meet and confer that followed did counsel for MaxLinear identify anything about Ms. Patentlias's (or Mr. Cave's) deposition that had precipitated the request for new searches of Comcast documents or discovery into Comcast's litigation counsel.

**Argument**

MaxLinear's motion should be denied for several reasons.

First, discovery from outside litigation counsel is unwarranted for a host of important policy reasons. "Courts have been particularly concerned about the burdens imposed on the adversary process when lawyers themselves are the subject of discovery requests." *Patsy's Italian Rest., Inc. v. Banas*, 2007 WL 174131, at *2 (E.D.N.Y. Jan. 19, 2007) (quashing subpoena containing requests for communications between trial counsel and third parties).[11] That is because, among other reasons, "a discovery request to counsel can threaten to turn the lawyer into a witness against the client and thereby may burden a party's choice of counsel." *Liner Freedman Taitelman Cooley, LLP v. Lively*, 2025 WL 2205973, at *4 (S.D.N.Y. Aug. 4, 2025) (quashing request that included outside counsel's communications with third parties, including potential witnesses); *see also Varbero v. Belesis*, 2020 WL 7043503 at *2 (S.D.N.Y. Dec. 1, 2020) ("a request to counsel apparently legitimate on its face" may "reflect[] the intent or ha[ve] the impact of interfering with or burdening a party's choice of counsel"). Such concerns are especially acute where, as here, the relevant counsel would be outside counsel actively litigating the case in question. *See, e.g., Chevron Corp. v. Donziger*, 2013 WL 1087236, at *23 (S.D.N.Y. Mar. 15, 2013) (when "discovery is sought from attorneys, especially attorneys actively involved in litigation against an adversary seeking discovery from such attorneys, '[c]ourts have been especially concerned about the burdens imposed on the adversary process . . . and have resisted the idea that lawyers should routinely be subject to broad discovery'") (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003)). What is more, forcing litigation counsel to comply with document requests risks compromising "materials revealing litigation strategy" and diverting "time and focus that otherwise could be directed towards th[e] litigation." *Brunckhorst v. Bischoff*, 2023 WL 3090950, at *4 (S.D.N.Y. Apr. 26, 2023); *see also Rekor Sys., Inc. v. Loughlin*, 2022 WL 671908, at *2 (S.D.N.Y. Mar. 7, 2022) (attempting to "subpoena a lawyer who either was actively litigating the case on the other party's behalf or who was associated with trial counsel" runs the risk of "using

---

[11] Unless otherwise noted, case citations in Comcast's portion of this letter omit internal quotation marks, citations, emphases, and/or alternations.

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  **CONFIDENTIAL**
September 29, 2025
Page 12

the tools of discovery to interfere with and undermine the litigation strategy of the other party"). All in all, courts afford "special solicitude . . . to litigation counsel with respect to discovery in the cases that they handle." *In re Chevron Corp.*, 749 F. Supp. 2d 141, 163 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010).

MaxLinear has done nothing to show that the discovery it seeks is appropriate, including because of these concerns. It claims that "Comcast has been coordinating with Broadcom with respect to Comcast's defenses in this case and Broadcom's responses to MaxLinear's discovery requests and deposition questions." But MaxLinear can offer nothing to support such an allegation beyond



In any event, no amount of alleged "coordination" could or would alter the facts to which Ms. Pantelias testified *under oath*—facts that undermine every facet of MaxLinear's baseless trade secret claims.

As courts have recognized, the prejudice flowing from requiring the production of Comcast's litigation counsels' communications is not simply the harassment and burden that comes from the production itself. *See, e.g., In re Chevron Corp.*, 749 F. Supp. 2d at 163 (considering the extent to which a discovery request to counsel "would disrupt the litigation by injecting one of the lawyers charged with its conduct into the case as a witness or by making the advocate's conduct or knowledge an issue in the proceeding"). Contrary to MaxLinear's unfounded allegations, Comcast's counsel does not possess emails "discuss[ing] strategies for responding to and concerns about MaxLinear's trade secret claims." (Even if it did, such emails may well be covered by common interest privilege.[13]) But, as explained during the parties' meet and confer,

---

[12] While MaxLinear seeks to read into Broadcom's counsel's lack of objections to Comcast's questioning, MaxLinear's counsel lodged only four objections to Comcast's questioning, belying any suggestion of impropriety by Broadcom's counsel (or Comcast).

[13] MaxLinear makes much of the fact that Comcast's and Broadcom's respective 30(b)(6) witnesses testified that each was not aware of a common interest agreement between the parties. But no such agreement is required for Comcast and Broadcom to assert common interest privilege

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  CONFIDENTIAL
September 29, 2025
Page 13

counsel for Comcast (as the subpoenaing party) of course possesses correspondence with counsel for Broadcom (as the party responding to Comcast's subpoena) to set up calls about deposition scheduling and the scope of its subpoenas. MaxLinear unsurprisingly has had similar conversations with counsel for both third parties that it has subpoenaed, including Broadcom. However, the only way to establish the entirely proper and innocuous nature of such calls would be an unseemly and unduly burdensome deposition of opposing litigation counsel—something the Second Circuit understandably "disfavor[s]," *Friedman*, 350 F.3d at 71-72. And ordering such discovery here, where there is absolutely no evidence of any impropriety—indeed, the sworn testimony proves otherwise—would open any subpoenaing party to discovery, undermining every litigant's ability to prosecute its case. The Court should not permit MaxLinear to turn opposing litigation counsel into a witness simply because it served a third-party subpoena that ultimately precipitated testimony MaxLinear considers harmful to its case.

Notably, MaxLinear concedes that it has not produced any communications between *its own* outside counsel and outside counsel for any non-party, notwithstanding (i) an RFP from Comcast seeking all communications between MaxLinear and its third-party patent assignee Entropic and (ii) record evidence that outside counsel for MaxLinear has in fact communicated with outside counsel for Entropic, in addition to counsel for third-party subpoena recipients Broadcom and CommScope.[14] MaxLinear cannot credibly maintain that baseless conjecture about Ms. Pantelias's deposition preparation, contrary to her sworn testimony, warrants a different approach here.

MaxLinear tries to distance itself from this inconsistent position by pointing to certain productions it agreed to make from its former general counsel, Michelle Sayer (in exchange for productions from Comcast's own in-house counsel), and Ms. Sayer's recent deposition. But the

---

over qualified communications if they were to do so. *See, e.g., U.S. v. Zhu*, 77 F. Supp. 3d 327, 330 (S.D.N.Y. 2014) ("A formal written common interest agreement is not necessary."). Indeed, the existence of a common legal interest should be self-evident to MaxLinear given that it effectively has accused Broadcom of conspiring with Comcast to steal MaxLinear's (non-existent) trade secrets and then use them for Broadcom's (and Comcast's) benefit.

[14] That MaxLinear claims it did not produce communications between its outside counsel and Entropic's outside counsel because it suddenly decided in the final days of fact discovery to assert its own common interest privilege vis-à-vis Entropic—after identifying no such position in response to at least five RFPs seeking discovery into communications or coordination between MaxLinear and Entropic (Comcast Ex. A at 14-18)—is irrelevant and legally baseless in any event, as Comcast has separately advised MaxLinear.

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  
September 29, 2025  
Page 14

**CONFIDENTIAL**

discovery MaxLinear agreed to provide is entirely different from the discovery MaxLinear is seeking from Comcast now. Unlike Comcast's outside litigation counsel, Ms. Sayer was a percipient fact witness to events undergirding Comcast's claims as they unfolded in real time. Indeed, Comcast would have sought discovery from Ms. Sayer pursuant to the parties' ESI protocol but for MaxLinear's utter failure to disclose her as part of its Rule 26 disclosures (even though she clearly possessed relevant information and documents, as discovery has borne out). Moreover, "[a]ttempts to subpoena a lawyer who either was actively litigating the case on the other party's behalf or who was associated with trial counsel run a much greater risk of intrusion on the attorney-client relationship than subpoenas to former lawyers or corporate counsel." *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 2294589, at *11 (S.D.N.Y. Aug. 8, 2025); *see also Rekor*, 2022 WL 671908, at *2 (explaining difference between cases presenting true "concern[s] . . . about one party using the tools of discovery to interfere with and undermine . . . the relationship between client and litigation counsel" and cases where "the proposed deponent is not affiliated with a lawyer representing any party in the instant litigation").

Second, MaxLinear has provided *no* credible basis for suddenly deviating from the parties' extensively negotiated search protocols to seek additional documents, whether from outside counsel or Comcast itself. As courts in this District have long recognized, "[i]t is essential to our system of justice that lawyers and litigants, above all, abide by their agreements and live up to their own expectations," and "[t]hus . . . when [p]arties enter into agreements on the best way to conduct discovery, courts should uphold and honor such agreements." *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2022 WL 18027565, at *5 (S.D.N.Y. Dec. 30, 2022). Similarly, "[c]ourts enforce discovery deals not only because lawyers should abide by their agreements, but also because if the parties could not rely on courts to enforce discovery agreements, there would be little incentive for parties to make them." *Id.* at *6. It is for this reason that, "[w]here a dispute arises as to the production of ESI, an ESI protocol that has been mutually entered into by the parties will govern so long as the protocol addresses the issue." *Pincus L. Grp., PLLC v. MJ Connections*, 2025 WL 1070384, at *3 (E.D.N.Y. Apr. 9, 2025). "Absent a showing that [a party] violated the ESI Protocol, it should be enforced" because its adversary, "for good or ill, decided to limit the searches [the party] had to perform when it agreed to the Protocol." *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 183 F. Supp. 3d 467, 470 (S.D.N.Y. 2016).

Here, Comcast conducted the agreed-upon searches on the ESI of the custodians that MaxLinear chose and produced any communications responsive to RFP 21 that it identified. Consistent with its objections, Comcast also provided corporate testimony on the only non-email communications between Comcast and Broadcom about this litigation of which it was reasonably aware. MaxLinear has not claimed (and cannot claim) that Comcast has in any way violated the parties' agreed-upon search protocol. Instead, it insists that additional searches are warranted because it perceived Comcast's deposition questioning of Ms. Pantelias as "choreographed" and because Comcast has supposedly changed its position on common interest privilege. Regarding the former, however, MaxLinear's rank speculation as to the existence of documents implicating

## KIRKLAND & ELLIS LLP

Hon. Alvin K. Hellerstein  
September 29, 2025  
Page 15

**CONFIDENTIAL**

the credibility of Ms. Pantelias's testimony—which is belied by Ms. Pantelias's actual testimony—is no basis to re-trade on the parties' long-settled protocol and require additional searching after the close of fact discovery. *See, e.g., Loma Deli Grocery Corp. v. United States*, 2021 WL 4135216, at *12 (S.D.N.Y. Sept. 10, 2021) ("[A] party seeking discovery cannot simply engage in a fishing expedition based on bare speculation that additional data might reveal something beneficial."); *Gilead Sciences, Inc. v. Safe Chain Solutions LLC*, 345 F.R.D. 22, 30 (E.D.N.Y. 2024) ("While the scope of discovery is broad, it is not limitless," and "[t]he party seeking discovery must show that it is not engaging in merely a fishing expedition."). Unsurprisingly, MaxLinear fails to cite even a single case suggesting that a party's own self-serving assumption that any damaging third-party testimony necessarily is "biased" supports reopening discovery.

As to the latter, Comcast has in no way changed its position on privilege, but any supposed change in position would not have affected Comcast's document searches or productions; privilege assertions simply determine which responsive documents identified through the search protocol are logged as opposed to produced. To date, Comcast has not withheld any communications based on an assertion of common interest privilege with Broadcom because the search protocol did not identify any communications over which such an assertion would apply. At the same time, and contrary to MaxLinear's suggestion, Comcast has not "admitted" there is "no basis" for any common interest privilege assertion with respect to Broadcom. As noted, *supra* at n. 13, Comcast very well could assert such a privilege in the future. As already conveyed to counsel for MaxLinear, and consistent with Comcast's objections, Comcast reserves the right to assert common interest privilege over communications with any third party, including Broadcom or its counsel, for which such an assertion would be appropriate if and when such communications were to become the subject of discovery.

Respectfully submitted,

*/s/ Dana M. Seshens*  
Dana M. Seshens  
*Counsel for Comcast*

Respectfully submitted,

*/s/ Sharre Lotfollahi*  
Sharre Lotfollahi  
*Counsel for MaxLinear*

Enclosures

cc: All Counsel of Record (via ECF)